UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

        Plaintiff/Counter-Defendant,

vs.

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants,

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

        Defendants/Cross-Defendants.

Case No.   11-cv-12422-AC-MKM
Hon. Avern Cohn

_____/

Michael F. Schmidt P25213
Nathan Peplinski P66596
Attorneys for Plaintiff
1050 Wilshire Drive, Suite 320
Troy, MI 48084
(248)649-7800

Albert L. Holtz P15088
Attorney for Monica Lupiloff, Nicole Lupiloff
and Nicole Lupiloff, Per Rep of the Estate of
Gary Lupiloff, Deceased
3910 Telegraph Road, Suite 200
Bloomfield Hills, MI  48302
(248)593-5000

HARVEY KRUSE   A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

John H. Bredell P36577
Attorney for Keenes
119 N. Huron Street
Ypsilanti, MI 48197
(734)482-5000

Geoffrey N. Fieger P30441
Jeffrey A. Danzig P36571
Co-Counsel for Monica Lupiloff, Nicole
Lupiloff and Nicole Lupiloff, Per Rep of the
Estate of Gary Lupiloff, Deceased
19390 West Ten Mile Road
Southfield, MI  48075
(248)355-5555

_____/

## PLAINTIFF NATIONWIDE LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS/COUNTER-PLAINTIFFS' UTPA PENALTY INTEREST CLAIM

PLEASE TAKE NOTICE that on a date and time to be set by the court, or as soon thereafter as counsel can be heard by the Honorable Avern Cohn, Plaintiff Nationwide Life Insurance Company (Nationwide) will move for partial summary judgment on defendants/counter-plaintiffs William Keene's (William) and Jennifer Keene's (Jennifer) counter claim for penalty interest pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Nationwide is entitled to judgment as a matter of law.  Nationwide issued a life insurance policy on the life of Gary Lupiloff.  Gary Lupiloff was murdered, and Nationwide has been informed that William is a prime suspect. Gary Lupiloff's daughters and his estate have made their own claims to the proceeds of the insurance policy alleging William murdered Gary Lupiloff and committed fraud in removing Gary Lupiloff's daughters as contingent beneficiaries to the policy.  Michigan has a "slayer statute," MCL 700.2803, which states that an individual who feloniously and intentionally kills the decedent forfeits all benefits with respect to the decedent's estate including any insurance or annuity policy benefits.  Because of the slayer statute, the conflicting claims by separate alleged beneficiaries, and the possibility that the policy may have been fraudulently obtained with the intent to murder Gary Lupiloff for the insurance benefits, Nationwide could not pay the benefits

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

and was forced to file this interpleader action. The claim for penalty interest is inappropriate given the pending interpleader action. Nationwide cannot pay until the slayer issue and the dispute between the potential claimants is resolved. Summary judgment should be granted to eliminate the claim for penalty interest from these proceedings.

Pursuant to Local Rule 7.1, Nationwide made contact with William and Jennifer's attorney explaining the nature of the request. William and Jennifer's attorneys refused to agree to dismiss the claim for penalty interest under the Uniform Trade Practices Act, MCL 500.2006.

Nationwide bases this motion on the records and files in this case and supports it with the accompanying memorandum of law and the required separate statement of material facts.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court via the Electronic Case Filing system which will send notice to all attorneys of record.

By: /s/Michael F. Schmidt
    Michael Schmidt (P25213)
    Attorney for Defendant
    1050 Wilshire Drive, Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800
    mschmidt@harveykruse.com

Dated: September 13, 2011

Respectfully submitted,
HARVEY KRUSE, P.C.

By: /s/Michael F. Schmidt
    Michael Schmidt (P25213)
    Attorney for Defendant
    1050 Wilshire Dr., Suite 320
    Troy, Michigan  48084-1526
    (248) 649-7800
    mschmidt@harveykruse.com

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

        Plaintiff/Counter-Defendant,

vs.

        Case No.   11-cv-12422-AC-MKM
        Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants,

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

        Defendants/Cross-Defendants.

_____/

| | |
|---|---|
| Michael F. Schmidt P25213<br>Nathan Peplinski P66596<br>Attorneys for Plaintiff<br>1050 Wilshire Drive, Suite 320<br>Troy, MI 48084<br>(248)649-7800 | Albert L. Holtz P15088<br>Attorney for Monica Lupiloff, Nicole Lupiloff<br>and Nicole Lupiloff, Per Rep of the Estate of<br>Gary Lupiloff, Deceased<br>3910 Telegraph Road, Suite 200<br>Bloomfield Hills, MI  48302<br>(248)593-5000 |

HARVEY KRUSE

A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

John H. Bredell P36577
Attorney for Keenes
119 N. Huron Street
Ypsilanti, MI 48197
(734)482-5000

Geoffrey N. Fieger P30441
Jeffrey A. Danzig P36571
Co-Counsel for Monica Lupiloff, Nicole
Lupiloff and Nicole Lupiloff, Per Rep of the
Estate of Gary Lupiloff, Deceased
19390 West Ten Mile Road
Southfield, MI  48075
(248)355-5555

_____/

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

## MEMORANDUM OF LAW IN SUPPORT OF NATIONWIDE'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE UTPA CLAIM

### ISSUE PRESENTED

Whether summary judgment is appropriate on the counter plaintiffs' claim for Michigan Trade Practices Act penalty interest per MCL 500.2006 given that Michigan has a slayer statute precluding recovery under an insurance policy by a person involved in the intentional and felonious killing of the person insured by that policy and given that it has been alleged that counter plaintiffs are responsible for the murder of the insured, Gary Lupiloff.

**CONTROLLING AUTHORITY**

This matter is controlled by FRCP 56, MCL 500.2006, and MCL 700.2803.

**ARGUMENT**

## I.    Introduction

Nationwide Life Insurance Company (Nationwide) is facing multiple claims for the proceeds of the life insurance policy issued on the life of Gary Lupiloff.  Claims have been made by William Keene (William) as the listed beneficiary and by Nicole Lupiloff (Nicole) and Monica Lupiloff (Monica) as alleged contingent beneficiaries.  William claims to be a business partner who demanded that Gary Lupiloff obtain the policy to supposedly protect the business transaction between the two of them.  Nicole and Monica were Gary Lupiloff's daughters.  Nicole also brings a claim as the personal representative of Gary Lupiloff's estate.

Nicole and Monica have alleged that William murdered Gary Lupiloff for the insurance proceeds with William's wife's, Jennifer Keene's (Jennifer), knowledge and that this disqualifies William and Jennifer from receiving benefits under the policy.  William and Jennifer dispute this point and claim that William is the proper beneficiary.  Jennifer was also added as a contingent beneficiary in place of Monica and Nicole prior to Gary Lupiloff's death.  Monica and Nicole claim that this change was fraudulent.  Gary Lupiloff's estate has also made a claim for the death benefit.  Nationwide's argument is that the entire transaction was fraudulent and that the policy was obtained with the purpose of killing Gary Lupiloff from the very beginning.  If this is the case, the policy is void from its inception, and thus, there is no death benefit owing to anyone.  Nationwide would return the premiums paid on the policy to the proper premium payor(s).  Therefore, there are multiple parties asserting the right to claim the funds.

Michigan also has a "slayer statute," MCL 700.2803, which states that an individual who feloniously and intentionally kills the decedent forfeits all benefits with respect to the decedent's

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

estate including any insurance or annuity policy benefits.  William and Jennifer would have no right to the proceeds of the Nationwide policy if they are shown to have been involved in Gary Lupiloff's murder.  Nationwide was informed by the investigating police department that William is a prime suspect in the murder.

The multiple claims and the dispute regarding who may receive the benefits under Michigan law create the need for an interpleader action so that there will be one determination of who is actually entitled to these funds.  Nationwide filed an interpleader action in this Court on June 3, 2011 against William, Jennifer, Nicole, Monica, and Gary Lupiloff's estate.  (Exhibit 2)  The interpleader action was filed pursuant to FRCP 22.

On June 17, 2011, before actually answering the interpleader complaint, William and Jennifer filed a counter complaint against Nationwide.  Count I of William and Jennifer's counter complaint alleges breach of contract.  It generally asserts William and Jennifer's position from the interpleader action that they did not murder Gary Lupiloff and are, therefore, proper beneficiaries under the Nationwide policy.  (Exhibit 14 ¶¶ 4-12)

Count II of William and Jennifer's counter complaint raises a claim that Nationwide violated the Michigan Uniform Trade Practices Act (UTPA), MCL 500.2006(4), by failing to pay William and Jennifer the policy proceeds after William submitted his beneficiary claim form.  (Exhibit 14 ¶¶ 13-16)  William and Jennifer allege that the UTPA entitles them to 12% penalty interest for the failure to pay the insurance claim.  (Exhibit 14, ¶ 16)  Given the existence of the dispute regarding the proper beneficiaries and the existence of the Michigan slayer statute, Nationwide could not pay William or Jennifer the insurance benefits.  Nationwide cannot pay the benefits until the conclusion of this interpleader case determines the appropriate beneficiary and determines if William and Jennifer are precluded from recovery under the policy by the

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Michigan slayer statute. Because Nationwide is precluded from paying the benefits, no penalty interest should apply. Nationwide does not have to pay benefits until after the conclusion of this case, if it is ever required to do so. Therefore, summary judgment is appropriate on the UTPA claim.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c) .

## III.    Interpleader is an Ancient Doctrine Designed to Deal With Cases Such as This Where Multiple Claims Exist for a Single Fund of Money

Interpleader is an ancient equitable doctrine allowing a determination of who may be entitled to certain funds when there are multiple claims for those funds:

> The "admirable remedy" of interpleader has been in existence for over 600 years. It originated in the common-law courts as a device that could be used by a defendant in a limited number of circumstances for protection from double vexation upon a single liability. [*Wright & Miller*, 7 Fed Prac & Proc Civ § 1701 (3d Ed).]

The general purpose of interpleader is "to join all the claimants in one forum to avoid the vexation of multiple suits and liability for disbursing the funds to the wrong person." *First Trust Corp v Bryant*, 410 F3d 842, 855 (CA 6, 2005). *Wright & Miller*, 7 Fed Prac & Proc Civ § 1702 (3d Ed) further explains:

> Even if the stakeholder denies liability, either in whole or in part, to one or more of the claimants, interpleader still protects the stakeholder from the vexation of multiple suits and the possibility of multiple liability that could result from adverse determinations in different courts. Thus, interpleader can be employed to reach an early and effective determination of disputed questions with a consequent saving of trouble and expense for the parties.

This case is a rules interpleader case. FRCP 22 provides:

(a) Grounds.

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

4

(1) *By a Plaintiff.* Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
  (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
  (B) the plaintiff denies liability in whole or in part to any or all of the claimants.
(2) *By a Defendant.* A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.
(b) Relation to Other Rules and Statutes. This rule supplements--and does not limit--the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

Nationwide alleges the possibility that the policy was taken out against Gary Lupiloff's life as part of a plan to murder Gary Lupiloff for the proceeds of that policy. If this is true, the fraud in obtaining the policy would allow Nationwide to void the policy from its inception, and return any policy premiums paid to Nationwide, and not pay the death benefit. Thus, pursuant to FRCP 22(a)(1)(B), Nationwide is asserting a potential right to the funds. Technically, this makes this case an action "in the nature of interpleader." "An action in the nature of interpleader is distinguishable from a true interpleader action, in that the complainant need not be without interest in the subject matter which is claimed by two or more persons, and he or she may seek some affirmative equitable relief." 48 CJS Interpleader § 7. Courts handle the two types of cases in the same manner, and there is little actual distinction between the two:

> Aside from the distinction as to the interest of the plaintiff, actions in the nature of interpleader are identical to traditional interpleader suits. Therefore, a bill in the nature of a bill of interpleader and a bill of interpleader ordinarily are governed by the same general principles. Like an interpleader action, a proceeding in the nature of interpleader is one in equity and it invokes the equitable principles underlying interpleader. [48 CJS Interpleader § 7.]

As explained above, multiple claims exist in this case for the insurance policy funds. Nationwide received claims for the policy death benefits from William, Jennifer, Nicole,

**HARVEY KRUSE** A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS   1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

Monica, and Gary Lupiloff's estate.  Nationwide followed years of precedent underlying our legal system for cases involving multiple claims and filed this interpleader action.   In doing so, Nationwide adhered to the requirements of the Federal Rules of Civil Procedure and respected Michigan law precluding a murderer from recovering under an insurance policy on the life of the person murdered.

### IV.   The Michigan Slayer Statute Precludes Recovery Under any Insurance Policy by a Person Involved in an Intentional Killing

The Michigan Estate and Protected Individuals Code (EPIC) contains MCL 700.2803, which is referred to as the "slayer statute".  The statute provides that a person who "feloniously and intentionally" kills a decedent *forfeits* all benefits from the decedent's estate.   MCL 700.2803(1).  The statute further provides that a "killer cannot profit from his or her wrong." MCL 700.2803(5).  The statute provide in full:

> (1) ***An individual who feloniously and intentionally kills the decedent forfeits all benefits under this article with respect to the decedent's estate***, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, a family allowance, and exempt property. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed his or her intestate share.
>
> (2) The felonious and intentional killing of the decedent does all of the following:
>
> (a) ***Revokes all of the following*** that are revocable:
>
> (i) ***Disposition or appointment of property made by the decedent to the killer in a governing instrument***.
>
> (ii) Provision in a governing instrument conferring a general or nongeneral power of appointment on the killer.
>
> (iii) Nomination of the killer in a governing instrument, nominating or appointing the killer to serve in a fiduciary or representative capacity, including a personal representative, executor, trustee, or agent.
>
> (b) Severs the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship, transforming the interests of the decedent and killer into tenancies in common.
>
> (3) A severance under subsection (2)(b) does not affect a third party interest in property acquired for value and in good faith reliance on an apparent title by survivorship in the killer unless a writing declaring the severance has been

noted, registered, filed, or recorded in records appropriate to the kind and location of the property that are relied upon, in the ordinary course of transactions involving that type of property, as evidence of ownership.

(4) A provision of a governing instrument is given effect as if the killer disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent.

(5) A killer's wrongful acquisition of property or interest not covered by this section shall be treated in accordance with *the principle that a killer cannot profit from his or her wrong*.

(6) After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section. *In the absence of a conviction, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent.* If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes that individual as the decedent's killer for purposes of this section. [Emphasis added.]

The definitions contained in EPIC make clear that the slayer statute is applicable to insurance policies. MCL 700.1104(k) defines a "governing instrument" to include an insurance policy:

"Governing instrument" means a deed; will; trust; *insurance or annuity policy*; account with POD designation; security registered in beneficiary form (TOD); pension, profit-sharing, retirement, or similar benefit plan; instrument creating or exercising a power of appointment or a power of attorney; or dispositive, appointive, or nominative instrument of any similar type. [Emphasis added.]

This Court has applied the Michigan slayer statute to life insurance policies. *Estate of Curtis v Prudential Ins Co*, 839 F Supp 491, 494 (1993):

Under this analysis, it is clear that MCLA § 700.251(3) regulates insurance. It is directed specifically at insurance companies, and it regulates the relationship between the companies and their policy holders.[1]

The slayer statute does not require a criminal conviction before an action can be taken to

enforce the slayer statute.  Pursuant to MCL 700.2803(6), the court would apply a preponderance of the evidence standard to determine if the killing occurred.  Even if the local prosecutor believes that the evidence is insufficient to bring criminal charges, a trial based on the lesser preponderance standard would still be appropriate.  See *Metro Life Ins Co v Reist*, 167 Mich App 112, 119; 421 NW2d 592 (1988) ("The Lansing and Sarasota police records provide evidence which, although insufficient to support a prosecution proving Linda Reist guilty beyond a reasonable doubt, demonstrated a genuine issue of fact for trial.")

The party asserting the slayer statute need not prove murder.  Instead, the slayer statute requires only a felonious and intentional killing.  MCL 700.2803(1).  The Michigan Court of Appeals recently dealt with the meaning of "felonious" and "intentional" in *In re Nale*, __Mich__; __NW2d__ (Docket No. 293802, 2010) 2010 WL 4751767.  In that case, the respondent stabbed her husband to death.  She was charged with second-degree murder, but a jury convicted her of voluntary manslaughter.  *Id*. at slip op p 1.  After the conviction, the petitioner sought to apply the slayer statute to find that the respondent forfeited all benefits from the decedent's estate.  The respondent argued that only first and second degree murder would amount to a "felonious and intentional killing" as required for the slayer statute.  *Id*. at slip op pp 1-2.  The Court of Appeals rejected this argument.  It noted that courts have specifically designated voluntary manslaughter as an intentional killing.  *Id*. at slip op p 3.  It also noted that the common law slayer rule make no distinction between murder and manslaughter.  Therefore, it concluded the slayer statute precluded recovery by a person who is shown to have committed voluntary manslaughter.  *Id*. at slip op p 4.  This Court reached the exact same conclusion in a federal ERISA action pending out of the same facts:

---

[1] EPIC has subsequently been amended to repeal MCL 700.251 and replace it with MCL

HARVEY KRUSE

ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION

1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Because voluntary manslaughter is an intentional killing under Michigan law and because Plaintiff was convicted of voluntary manslaughter, Plaintiff is subject to both Michigan's slayer statute and the federal common law "slayer's rule." [*Nale v Ford Motor Co UAW Retirement Plan*, 703 F Supp2d 714, 723 (ED Mich, 2010).]

Evidence exists to show that Gary Lupiloff's murder was an intentional killing. He was shot in the back while in his driveway during a period of time when a neighbor would have been away from the area and could not witness the killing. (See Exhibit 8) The death has been ruled a homicide by the coroner. (See Death Certificate attached to Exhibit 11) The Royal Oak police department is continuing to investigate the murder. They have obtained Nationwide's records through a subpoena and have specifically informed Nationwide and its attorneys that William is a prime suspect in the killing. A grand jury has been convened in Oakland County Michigan. Witnesses have offered testimony before the grand jury about this murder, including Williams potential involvement. Nicole and Monica have raised accusations regarding William and Jennifer being involved in the killing. Nicole, Monica, and the estate have made claims contrary to William and Jennifer's claims to the policy proceeds based on the alleged intentional killing by William and Jennifer. Under the circumstances, a significant question exists whether William and/or Jennifer is legally entitled to recover under the insurance policy.

The insurance policy in this case is subject to Michigan law and must be read to comply with it. "Insurance policies are also subject to statutory regulation, and mandatory statutory provisions must be read into them." *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 434; 773 NW2d 29 (2009). This Court has explained that this is a long-standing and well-accepted rule of interpreting insurance policies. *Crobons v Wisconsin Nat'l Life Ins Co*, 594 F Supp 379, 383 (ED Mich, 1984). In *Crobons*, a dispute existed regarding whether a change of beneficiary occurred before or after the insured died. The defendant stated that the policy should be

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

700.2803. The statutes are substantially similar and generally contain all of the same provisions.

interpreted according to the Michigan statutes referred to as the Death Act. The plaintiff argued that this would be impermissibly reading the statute into the contract. The Court rejected the plaintiff's argument:

> [T]he case law consistently holds to the contrary, stating the rather obvious proposition that insurance policies are subject to statutory regulations, and the provisions of statutes must be read into those contracts[.] [*Id.*]

The Michigan Legislature has specifically included this rule in its regulation of life insurance policies. The Legislature explained that all life insurance policies "shall be made in accordance with the statutes now or hereafter regulating the business of life insurance." MCL 500.2226. *Crobons* explained that this rule would apply to any statute that would be vital to the life insurance industry:

> Although the Death Act may not be part of the Michigan Insurance Code, designed specifically for regulation of the insurance industry, it is clearly addressed to a matter that is of vital concern to the operation of that industry and in particular, the administration of policies of life insurance. The court concludes, therefore, that Death Act establishes the rule for determining the time of death of Gene Crobons in this case. [*Crobons*, 594 F Supp at 383.]

The Sixth Circuit affirmed *Crobons*. *Crobons*, 790 F2d 475 (CA 6, 1986). The Sixth Circuit found the statute applicable and concluded that its clarity ended any question regarding its meaning: "The clarity of the statutory language precludes further judicial interpretation." *Id.* at 790 F2d at 479.

The slayer statute is even more vital to the life insurance industry than the Death Act discussed in *Crobons*. Unlike the Death Act, it is specifically addressed to life insurance policies. The Legislature has made clear that it intended the slayer statute to apply to insurance policies in its definition of "governing instrument" in MCL 700.1104(k). "The cardinal principle of statutory construction is that courts must give effect to legislative intent." *Burton v Reed City Hosp Corp*, 471 Mich 745, 751; 691 NW2d 424 (2005). The Legislature expressly stated that

the slayer statute apply to life insurance policies. Therefore, the insurance policy in this case must be read in that light to conform to the requirements of that statute. *Crobons*, 594 F Supp at 383.

Under the slayer statute, any person who feloniously and intentionally killed Gary Lupiloff would be legally eliminated from being a beneficiary under the policy. There is no dispute that Lupiloff was murdered, and Nationwide was informed that the murder may have been committed by William. This information came from official sources and was also raised by other potential claimants under the policy. Until the issue is decided, Nationwide cannot know who the proper beneficiary is under the policy as modified by the statute. Without knowing who the proper beneficiary is, Nationwide cannot be faulted for failing to pay the benefits. This is especially true given that William was involved in obtaining the policy in the first place, which may have been part of his plot to kill Gary Lupiloff.

As explained above, the law has established a proper course of action when there is confusion or conflicts regarding who is the correct beneficiary under an insurance policy. That proper course of action is to file an interpleader action. FRCP 22. Nationwide followed this process and filed this suit.

*Metro Life Ins Co*, 167 Mich App at 114 demonstrates that interpleader is the appropriate means for handling such cases. In that case, the defendant wife was having an affair with a teen boy. The decedent found out and began taping his wife's phone conversations. The decedent allegedly told a third party that he heard his wife and the teen boy plotting to kill him. Despite this, he went on vacation with his wife and stayed in an eighth-story hotel room. A short time into the stay, the decedent somehow went over the edge of the balcony and fell to his death, shortly after, or during, an argument with the defendant wife. The defendant wife gave

HARVEY KRUSE

ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

conflicting stories about the incident, including one where she claimed that the decedent liked to jump from balcony to balcony when he stayed at hotels. Despite this, the prosecutors found that they did not have sufficient evidence to charge the wife and/or the teen boy. Both the wife and the decedent's daughters from a previous marriage claimed a right to the decedent's insurance policy. Metro Life filed an interpleader action in circuit court naming the wife, the daughters, a daughter from the second marriage, decedent's former spouse and the personal representative of the estate as defendants. The insurance company noted a dispute regarding to whom the proceeds from the policy should be distributed. *Id.* at 116-117. The daughters then filed a cross-claim against the wife based on the slayer statute. The Court of Appeals found this appropriate and allowed the case to proceed for a determination of which party should recover the policy proceeds. *Id.* at 120-121.

*Metro Life Ins Co* indicates that interpleader is the proper course of action for an insurer when there is a slayer statute issue. Nationwide followed this law, the statutory requirements, and its policy requirements in filing this case. It cannot now be penalized for following the law.

## V.     UTPA Penalty Interest Is Not Intended to Apply to Interpleader Cases

The UTPA, MCL 500.2001, et seq., regulates the business of insurance:

> The purpose of this uniform trade practices act is to regulate trade practices in the business of insurance in accordance with the intent of congress as expressed in the act of congress of March 9, 1945 (Public Law 15, 79th Congress as amended), by defining, or by providing for the determination of (under standards or procedures herein prescribed), all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined. [MCL 500.2002.]

MCL 500.2006(1) indicates that a failure to pay an insurance claim on a timely basis is an unfair trade practice that can subject the insurer to penalty interest:

> A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the

HARVEY KRUSE

ATTORNEYS & COUNSELORS      A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

MCL 500.2006(4) provides when the statute considers the payment of benefits overdue in order to start the clock running on the penalty interest:

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. . . .

A key component of the UTPA is satisfactory proof of loss. This is ordinarily something that could be readily determined by an insurer. MCL 500.2006(3). But this statute must be considered in light of, and in relation to, the slayer statute. As the Michigan Supreme Court has recently explained, when interpreting a statute, that interpretation must be done in light of statutes relating to the same subject:

> "In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law." [*Duffy v Michigan Dept of Natural Resources*, __Mich__; __NW2d__ (Docket No. 140937, 2011) 2011 WL 3760871 at *4, quoting *Remus v Grand Rapids*, 274 Mich 577, 581; 265 NW2d 755 (1936).]

In this process, any inconsistencies between statutes must be reconciled. *Remus*, 274 Mich at 586. And the statutes should be construed in such a way to give each statute full effect and application: "statutes are to be construed in pari materia so as to give the fullest effect to each provision." *Glover v Parole Bd*, 460 Mich 511, 527; 596 NW2d (1999). As the Michigan Supreme Court succinctly explained:

> The object of this rule is to give effect to the legislative purpose as found in statutes on a particular subject. Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies

13

wherever possible. [*World Book Inc v Dept of Treasury*, 459 Mich 403, 416; 590 NW2d 293 (1999).]

The UTPA penalty interest statute and the slayer statute both relate to a common issue or subject, namely, when it is appropriate for an insurer to make a payment under an insurance policy. The purpose of MCL 500.2006 is to punish a recalcitrant insurer who refuses to pay when a meritorious claim is submitted to it:

> The purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay in recovering benefits to which the plaintiff is ultimately determined to be entitled. [*Federal Ins Co v Hartford Steam Boiler Inspection & Ins Co*, 415 F3d 487, 499 (CA 6, 2005) (citation omitted).]

This is a well settled rule in Michigan:

> It is well recognized that the purpose of § 500.2006(4) is to penalize insurers for dilatory practices in settling meritorious claims. *E. g., Medley*, 126 Mich.App. at 743, 337 N.W.2d 909. It is not intended to compensate a plaintiff for delay in recovering funds which are ultimately determined to rightfully belong to him or her. [*Bd of Trustees of Michigan State University v Continental Ins Co*, 730 F Supp 1408, 1417 (WD Mich, 1990).]

The essential point of the slayer statute is that "*a killer cannot profit from his or her wrong*." MCL 700.2803(5). Among its various functions, the slayer statute restricts who is a proper claimant under an insurance policy. A person guilty of an intentional and felonious killing of the insured can never recover under the insurance policy. The killer's rights under that policy are revoked. MCL 700.2803(2)(a).

Reading these two statutes together, a person guilty of an intentional and felonious killing of the insured can never complete a satisfactory proof of loss because he or she can never legally claim under the policy. Without completing a satisfactory proof of loss the penalty interest cannot apply. MCL 700.2803; MCL 500.2006.

But beyond this, the concept of imposing penalty interest in a case potentially involving the slayer statute in antithetical to the system established for handling those cases. In such cases,

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

14

the insurer cannot know who a proper claimant is until it is determined whether or not a felonious and intentional killing occurred. Multiple potential claimants exist without a means at that time to specifically determine which one will be the final, justified claimant in the end. Our system of law has concluded that an insurer should not just randomly pay benefits but should, instead, file an interpleader in order determine the correct claimant. *Metro Life Ins Co*, 167 Mich App at 114.

To apply the UTPA penalty interest to these cases would be to destroy the system. It would force an insurer to pick between the claimants, immediately and without full knowledge, in hopes of choosing the correct one to avoid the rather substantial penalty interest. This will undermine the "admirable remedy" of interpleader and potentially destroy the purpose of the slayer statute. Frankly, reading the UTPA to apply penalty interest during the pending interpleader action and before the insurer can properly know how to act under the slayer statute would be an absurd and conflicting reading of these statutes. Such a reading would be contrary to the rule requiring that statutes be read to give them their fullest effect and so as not to conflict. *Remus*, 274 Mich at 586; *Glover*, 460 Mich at 527. "[S]tatutes should be construed so as to avoid absurd results". *Schultz v Gen RV Ctr*, 512 F3d 754, 759 (CA 6, 2008). To avoid an absurd result, UTPA penalty interest cannot apply to an interpleader action to determine the proper beneficiary, if any, in a slayer statute case. In such cases, the insurer is not simply delaying paying; it does not known to whom it may legally make such a payment. The express intent behind the UTPA penalty interest would not be served by applying it in such cases.

Applying UTPA penalty interest to these cases would also potentially expose the insurer to double liability. Faced with potential penalty interest, the insurer would have to choose between the potential claimants. It could either pay the named claimant, who is suspected of

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS  A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

murder, or it could pay the claimants not named in the policy but who are not suspects in the murder. In the former case, the insurer faces the potential of double liability if evidence is later gathered that the claimant intentionally and feloniously killed the insured person. In that situation, the insurer would then face a claim by the other claimants alleging wrongful payment under the slayer statute requiring a second payment. In the latter situation, the insurer faces the possibility that the investigation may not bear fruit and sufficient evidence of the felonious and intentional killing may not be found. Then the insurer would face a double payment because it would be subject to a breach of contract claim from the original claimant. The rush to payment is exactly what interpleader was designed to prevent. The UTPA penalty interest directly contradicts that purpose.

Michigan courts have not specifically dealt with this issue. But other Courts addressing similar issues have rejected penalizing an insurer for failing to choose between potential claimants in an interpleader. In *Prudential Ins Co of America v Hovis*, 553 F3d 258 (CA 3, 2009), the insurer filed an interpleader action because of a dispute regarding changes to beneficiaries. One of the defendants filed a counter claim stating that the insurer was negligent and acted in bad faith in not paying him immediately. The Court rejected the counter claims because they were inconsistent with the very purpose and nature of interpleader:

> To allow Prudential to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a "stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim." *Bierman v. Marcus,* 246 F.2d 200, 202 (3d Cir.1957). Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty. [*Prudential Ins Co*, 553 F3d at 265.]

In *Metro Life Ins Co v Barretto*, 178 F Supp2d 745 (SD Tex, 2001), the life insurer brought an interpleader action. One of the claimed beneficiaries brought counter claims for

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

16

timeliness of payment, violation of the Texas Consumers Protection Act, violations of the insurance code, breach of good faith and fair dealings, and other similar claims predicated on the insurer's failure to pay her benefits. *Id.* at 747. The Court granted summary judgment on the counter claims. "An insurance company should not be compelled to act as judge and jury at its own peril when faced with such [competing] claims . . . . Interpleading the funds is the only realistic remedy." *Id.* at 748.

Similarly, other courts have stated that counter claims cannot continue when they are based on the fact that the fund holder filed an interpleader rather than paying one of the claimants. See: *Lutheran Brotherhood v Comyne*, 216 F Supp 2d 859, 862-863 (ED WI, 2002) ("Put differently, those counterclaims are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants. Courts have consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief."); and *United States Trust Co of New York v Alpert*, 10 F Supp2d 290, 307 (SD NY, 1998) (granting summary judgment on indentures and breach of fiduciary duty counter claims to an interpleader action that claimed that the insurer should have simply plaid the counter-plaintiff because "the Trustees in bringing their interpleader action acted within the rights granted to them by law, counter claims cannot be grounded upon adherence to such a statutorily authorized procedure.").

Nationwide should not be penalized for following Michigan law and filing this interpleader. Because Nationwide is not required to pay, if ever, until the end of this case, no penalty interest should apply, and the counter claim under the UTPA should be dismissed.

## **RELIEF REQUESTED**

Nationwide respectfully requests that this honorable court grant it summary judgment on

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

the UTPA claim, and that it tax any fees or costs to the counter plaintiffs.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court via the Electronic Case Filing system which will send notice to all attorneys of record.

By: /s/Michael F. Schmidt
    Michael Schmidt (P25213)
    Attorney for Defendant
    1050 Wilshire Drive, Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800
    mschmidt@harveykruse.com

Dated: September 13, 2011

Respectfully submitted,
HARVEY KRUSE, P.C.

By: /s/Michael F. Schmidt
    Michael Schmidt (P25213)
    Attorney for Defendant
    1050 Wilshire Dr., Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800
    mschmidt@harveykruse.com

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800