# EXHIBIT 14

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

        Plaintiff/Counter-Defendant,

vs.                                                                    Case No.   11-cv-12422-AC-MKM
                                                                    Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants,

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

        Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

        Defendants/Cross-Defendants.

_____/

| Michael F. Schmidt P25213 | Albert L. Holtz P15088 |
|---|---|
| Nathan Peplinski P66596 | Attorney for Monica Lupiloff, Nicole Lupiloff |
| Attorneys for Plaintiff | and Nicole Lupiloff, Per Rep of the Estate of |
| 1050 Wilshire Drive, Suite 320 | Gary Lupiloff, Deceased |
| Troy, MI  48084 | 3910 Telegraph Road, Suite 200 |
| (248)649-7800 | Bloomfield Hills, MI  48302 |
| | (248)593-5000 |

HARVEY KRUSE
ATTORNEYS & COUNSELORS  A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

| | |
|---|---|
| John H. Bredell P36577<br>Attorney for Keenes<br>119 N. Huron Street<br>Ypsilanti, MI 48197<br>(734)482-5000 | Geoffrey N. Fieger P30441<br>Jeffrey A. Danzig P36571<br>Co-Counsel for Monica Lupiloff, Nicole Lupiloff and Nicole Lupiloff, Per Rep of the Estate of Gary Lupiloff, Deceased<br>19390 West Ten Mile Road<br>Southfield, MI 48075<br>(248)355-5555 |

_____/

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT JENIFER KEENE TO PROVIDE COMPLETE ANSWERS TO DISCOVERY REQUESTS AND NOTICE OF HEARING THEREON**

PLEASE TAKE NOTICE that on a date and time to be set by the court, or as soon thereafter as counsel can be heard by the Honorable Avern Cohn in his Courtroom, plaintiff, Nationwide Life Insurance Company, will move for an order to compel defendant Jennifer Keene[1] to provide complete answers to the interrogatories and requests to produce dated July 21, 2011. The Keenes provided late answers to these discovery requests on September 23, 2011. These answers were incomplete and evasive. On October 3, 2011, plaintiff sent a letter to the Keenes' counsel asking for complete answers to specific discovery requests. William supplemented the answers on October 20, 2011, but the answers again remained incomplete. Plaintiff sent a second letter on October 26, 2011, which again detailed the missing information from the discovery responses. The Keenes failed to respond to this letter or offer complete answers to the discovery requests. On January 11, 2012, during plaintiff's motion for partial summary judgment, a conference was held with the Court regarding the incomplete answers. The Court ordered William to provide complete answers at that time. The Court advised at that time that plaintiff should file a motion regarding Jennifer's failure to answer the discovery requests. Thus, plaintiff files this motion.

THEREFORE, plaintiff moves this Honorable Court to compel Jennifer to provide complete

---

[1] Plaintiff will refer to William and Jennifer Keene collectively as the Keenes and individually by their first name.

1

answers to these interrogatories/requests to produce within 10 days.

Pursuant to Local Rule 7.1, concurrence has been sought from the Jennifer's attorney, but it cannot be obtained.

Plaintiff bases this motion on the records and files in this case and supports it with the accompanying memorandum of law and the required separate statement of material facts.

**CERTIFICATE OF SERVICE**
I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court on the below listed date via the Electronic Case Filing system, which will send notice of filing to all attorneys of record.

/s/ Carolyn R. Urbanik
Carolyn R. Urbanik, Assistant, Harvey Kruse P.C.
1050 Wilshire Drive, Suite 320
Troy, MI 48084-1526

DATED: February 17, 2012

Respectfully submitted,

BY: /s/Michael F. Schmidt
　　Michael F. Schmidt P25213
　　Nathan Peplinski P66596
　　Harvey Kruse P.C.
　　Attorneys for Plaintiff
　　mschmidt@harveykruse.com
　　npeplinski@harveykruse.com
　　1050 Wilshire Drive, Suite 320
　　Troy, Michigan 48084-1526
　　(248) 649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

    Plaintiff/Counter-Defendant,

vs.                                                     Case No. 11-cv-12422-AC-MKM
                                                     Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants,

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

    Defendants/Cross-Defendants.

_____/

| | |
|---|---|
| Michael F. Schmidt P25213 | Albert L. Holtz P15088 |
| Nathan Peplinski P66596 | Attorney for Monica Lupiloff, Nicole Lupiloff |
| Attorneys for Plaintiff | and Nicole Lupiloff, Per Rep of the Estate of |
| 1050 Wilshire Drive, Suite 320 | Gary Lupiloff, Deceased |
| Troy, MI 48084 | 3910 Telegraph Road, Suite 200 |
| (248)649-7800 | Bloomfield Hills, MI 48302 |
| | (248)593-5000 |

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526    248-649-7800

John H. Bredell P36577  
Attorney for Keenes  
119 N. Huron Street  
Ypsilanti, MI 48197  
(734)482-5000

Geoffrey N. Fieger P30441  
Jeffrey A. Danzig P36571  
Co-Counsel for Monica Lupiloff, Nicole Lupiloff and Nicole Lupiloff, Per Rep of the Estate of Gary Lupiloff, Deceased  
19390 West Ten Mile Road  
Southfield, MI 48075  
(248)355-5555

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT JENNIFER KEENE TO PROVIDE COMPLETE ANSWERS TO DISCOVERY REQUESTS

### ISSUE PRESENTED

Whether defendant Jennifer Keene should be compelled to provide complete answers to plaintiff's discovery requests regarding relevant information for this case.

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## CONTROLLING AUTHORITY

This matter is controlled by FRCP 33, FRCP 34 and FRCP 37.

## ARGUMENT

I.   **Discovery is Intended to Be Broad and Complete**

FRCP 26(b) allows for the discovery of any non-privileged matter that is relevant to any claim or defense. FRCP 33 and 34 detail the means of obtaining that relevant discovery. FRCP 33(b)(3) requires that a party responding to interrogatories must answer each request: "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Pursuant to this rule, each answer must either contain a full, written answer or a proper objection to the interrogatory.

Jennifer is required to give full and complete answers that are not evasive or misleading to all of the discovery requests: "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FRCP 37(a)(4). Evasive and incomplete answers are treated the same as if the party provided no answer at all. Any knowledge that Jennifer has that has been requested in the discovery requests must be provided. FRCP 37. Courts have explained that a party may not merely provide incomplete or evasive answers simply because he or she does not want to go through the trouble of searching his or her records:

> Under Rule 33 of the Federal Rules of Civil Procedure, a party must give full and complete answers to interrogatories served on him by another party. While a party may not have a duty to search out new information, it is undisputed that a party has a duty to provide all information available to him. Information which is controlled by a party is available to him. [*Trane Co v Klutznick*, 87 FRD 473, 476 (WD Wis, 1980).]

The federal discovery rules are intended to be given a broad and liberal construction. Their intent is to ensure that federal trials are not conducted in the dark. *Schlagenhauf v Holder*, 379 US

HARVEY KRUSE    A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

104, 114-115; 85 S Ct 234; 13 L Ed 2d 152 (1964). This is especially true when the interrogatory goes to the facts on which claims or defense are founded:

> Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. [*Hickman v Taylor*, 329 US 495, 507; 67 S Ct 385; 91 L Ed 451 (1947).]

As the District Court for the Northern District of Illinois stated in following the United States Supreme Court's directions from *Hickman*:

> It is clear that the defendants are entitled to know the facts upon which plaintiff's claim is founded. Mutual knowledge of the relevant facts is essential to proper litigation. Either party may compel the other to disclose what relevant facts he has in his possession. [*Sargent-Welch Scientific Co v Ventron Corp*, 59 FRD 500, 503 (ND Ill, 1973).]

FRCP 37 provides a means to effectuate the intended broad and complete discovery in federal cases. This rule states that a motion to compel discovery is appropriate when "a party fails to answer an interrogatory submitted under Rule 33." FRCP 37(a)(3)(B)(iii).

In this case, Jennifer provided incomplete and evasive answers as outlined in the accompanying statement of facts. Jennifer objects and refuses to answer most of the discovery requests claiming that they are "not applicable to this Defendant". (Exhibit 8) Jennifer is a potential claimant under the Nationwide policy because William changed the policy to list her as a contingent beneficiary. If William is disqualified as a claimant, Jennifer arguably is the next in line to recover. Thus, the facts and requests regarding Jennifer's involvement/knowledge in this case are crucial. This is exactly why Jennifer is a party to the case. As a party to the case, she is required to answer the discovery requests like anyone else.

Jennifer also simply failed to produce documents that the Keenes admit are relevant and which they stated that they would produce. This includes phone records and additional records

3

regarding payments to Nationwide. Given that the Keenes stated that they would produce these documents but have failed to do so, Jennifer should be compelled to do so.

II.     **The Financial Information is Relevant**

Jennifer also refuses to turn over financial information, claiming that the requests are not applicable to her. The financial information is relevant to this case. A core consideration of this case is that the Keenes either committed the murder or commissioned the murder of Gary Lupiloff in order to profit from his life insurance policy. Further, a potential defense to the Keenes' claims under the policy is that the entire insurance transaction was fraudulent from the inception with the Keenes planning to financially benefit from the insurance policy by murdering Gary Lupiloff. The Keenes' financial condition is relevant to these defenses/case theories and is relevant to show motivation for their alleged actions. Jennifer and William are husband and wife. Their finances are interconnected. As William's wife, and as a contingent beneficiary, Jennifer has as much financial interest in Gary Lupiloff's murder as William. Her financial information is equally relevant and discoverable in this case. The financial information is also important to put the financial transactions which have been disclosed between William and Gary Lupiloff in the proper perspective.

Gary Lupiloff was shot to death on the driveway of his home in Royal Oak, MI on July 13, 2011. The Royal Oak police have informed Nationwide and its attorneys that William is a prime suspect in the Gary Lupiloff murder. Just two days after the murder, William sought to recover under the Nationwide policy. William has alleged that Gary Lupiloff was defrauding him and that he was not being paid back on a loan made to Gary Lupiloff. Gary Lupiloff showed no inclination to actually pay the Keenes back. The only way for the Keenes to get their money back would be to collect under the policy. But Lupiloff was a rather young man and not likely to die soon. In addition, Gary Lupiloff had stopped paying the policy premiums. The Keenes were

4

paying the policy premiums in his place. The premiums on the insurance policy were about to significantly increase and continue significantly increasing thereafter, which would make continuing the life insurance policy cost prohibitive. The only way for the Keenes to stop paying premiums and recover under the policy was for Gary Lupiloff to die. The murder made this possible, and in fact, the murder was the only thing that made the insurance policy a reasonable investment for the Keenes.

No other person had the same financial motive as the Keenes to kill Gary Lupiloff. William was the primary beneficiary under the Nationwide policy and had changed the policy to list Jennifer as the contingent beneficiary. There is no evidence of any other life insurance policy or other substantial assets that would benefit anyone else. And any other individuals that Gary Lupiloff allegedly owed money to would only lose with his death. They will recover nothing now that he is dead. As long as he stayed alive, they had the possibility of recovery from him or the possibility to bring a legal action against him to force a recovery. These possibilities are now gone. Thus, the Keenes are the only ones that would financially benefit from the murder.

There are at least relevant reasons to suspect that the Keenes are making a fraudulent insurance act through making their claim under the insurance policy. Courts have consistently found that financial information regarding a party is relevant evidence in cases involving potential insurance fraud. This is a well accepted rule of law:

> Evidence of an insured's financial condition, including personal income tax returns, is admissible with regard to the issue of whether the insured had a motive to destroy insured property and collect the insurance proceeds. [44A Am Jur2d Insurance § 1986.]

Michigan Courts have repeatedly dealt with this issue and have followed the general rule allowing for the admission of financial information regarding the insurance claimant when it is

5

used to show motive for falsifying an insurance claim and not used to simply show that a person is poor:

> This Court thus drew a distinction between evidence of poverty and unemployment-evidence that a person is chronically short of funds-and evidence of the sort involved in this appeal, showing that a person is experiencing a shortage of funds that appears to be novel or contrary to what one would expect is typically felt by such a person. [*Smith v Michigan Basic Prop Ins Ass'n*, 441 Mich 181, 194; 490 NW2d 864 (1992).]

In *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686-687; 555 NW2d 1 (1996), the Michigan Court of Appeals found that the trial court erred in instructing the jury that testimony regarding the insured's financial condition was relevant to a case involving a claim for fire insurance coverage. The Supreme Court reversed, finding the testimony relevant to the insurance dispute: "[T]here was no manifest injustice in instructing the jury that the facts relating to the plaintiff's financial condition were material." *Mina v Gen Star Indemnity Co*, 455 Mich 866; 568 NW2d 80 (1997).

The Michigan Court of Appeals has repeatedly followed this rule: *Johnson v Michigan Basic Prop Ins Ass'n*, unpublished opinion per curiam of the Michigan Court of Appeals, issued February 25, 1997 (Docket No. 191339) ("Our review of the record leads us to conclude that the challenged evidence revealed a sufficient deterioration of plaintiffs' financial circumstances to justify its admission. Accordingly, the circuit court did not abuse its discretion in admitting the evidence of plaintiffs' financial condition."); *Michigan Basic Prop Ins Ass'n v JT Hair Designs*, unpublished opinion per curiam of the Michigan Court of Appeals, issued November 19, 1999 (Docket No. 204949) ("The trial court did not err in concluding that the requested tax information was relevant to plaintiff's investigation into the incendiary nature of the fire. . . Further, the tax information was reasonably relevant to plaintiff's investigation into the accuracy of defendants' claim . . ."); *Green v Farm Bureau Ins Co*, unpublished opinion per curiam of the

Michigan Court of Appeals, issued May 11, 1999 (Docket No. 205135) (noting that extensive evidence of the plaintiff's debts and misstatements on tax returns showed "plaintiffs had a motive to commit arson and fraud."); *People v Butler*, unpublished opinion per curiam of the Michigan Court of Appeals, issued November 17, 2000 (Docket No. 221261) ("This evidence concerned defendant's financial situation at the time of the fire, and did not suggest that defendant was chronically short of funds. The prosecutor was not attempting to show that defendant was generally poor, and therefore she burned her home, but that at the time of the fire defendant was in a financial crisis and was motivated to collect insurance money."); *Khoury v Northern Mut Ins Co*, unpublished opinion per curiam of the Michigan Court of Appeals, issued March 23, 2001 (Docket No. 219604) ("Further, the trial court correctly permitted the insurer to explore plaintiff's financial status up to the date plaintiff made his final proof of claim because defendant alleged that plaintiff had committed false swearing in making such claims."); and *Hudkins v Farm Bureau Mut Ins Co*, unpublished opinion per curiam of the Michigan Court of Appeals, issued February 19, 2002 (Docket No. 222848) (finding it appropriate that the trial court gave the insurer "wide latitude" in admitting evidence of the insured's financial motive to engage in arson).

The Sixth Circuit followed the same rule when applying Michigan law in *Steele v Great American Ins Co*, 850 F2d 692 (CA 6, 1998) (unpublished). The insured made a claim for insurance coverage that was inconsistent with his actual income. The Court concluded that this was a material fact that the insurer had the right to know:

> In light of the company's understandable suspicion regarding the large amount of the personal property claim made by an unemployed person, the source of any non-taxed income would be a material fact to the insurer. [*Id.* at *12.]

In *Doerr v Allstate Ins Co*, 121 Fed Appx 638 (CA 6, 2005) (unpublished), the evidence tended to show that the insurance claim was fraudulent. The insurer sought credit card account

7

statements, bank statements, rental property statements, cell phone records and tax returns. The Court found it all relevant and that the failure to produce the evidence amounted to a lack of cooperation by the insured because the financial condition of the insured was relevant to the investigation regarding whether the fire was intentionally set. *Id.* at 641.

Courts throughout the country have concluded that an insurer is entitled to obtain financial information in order to determine if there was motive to file a fraudulent insurance claim. In *Nichols v Aetna Life & Cas Co*, 1995 WL 740007 (SD NY, 1995), the Court completely rejected the argument that tax returns were irrelevant to the case involving a dispute over the validity of an insurance claim:

> [P]laintiff's claim that the request for his tax returns seeks irrelevant information, which is in any event available elsewhere, is seriously flawed. Plaintiff's financial situation is relevant to his potential motive to falsify, to whether he could live the lifestyle he claims, and generally to his credibility. . . . While plaintiff argues that tax returns should not be ordered produced if the information is available elsewhere, he has steadfastly refused to produce the credit card records which arguably might be another source of the most directly relevant information. Case authority amply supports the production of financial information in the context of insurance claim litigation[.] [*Id.* at *1 (emphasis original).]

In *Sidney Binder, Inc v Jewelers Mut Ins Co, Inc*, 28 Mass App Ct 459; 552 NE2d 568 (1990), the insured claimed insurance coverage for the theft of various jewelry. The insurer sought financial information regarding the insured business, the owner, and the owner's other business. The insured argued that such evidence was irrelevant. *Id.* at 461-462. The Court noted that all of the finances were relevant:

> These interconnections served to round out other evidence that the store burglary had been staged. Evidence that Binder had reasons to want very much the proceeds of insurance and the proceeds of the sale of the "stolen" jewelry rendered more plausible evidence that he had set up the burglary. [*Id.* at 462.]

In *Elgi Holdings Inc v Ins Co of North America*, 511 F2d 957 (CA 2, 1975), the plaintiff claimed to be a successful businessman at the time of his loss, but other evidence contradicted

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

these claims:

> Since Hall had attempted to establish himself as a well-to-do and successful businessman at the time of the trial, this evidence was properly admitted as relevant to the question of motive and to attack Hall's credibility regarding his financial situation. [*Id*. at 959.]

In *Dore v Allstate Indemnity Co*, 264 AD2d 804; 695 NYS2d 422 (1999), the insured made an insurance claim following an auto accident. The insurer sought tax returns, bank account information, and employment information for the insured and her son:

> Here, since the plaintiff seeks to recover under an insurance policy from Allstate and there are indicia of fraud, special circumstances are present to warrant the disclosure of income tax returns . . . The reasoning underlying this principle is that evidence of an insured's financial condition, including personal income tax returns, is admissible with regard to the issue of whether the insured had a motive to destroy the insured property and collect the insurance proceeds[.] [*Id*.]

See also: *Palimier v US Fidelity & Guaranty Co*, 135 AD2d 1057, 1059; 523 NYS2d 192 (1987) (finding financial evidence relevant to an insurance claim because "declining financial circumstances at the time, bear upon the question of plaintiff's credibility".); *Dlugosz v Exch Mut Ins Co*, 176 AD2d 1011, 1013; 574 NYS2d 864 (1991) (finding that the insured breached the duty to cooperate by failing to provide financial information because: "An insurer is entitled to information regarding the insured's financial status, including the insured's income tax return and the insured's prior insurance losses"); *Pilgrim v State Farm Fire & Cas Ins Co*, 89 Wash App 712, 720; 950 P2d 479 (1997) (finding that financial evidence was relevant where the insurance claim was questionable, the insured had made an identical claim in the past, and the claimed purchases did not equate with the listed income of the insured); *Rymsha v Trust Ins Co*, 51 Mass App Ct 414, 417-418; 746 NE2d 561 (2001) (finding that the insured had to release credit card info, business income, personal income, and business records because the insurer "had the right to assure itself of the validity of the claim."); *Phillips v Allstate Indemnity Co*, 156

9

Md App 729, 744-745; 848 A2d 681 (2004) (finding that financial information was relevant as to motive to falsify a claim because the insured's source of income was unclear and he had purchased the stolen item just 10 days before it was stolen); and *Double GG Leasing LLC v Underwrites at Lloyd's, London*, 116 Conn App 417, 428; 978 A2d 83 (2009) (citation omitted) ("[a]rson is a difficult crime to prove. It can only be established by circumstantial evidence and by inquiries into motive. Financial records of the insured are, as the cases say, patently relevant to the insurance company's rightful scope of the investigation").

In all of these cases, evidence of financial condition was relevant to show potential motive for a fraudulent insurance claim. The law cannot be clearer. Financial motive is relevant in insurance cases where there is a potential fraudulent claim. Here the Keenes had a financial motive to kill Gary Lupiloff. As such, their financial condition at the time of the murder is relevant. Jennifer stood to financially benefit from the murder either through her interconnected finances with her husband or through a direct recovery as a contingent beneficiary. Jennifer is not a disinterested party to this case. She is a defendant with a nearly identical position to William. Her financial information is necessary for Nationwide to properly prosecute the case and for this Court to be fully informed in the case. Jennifer should be compelled to answer the discovery requests regarding her financial conditions.

### III. Nationwide is Entitled to Fees and Costs

FRCP 37(a)(5)(A) provides, in part:

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees

Nationwide has demonstrated legitimate grounds for this Court to order Jennifer to properly answer the discovery requests. Jennifer cannot offer any justification for their incomplete answers.

10

Therefore, it is appropriate for this Court to order Jennifer and/or her attorney to pay Nationwide's fees and expenses in having to bring this motion. If Jennifer fails to comply with this order, it would be appropriate to sanction Jennifer. Such sanctions may include a default judgment entered against Jennifer. FRCP 37(b)(2)(A).

### **RELIEF REQUESTED**

Nationwide respectfully request that this Honorable Court order the Keenes to provide complete answers to all of the discovery requests within 10 days and further order that the Keenes pay Nationwide's fees and costs caused by this motion.

| | |
|---|---|
| **CERTIFICATE OF SERVICE**<br>I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court on the below listed date via the Electronic Case Filing system, which will send notice of filing to all attorneys of record.<br><br>/s/ Carolyn R. Urbanik<br>Carolyn R. Urbanik, Assistant, Harvey Kruse P.C.<br>1050 Wilshire Drive, Suite 320<br>Troy, MI 48084-1526<br><br>DATED: February 17, 2012 | Respectfully submitted,<br><br>BY: /s/Michael F. Schmidt<br>    Michael F. Schmidt P25213<br>    Nathan Peplinski P66596<br>    Harvey Kruse P.C.<br>    Attorneys for Plaintiff<br>    mschmidt@harveykruse.com<br>    npeplinski@harveykruse.com<br>    1050 Wilshire Drive, Suite 320<br>    Troy, Michigan 48084-1526<br>    (248) 649-7800 |

HARVEY KRUSE
ATTORNEYS & COUNSELORS · A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 · 248-649-7800