UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

        Plaintiff,

v.

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNN LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF GARY LUPILOFF, DECEASED,

        Defendants.

Case No. 2:11-cv-12422-AC-MKM

Hon. Avern Cohn

---

| | |
|---|---|
| Michael F. Schmidt (P25213)<br>Harvey Kruse, P.C.<br>Attorney for Plaintiff<br>1050 Wilshire Drive, Suite 320<br>Troy, MI  48084<br>248-649-7800 | John H. Bredell (P36577)<br>Bredell & Bredell<br>Attorney for Defendants, William<br> & Jennifer Keene<br>119 N. Huron Street<br>Ypsilanti, MI  48197<br>734-482-5000 |
| Albert L. Holtz (P15088)<br>ALBERT L. HOLTZ, P.C.<br>Attorney for Monica Lupiloff, Nicole Lupiloff<br>and Nicole Lupiloff Personal Representative<br>of the Estate of Gary Lupiloff, deceased<br>3910 Telegraph Road, Suite 200<br>Bloomfield Hills, MI  48146<br>248-593-5000 | Geoffrey N. Fieger (P30441)<br>Jeffrey A. Danzig (P36571)<br>Attorney for Monica Lupiloff,<br>Nicole Lupiloff and Nicole<br>Lupiloff, Personal Representative<br>of the Estate of Gary Lupiloff,<br>deceased<br>19390 West Ten Mile road<br>Southfield, MI  48075<br>248-355-5555 |

---

**RESPONSE IN OPPOSITION TO NATIONWIDE'S
MOTION TO COMPEL DISCOVERY, OR IN THE
ALTERNATIVE FOR SUMMARY DISPOSITION**

Defendant Nationwide filed this action and styled it as an interpleader to avoid paying a $500,000 life insurance policy to Defendant Bill Keene.  The only "evidence" of Bill Keene's involvement in the murder of Gary Lupiloff, according to Nationwide, is the fact that Lupiloff named Keene as a beneficiary on a life insurance policy.  The keen's, Bill and his wife Jennifer, have previously provided Nationwide with all of the bank and phone records in their possession.  However, Nationwide has requested financial records dating back to 1998, a period of 15 years, and the Keenes responded to this request that these records were not in their possession.  However, with this motion, the Keenes have contacted all of the keepers of these records and the results of those contacts will be set forth below.

## Statement of Relevant Facts

The facts of this case can be distilled to a few salient points as they relate to this motion.  There is no dispute that Gary Lupiloff purchased a $500,000 policy of life insurance from Nationwide.  There is also no dispute that defendant Keene had loaned Gary Lupiloff over $125,000 and that Lupiloff failed to repay this loan and that Lupiloff named Keene as the beneficiary of the life insurance policy in an attempt to satisfy this debt that he owed to Keene.  There is also no dispute that when Lupiloff took out the policy, he named his daughters as contingent beneficiaries of the policy.  There is also no dispute that at some point, the ownership of the policy was transferred from Gary Lupiloff to Bill Keene and that as owner of the policy, Keene removed the Lupiloff daughters as contingent beneficiaries and named his own wife, Jennifer Keene as

2

contingent beneficiary.[1] When ownership of the policy was transferred to Bill Keene, the premium payments were thereafter made by Bill Keene.

Although the Lupiloff daughters now claim that the transfer of the policy to Bill Keene was a forgery, there is no question that Nationwide is in possession of documents that transferred the policy to Bill Keene and named Jennifer Keene as a contingent beneficiary. After more than a year of Keene paying the premiums on the policy, Gary Lupiloff was murdered in his own driveway. Because of the existence of the life insurance policy, Keene was named as a "person of interest" by the Royal Oak police. But it is also not in dispute that Gary Lupiloff had made many potential enemies as he was a disbarred lawyer and had discharged millions of dollars in bankruptcy before his death. He also owed a substantial amount of money to other "investors" at the time of his death. Prior to his death, Gary Lupiloff was featured on the local Fox affiliate's "Hall of Shame." He was basically portrayed as a con man. We are not presenting the character of Gary Lupiloff as "facts" but this does provide a background as to motive for shooting Gary Lupiloff, by any number of people other than William Keene.

## Requested Discovery

## Financial Records

What follows is the discovery requested by the Plaintiff and the Defendants response. It should be pointed out that the defendant views these request as

---

[1] Because Jennifer stands in line to collect on the policy, she has been named as a defendant by Nationwide to also declare her rights.

oppressive and unduly burdensome and tracking down 15 years of financial records required extensive time, effort and in some cases, detective work.  However, without waiving these objections, Defendant provides the following:

17(e)   Please provide <u>all</u> monthly statements or other such documents, from 1998 through 2010, for <u>all</u> financial accounts (savings accounts, investment accounts, checking accounts, money market accounts, 401(k) accounts, IRAs, stocks, investment accounts, etc.), including, but not limited to the following accounts:

a.     Fidelity Account ending #6204

**RESPONSE:**  See statements have been sent to him by the Financial Institution Fidelity and are attached.  This is for the period of 1998- 2010.

b.     The Bancorp Banc account ending #0878

**RESPONSE:**  To the best of Mr. and Mrs. Keenes' recollection and after diligent record checking, this is an account that does not exist and never did exist.

c.     Accounts with Janus (as identified on US-1040)

**RESPONSE:**  See attached Fidelity statements for 2001 - 2005.

d.     Accounts with Vanguard (as identified on US-1040)

**RESPONSE:** See attached Vanguard statements from 1998 - 2010.

e.     Accounts with DCFU Financial (as identified on US-1040)

**RESPONSE:**  This account belongs to Jennifer Keene.  The Keenes are not in possession of these records but she  has requested info from her financial institution and has been advised that and  will be mailed to her.

f.     Chase account ending #6635 (previously received 2005 through 2010)

**RESPONSE:**  Jennifer's account.  Account opened after 2005, please see attached.

g.     Chase account ending #6764 (previously received 2005 through 2010)

**RESPONSE:**  See attached letter from Chase regarding unable to obtain.

     h.     All information for any accounts not previously provided

**RESPONSE:**     See enclosed information as requested.


17(f)   Please provide copies of <u>all</u> debt documents (personal loans, land contracts, promissory notes, mortgages, bank loans, business loans, credit cards, credit accounts, lines of credit, etc.), from 1998 through 2010 including, but not limited to the following accounts:

     a.     National City Home equity line of credit account ending #7813:
           i.     All statements except for statement ending March 10, 2010

**RESPONSE:**  Statements being faxed to local branch.  Were promised by 1/8/13, but as of this writing, have not been received.  These statements will be provided to Nationwide upon receipt.

     b.     Washington Mutual Account/Chase ending #1514:
           i.     Statements from all months except for October 17, 2006

**RESPONSE:**  This was transferred to Chase. See attached statements from January 20, 2008 to present.

     c.     Chase MasterCard account ending #0389:
           i.     All statements from 1998 to statement ending November 10, 2008
           ii.    Statement ending December 10, 2010
           iii.   Statement ending January 10, 2011

**RESPONSE:**

           i.     1998 to 2006 are not retrievable.  Can only go back 7 years. See attached email from Chase dated 1/5/2013. December 11, 2006 through December 10, 2008 are attached hereto.
           ii.    December 10, 2010 is attached.
           iii.   January 10, 2011 is attached.

     d.     Chase credit card account ending #1499:
           i.     Statements ending May 15, 2006 through August 15, 2006
           ii.    Statements ending December 15, 2006 through November 11, 2008

       iii.    Statement ending January 15, 2009
       iv.    Statements ending August 15, 2009 through November 15, 2009
       v.    Statement ending October 15, 2010
       vi.    Statements ending December 15, 2010 and January 15, 2011

**RESPONSE:**

       i.    May 15, 2006 through August 15, 2006 are not available online. See attached letter from Chase.
       ii.    December 16, 2006 through December 16, 2010 are attached.
       iii.    There was no statement issued for January 15, 2009.
       iv.    July 16, 2009 through November 15, 2009 are attached.
       v.    October 15, 2010 is attached.
       vi.    December 15, 2010 and January 15, 2011 are attached.

e.    Home Depot Card account ending #2728:
       i.    All statements from 1998 to statement ending November 10, 2009
       ii.    Statement ending in September 2010
       iii.    Statements ending in November 2010 and December 2010

**RESPONSE:** This card is with an attorney's office since it went into default. Home Depot does not handle it and the attorney's do not have the past statements. Weltman Weinberg & Reis, Detroit, MI, 248-362-6100.

f.    Costco Card account ending #1002:
       i.    All statements from 1998 to 2008
       ii.    Statement ending May 2009

**RESPONSE:** See attached statements.

g.    National City Card account ending #9960:
       i.    All statements from 1998 to Statement ending November 2007
       ii.    Statement ending February 2010
       iii.    Statement ending July 2010
       iv.    Statements ending September 2010 through December 2010

**RESPONSE:** Information has been promised to be faxed to a local branch. These records will be faxed to Nationwide upon receipt.

h.    Citi Card account ending #7421:
       i.    All statements ending 1998 through 2008

6

**RESPONSE:** These statements have been ordered from the financial institution. These records will be provided to Nationwide upon receipt.

    i.      Citi Drivers Edge Card account ending #4617:
          i.      Statements ending 1998 through February 2006
          ii.     Statements ending December 2006 through 2010

**RESPONSE:** See attached statements from 1/22/1998 - 12/21/2010.

    j.      Elite Visa Credit Card account ending #9008:
          i.      Statements ending December 2006 through 2010

**RESPONSE:** To the best of Mr. and Mrs. Keenes' recollections and after diligent record checking, this is an account that does not exist and never did exist.

    k.     All information for any accounts not previously provided

**RESPONSE:** See information herein and attached the information as requested.

17(g) Federal, State and local tax returns:

    a.     All tax records from 1998 through 2004

**RESPONSE:** Defendant Bill Keene has already provided Nationwide with all of the tax records in his possession, which dated back to 2004. Attached to these responses is an original signed form 4506 U.S. Dept. of Treasury IRS and form 4095 Michigan Department of Treasury, which allows Nationwide to obtain these records. These forms will also allow Nationwide to obtain certified copies of the requested tax records.

17(g) Certified copies of all Federal, State and local tax returns for 1998 through 2011 for:

    a.     William Keene
    b.     Jennifer Keene
    c.     William and Jennifer Keene filed jointly

**RESPONSE:** See attached signed Request & Consent for State and Federal tax returns.

18.     Documentation regarding the income and expenses (including but not limited to, tax returns, financial statements, cash disbursement and cash receipt ledgers, monthly bank statements, etc.) for each of the following entities from 1998   through 2010:

a.      B.K. Development, LLC

**RESPONSE:**  Corporation formed and used only one time to buy a piece of land in South Lyon, prior to 2005. Defendant Bill Keene no longer has any of these records.

b.      BK 2 Development, LLC

**RESPONSE:**  PNC can produce 7 years of statements, but the cost will be $230. See attached email from PNC. See attached signed authorization for release of all information from PNC.

c.      GK Development, LLC

**RESPONSE:**  This Corporation was formed and used only one time to buy a piece of land in Ferndale, prior to 2005. Bill Keene no longer has any records.

### Medical Records of Jennifer Keene

Jennifer Keene's is the wife of Bill Keene.  After Bill became the owner of the Nationwide policy, he named his wife as his beneficiary.  However, at the time of Gary Lupiloff's death, Bill Keene was and is alive.  Accordingly, Jennifer Keene does not have any claims under the terms of the disputed insurance policy.  Nationwide named her as a defendant, presumably to extinguish any contractual rights she may have under the contract.  Nationwide has requested that Jennifer Keene provide her private records of her treatment by a mental health therapist.  In this breach of contract lawsuit, there is simply no relevance to Jennifer Keen's medical records.

Fed. R. Civ. P. 26(b)(1) provides that, unless limited by court order:

8

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

The court may limit the frequency or extent of discovery under Fed. R. Civ. P. 26(b)(2)(C) if:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Jennifer Keene's medical and or mental conditions are not an issue in this lawsuit. Jennifer Keene is not seeking damages for "emotional distress" not is such a claim cognizable under Michigan Law.  The State of Michigan has codified the doctor patient privilege.

The physician-patient privilege statute provides, in pertinent part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose *any information* that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician,

9

or to do any act for the patient as a surgeon. MCL 600.2157; MSA 27A.2157 (emphasis added).]

The Mental Health Code, MCL 330.1001 *et seq.;* MSA 14.800(1) *et seq.*, includes additional protection for communication to a psychiatrist or psychologist. The Mental Health Code defines "privileged communication" as "a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another person while the other person is participating in the examination, diagnosis, or treatment or a communication made privileged under other applicable state or federal law." MCL 330.1700(h); MSA 14.800(700)(h). The Mental Health Code provides that privileged communications "shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege," except in six enumerated circumstances, none of which is applicable here. MCL 330.1750(1), (2); MSA 14.800(750)(1), (2). The psychiatrist-patient privilege prohibits disclosure of "the fact that the patient has been examined or treated or undergone a diagnosis" except where that information is relevant to a health care provider's or insurer's rights or liabilities. MCL 330.1750(3); MSA 14.800(750)(3). The physician privilege bars disclosure of "*any information*" acquired in the course of the professional relationship, whereas the psychiatrist privilege applies only to the *patient's communications.* However, the record in this case is insufficient for determining if the distinction is important here. Although defendants suggest that the psychiatric privilege might preclude discovery even if the physician privilege does not, we conclude that for purposes of this appeal, there is no difference in the application of these two privileges as applied to the facts here. [*Baker v. Oakwood Hsp.,* 239 Mich App 461, 468, 469 (2000)]

Jennifer Keene's medical condition is not at issue in this case. Jennifer is not allowed to seek damages for the emotional distress caused by Nationwide and the Lupiloffs accusation that her husband Bill Keene married Gary Lupiloff. Jennifer Keene's emotional state and what she may have said to her therapist is irrelevant, confidential and privileged.

10

<u>Marital Privilege</u>

In addition to the physician patient privilege, Bill Keene is also entitled to invoke the

marital privilege.  That statute provides as follows:

§600.2162. Husband or wife as witness for or against other.

Sec. 2162. (1) In a civil action or administrative proceeding, a husband shall not be examined as a witness for or against his wife without her consent or a wife for or against her husband without his consent, except as provided in subsection (3).

(2)     In a criminal prosecution, a husband shall not be examined as a witness for or against his wife without his consent or a wife for or against her husband without her consent, except as provided in subsection (3).

(3)     The spousal privileges established in subsections (1) and (2) and the confidential communications privilege established in subsection (7) do not apply in any of the following:

(a)     In a suit for divorce, separate maintenance, or annulment.

(b)     In a prosecution for bigamy.

(c)     In a prosecution for a crime committed against a child of either or both or a crime committed against an individual who is younger than 18 years of age.

(d)     In a cause of action that grows out of a personal wrong or injury done by one to the other or that grows out of the refusal or neglect to furnish the spouse or children with suitable support.

(e)     In a case of desertion or abandonment.

(f)     In a case in which the husband or wife is a party to the record in a suit, action, or proceeding if the title to the separate property of the husband or wife called or

11

offered as a witness, or if the title to property derived from, through, or under the husband or wife called or offered as a witness, is the subject matter in controversy or litigation in the suit, action, or proceeding, in opposition to the claim or interest of the other spouse, who is a party to the record in the suit, action, or proceeding. In all such cases, the husband or wife who makes the claim of title, or under or from whom the title is derived, shall be as competent to testify in relation to the separate property and the title to the separate property without the consent of the husband or wife, who is a party to the record in the suit, action, or proceeding, as though the marriage relation did not exist.

(4)    Except as otherwise provided in subsections (5) and (6), a married person or a person who has been married previously shall not be examined in a civil action or administrative proceeding as to any communication made between that person and his or her spouse or former spouse during the marriage.

(5)    A married person may be examined in a civil action or administrative proceeding, with his or her consent, as to any communication made between that person and his or her spouse during the marriage regarding a matter described in subsection(3).

(6)    A person who has been married previously may be examined in a civil action or administrative proceeding, with his or her consent, as to any communication made between that person and his or her former spouse during the marriage regarding a matter described in subsection(3).

(7)    Except as otherwise provided in subsection (3), a married person or a person who has been married previously shall not be examined in a criminal prosecution as to any communication made between that person and his or her spouse or former spouse

> during the marriage without the consent of the person to be examined.

   (8)   In an action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife are not competent to testify.

Clearly, Nationwide wants to troll through the mental health records of Jennifer Keene because of its belief that Bill Keene murdered Gary Lupiloff and that he then confessed this murder to his wife and she discussed this conversation with her mental health professionals. As stated above, Jennifer Keene's mental health or emotional state is not an issue in this litigation and therefore, her medical records are completely irrelevant. Nationwide's attempts to discover Jennifer Keene's medical records are nothing more than a transparent attempt to get around the marital privilege. There is no question that Jennifer Keene cannot be compelled to testify against her husband. Certainly, any discussions that Jennifer Keene had with her therapist about anything her husband told her should also be protected by the marital privilege. Statements she made to her therapist were made with an expectation of privacy. It is quite likely that Jennifer Keene has made some statements, to her therapist, about this pending litigation, and Nationwide should not be allowed to discover any of these confidential statements.

WHEREFORE, Nationwide's Motion to Compel, and in the alternative to dismiss, should be denied.

                               Respectfully submitted,

                               s/John H. Bredell
                               119 N. Huron Street
                               Ypsilanti, Michigan  48197
                               Phone:  (734) 482-5000
                               E-mail:  jbredell@bredell.com
                               P36577

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Michael F. Schmidt, Albert L. Holtz, and Geoffrey N. Fieger/Jeffrey A. Danzig.

s/John H. Bredell
119 N. Huron Street
Ypsilanti, Michigan  48197
Phone:  (734) 482-5000
E-mail:  jbredell@bredell.com
P36577

14