UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

    Plaintiff/Counter-Defendant,

vs.

Case No.   11-cv-12422-AC-MKM
Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants,

**NATIONWIDE'S SUPPLEMENTAL BRIEF REGARDING NATIONWIDE'S MOTION TO COMPEL JENNIFER KEENE TO SIGN A RELEASE FOR MEDICAL RECORDS FROM DR. RIBA**

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

    Defendants/Cross-Defendants.

_____/

| | |
|---|---|
| Michael F. Schmidt P25213 | Albert L. Holtz P15088 |
| Nathan Peplinski P66596 | Attorney for Monica Lupiloff, Nicole Lupiloff |
| Attorneys for Plaintiff | and Nicole Lupiloff, Per Rep of the Estate of |
| 1050 Wilshire Drive, Suite 320 | Gary Lupiloff, Deceased |
| Troy, MI  48084 | 3910 Telegraph Road, Suite 200 |
| (248)649-7800 | Bloomfield Hills, MI  48302 |
| | (248)593-5000 |

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

| | |
|---|---|
| John H. Bredell P36577<br>Attorney for Keenes<br>119 N. Huron Street<br>Ypsilanti, MI 48197<br>(734)482-5000 | Geoffrey N. Fieger P30441<br>Jeffrey A. Danzig P36571<br>Co-Counsel for Monica Lupiloff, Nicole Lupiloff and Nicole Lupiloff, Per Rep of the Estate of Gary Lupiloff, Deceased<br>19390 West Ten Mile Road<br>Southfield, MI 48075<br>(248)355-5555 |

_____/

# NATIONWIDE'S SUPPLEMENTAL BRIEF REGARDING NATIONWIDE'S MOTION TO COMPEL JENNIFER KEENE TO SIGN A RELEASE FOR MEDICAL RECORDS FROM DR. RIBA

## STATEMENT OF ISSUE PRESENTED

1. Whether defendant Jennifer Keene should be compelled to provide plaintiff with an authorization to obtain her medical records from Michelle Riba, MD?

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

1

## CONTROLLING AUTHORITY

This issue is controlled by FRE 501, MCL 600.2157, and MCL 3301700(h).

## INTRODUCTION

Plaintiff Nationwide Life Insurance Company filed a motion to compel defendants William and Jennifer Keene[1] to comply with the Court's previous order compelling the Keenes to provide complete answers to Nationwide's discovery requests on December 18, 2012. In this same motion, Nationwide moved the Court to compel Jennifer to sign a release for her medical records from Dr. Michelle Riba. (Record Entry 52)  The Keenes filed a late response to this motion on January 22, 2013, the day before the scheduled motion hearing. This brief raised objections to the signing of the authorization for Dr. Riba. (Record Entry 54)  Oral argument on the motion occurred on January 23, 2013. The Court requested that Nationwide respond to the Keenes' argument regarding the medical privilege for Dr. Riba's records in this supplemental brief.

## ADDITIONAL RELEVANT FACTS

1.  This case deals with right to recover on a life insurance policy on the life of Gary Lupiloff. Gary Lupiloff was shot to death on the driveway of his home in Royal Oak, MI on July 13, 2011. Gary Lupiloff was only 53 at the time of his murder. (News Report, Exhibit 22)

2.  Shortly before this, on June 11, 2007, Nationwide received a change of beneficiary form maintaining William as the primary beneficiary on the policy and replacing Gary Lupiloff's daughters as contingent beneficiaries with Jennifer. (Change of Beneficiary Form, Exhibit 23)

3.  Just two days after the murder, William sought to recover under the Nationwide

---

[1] Nationwide will refer to William and Jennifer Keene individually by their first names. It will refer to them collectively as the Keenes.

2

policy.  (William's Beneficiary Claim Form, Exhibit 25)

4. Royal Oak police have informed Nationwide and its attorneys that William is a prime suspect in the Gary Lupiloff murder.  As the newly named contingent beneficiary, Jennifer had equal motive as her husband to kill Gary Lupiloff and recover under the policy.

5. Gary Lupiloff's daughters challenged the Keene's right to recover under the policy following the murder and sought to recover themselves.  This, and the potential fraud in obtaining the policy as part of a plan to profit from the murder of Gary Lupiloff from the very beginning, prompted Nationwide to file this action.

6. In the discovery in this case, Nationwide has sought to get a full financial picture of the Keenes at the time of the murder.  The Keenes have not fully cooperated in this discovery, which has required this Court to enter an order to compel (Record Entry 46) and required Nationwide to file a motion to compel when the Keenes failed to comply with that order. (Record Entry 51)

7. The records that Nationwide have obtained from the Keenes have been turned over to Nationwide's expert Sharon Filas.  Filas preliminarily reported to Nationwide that the Keenes had significantly declining income from William's real estate business before the murder, leaving Jennifer as the primary source of income for the family.  According to Filas's review, the Keenes were living beyond their means and accumulating significant debt.  The Keenes properties were subject to liens and one property had entered foreclosure.

8. This information prompted Nationwide to subpoena Jennifer's work records. Jennifer's employment records with the University of Michigan Medical Center showed she was a good employee for years.  Early reviews showed she met or exceeded all expectations and was rated excellent or very good in all areas.  (Employment Records, Exhibit 24, pp 149-152, 154-

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

3

160, 164-166)  She received merit salary increases.  (Exhibit 24, pp 79-80, 87, 102, 106)  Her job performance was regularly rated as "surpassing" or "proficient" and she was referenced as an excellent and outstanding physician's assistant.  (Exhibit 24, pp 60-62, 117-128, 133-139, 180-184)  This high level of performance continued into 2010.  (Exhibit 24, pp 22-24)

9. Shortly after the murder, Jennifer's performance began to decline.  In September 2010, she was written up for the first time for chronic delays and lack of timely turnaround.  (Exhibit 24, p 18)  This was followed by a second write up for delays and inefficiencies.  She was then given a Last Chance Agreement to improve her performance.  (Exhibit 24, p 18-19)

10. Included with the employment records is a report from Dr. Riba.  Dr. Riba noted that Jennifer complained of "multiple stressors related to her husband and work."  Jennifer also mentioned that she was "very stressed at home."  Dr. Riba recommended medical leave from work.  (Exhibit 24, p 415, 417)

11. Based on Jennifer sharing a motive and a potential benefit in Gary Lupiloff's murder, the sudden decline in her work just after the murder, and the admissions of stress, especially involving her home life, Nationwide sought Dr. Riba's records to fully investigate Jennifer.  It attempted to subpoena Jennifer's medical records from Dr. Riba on July 23, 2012.  (Subpoena Request, Exhibit 21 to original motion)

12. In order to obtain these medical records, an authorization form was sent to defense counsel for Jennifer to execute.  Jennifer has refused to provide such an authorization.

**ARGUMENT**

FRCP 26(b) allows for the discovery of any non-privileged matter that is relevant to any claim or defense:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."  The requested information does not need to be

4

admissible at trial. Instead, it must merely be reasonably calculated to lead to such evidence: "***Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence***. . . ." FRCP 26(b)(1). The federal discovery rules are intended to be given a broad and liberal construction. Their intent is to insure that federal trials are not conducted in the dark. *Schlagenhauf v Holder*, 379 US 104, 114-115; 85 S Ct 234; 13 L Ed 2d 152 (1964). In fact, the Sixth Circuit has described discovery as "extremely broad:" "The Federal Rules of Civil Procedure (F.R.C.P.) authorize 'extremely broad' . . . discovery." *US v Leggett & Platt, Inc*, 542 F2d 625 (CA 6, 1976), quoting C. Wright, Law of Federal Courts s 81 at 355 (2d ed. 1970). As another court explained:

> Moreover, the test for relevance "in the discovery area is an extremely broad one." *AM Int'l Inc v Eastman Kodak Co.,* 100 FRD 255, 257 (ND Ill,1981). A request for discovery "'should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'" *Id.* (citing 8 Wright and Miller, *Federal Practice and Procedure* § 2008 (1970)). The burden is on the objecting party to show why a particular discovery request is improper. [*EEOC v Klockner H&K Machines, Inc*, 168 FRD 233, 235 (WD Wis, 1996).]

In this case, the sought-after records are relevant to Nationwide's investigation of the murder. Jennifer had a pattern of meeting and exceeding expectations until shortly after the murder. At that point, her performance fell off, and she began to make complaints about stresses involving her husband. Likely, Jennifer had discussions regarding her relationship with her husband, their financial pressures before this murder, motives for the murder, and potentially, her involvement in this murder. At the very least, this attempt to obtain these records is reasonably calculated to reach evidence relevant to this case, which is all that is required. FRCP 26(b)(1).

The Keenes have attempted to avoid the release of this relevant discovery by claiming a physician-patient privilege. Simply because a communication is intended to be confidential does not mean that a privilege exists: "Communications made in confidence are not protected purely

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

5

because of their confidentiality, but may be kept secret only if premised upon a public policy expressed by statute or in furtherance of an overriding public concern of constitutional dimension." 81 Am Jur2d Witnesses § 273.  The treatise further explains that a privilege should only be applied when it furthers a public good:

> Testimonial privileges to protect against the disclosure of specific types of communications ordinarily are grounded in public policy and generally exist to promote certain confidential relationships and encourage candid communications between the parties to those relationships; they exist because the societal interest protected by the privilege exceeds the value of the testimony to the administration of justice. ***These privileges contravene the fundamental principles that the public has a right to every person's evidence; as such, they are not favored and must be strictly, or narrowly, construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good*** transcending the normally predominant principle of utilizing all rational means for ascertaining truth. On the other hand, exceptions to statutory privileges should be broadly construed.  [81 Am Jur2d Witnesses § 273, emphasis added.]

State law controls this issue:  "In a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FRE 501.  Michigan Courts have followed the same reasoning as the treatise:

> When interpreting and applying a statutory privilege, we must remember that "[t]estimonial exclusionary . . . privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence'" and therefore "must be strictly construed." *Trammel v United States*, 445 U.S. 40, 50; 100 S Ct 906; 63 L Ed 2d 186 (1980), quoting *United States v Bryan*, 339 U.S. 323, 331; 70 S Ct 724; 94 L Ed 884 (1950) see also *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000) ("Privileges are narrowly defined and their exceptions broadly construed."). [*People v Bragg*, 296 Mich App 433, 445; __NW2d __ (2012)]

The Michigan Supreme Court has explicitly stated that the narrow construction of privileges applies to the physician-patient privilege:

> The physician-patient privilege is a statutory creation in derogation of common law, and hence will be narrowly construed. *La Count v Von Platen-Fox Co*, 243 Mich 250; 220 NW 697 (1928); *Yount v Nat'l Bank of Jackson*, 327 Mich 342, 347; 42 NW2d 110 (1950). Exceptions to statutory privileges should be broadly construed. *People v Love*, 425 Mich 691, 700; 391 NW2d 738 (1986). [*In

6

*re Brock*, 442 Mich 101, 119; 499 NW2d 752 (1993).]

The Michigan physician-patient privilege is contained in MCL 600.2157:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, ***if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon***. . . .  [emphasis added.]

The Mental Health Code, MCL 330.1001, et seq., contains similar language for mental health treatment in defining what a privileged communication is:

> "Privileged communication" means a communication made to a psychiatrist or psychologist ***in connection with the examination, diagnosis, or treatment of a patient***, or to another person while the other person is participating in the examination, diagnosis, or treatment or a communication made privileged under other applicable state or federal law. [MCL 330.1700(h).]

In this case, any communications regarding the murder, the conspiracy to commit or cover up the murder, or even financial difficulties that could support a motive for the murder are not the type of communications that the privileges are intended to protect. Such communications would not be a necessary part of diagnosis or treatment. They certainly would not be necessary to "prescribe for the patient." MCL 600.2157.

The statutory provisions are limited to communications that are actually necessary for the diagnosis and treatment and exempt communications that are not related to such activities. The Michigan Supreme Court has noted this exception internally contained in the statutory provisions:

> The language of the statute may not be extended beyond its plain terms. In the instant case the physician did not attend Mrs. Lindsay for the purpose of treating her or advising as to treatment. . . .  The conceded facts in the instant case indicate conclusively that the statutory privilege is not applicable. [*Lindsay v Lipson*, 367 Mich 1, 5; 116 NW2d 60 (1962).]

"Exceptions to statutory privileges should be broadly construed." *In re Brock*, 442 Mich at 119. Following this well established rule of law allows Nationwide to subpoena the

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

7

records in question.  This is especially true in light of the fact that that a privilege should be "*accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good*. . . ."  81 Am Jur2d Witnesses § 273, emphasis added. Allowing a criminal to seek solace for her crime or to aid in the cover up of a crime through the therapy process certainly is not a public good.  Therefore, the claim of privilege should be disfavored in cases where the evidence is sought in connection with such possible crimes.

Further, a patient can waive the privilege by allowing the release of the medical information. *See Domako v Rowe*, 438 Mich 347, 356-357; 475 NW2d 30 (1991).  In this case, Jennifer apparently *waived her privilege* and allowed Dr. Riba to provide her records to her employer.  (Exhibit 24, pp 415, 417)  Given that the privilege was waived, Jennifer should be compelled to sign the authorization for the release of the records to Nationwide.

## RELIEF REQUESTED

Nationwide respectfully requests that this Honorable Court order that Jennifer Keene sign a release for her medical records with Dr. Michelle Riba.  At the very least, an in camera review of these records by the Court would be appropriate to determine what relevant information is contained in them.

**CERTIFICATE OF SERVICE**
I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court on the below listed date via the Electronic Case Filing system, which will send notice of filing to all attorneys of record.

/s/ Gabriella Graziano
Secretary Harvey Kruse PC
1050 Wilshire Drive, Suite 320
Troy, MI  48084-1526
DATED:   January  29, 2013

Respectfully submitted,

BY: /s/         Michael F. Schmidt
    Michael F. Schmidt P25213
    Nathan Peplinski P66596
    Harvey Kruse P.C.
    Attorneys for Plaintiff
    mschmidt@harveykruse.com
    npeplinski@harveykruse.com
    1050 Wilshire Drive, Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800