UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,

    Plaintiff,

vs.

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF, and NICOLE RENEEE LUPILOFF,
Personal Representative of the Estate of GARY
LUPILOFF, deceased,

    Defendants.

_____/

Case No. 11-12422

HON. AVERN COHN

**ORDER DENYING PLAINTIFF ACCESS
TO MENTAL HEALTH TREATMENT RECORDS**

**I. INTRODUCTION**

This is an insurance case. Nationwide Life Insurance Company (Nationwide) has filed a complaint for interpleader and declaratory relief to determine who is entitled to the proceeds of an insurance policy on the life of Gary Lupiloff (Gary). Defendants are a former business partner and primary policy beneficiary William Keene; the contingent beneficiary and William's spouse, Jennifer Keene (collectively, the Keenes); Lupiloff's daughters Nicole and Monica Lupiloff; and the estate of Gary Lupiloff. William Keene filed a claim to collect the proceeds of the life insurance policy after Gary's murder. Gary's daughters also submitted a claim asserting that the Keenes murdered Gary and are therefore barred from recovery of life insurance proceeds by Michigan's "slayer statute," Mich. Comp. Laws § 700.2803.

The Keenes filed a counter complaint against Nationwide alleging breach of contract and violation of the Michigan Uniform Trade Practices Act (UTPA), Mich. Comp. Laws § 500.2006(4), for failure to pay the policy proceeds. The Court dismissed the counter complaint. See Memorandum and Order Granting Plaintiff's Motion for Partial Summary Judgment (Doc. 45).

On January 23, 2013, the Court held a hearing on Nationwide's motion to compel the Keenes to provide discovery, which, in part, sought to compel Jennifer Keene (Jennifer) to release her mental health records. The motion was denied (Doc. 55). The Court allowed Nationwide to file a brief to respond to Jennifer's claim that her mental health records from her treatment with Dr. Michelle Riba are protected by the psychologist-patient privilege. Nationwide has filed a supplemental brief (Doc. 56). For the reasons that follow, the Court is satisfied that its decision in finding Dr. Riba's records are privileged is correct.

## II. DISCUSSION

The material facts are stated in the Court's Memorandum and Order Granting Plaintiff's Motion for Partial Summary Judgment (Doc. 45) and will not be repeated.

### A.

Nationwide says Jennifer's mental health treatment records are not privileged and are relevant to the issues in this case. Nationwide says that Jennifer is a named contingent beneficiary on the life insurance policy and argues that she, like her husband, had a motive to kill Gary. Nationwide relies circumstantially on Jennifer's employment records to support its position that her mental health records are not privileged. Although Jennifer was historically a model employee who regularly surpassed expectations, Nationwide says after Gary's murder, her performance declined and she was placed on a "Last Chance

2

Agreement." Included in Jennifer's employment records are two mental health treatment records dated August 5 and 9, 2011. In the August 5 document, Dr. Riba stated that, "[b]esides the bipolar depressed diagnoses, she [Jennifer] has probably [sic] postpartum depression as well as multiple stressors related to her husband and work." In the August 9 document, Dr. Riba noted that Jennifer's sleeping was being interrupted by her children and that she was "very stressed at home."

Whether Jennifer's communications with Dr. Riba are arguably relevant to the issues in this case is not the question. The communications were made in the course of treatment and therefore are protected by Michigan's psychologist-patient privilege.

## B.

### 1.

Under Fed. R. Evid. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Michigan's Mental Health Code, Mich. Comp Laws § 330.1750, codifies the psychologist-patient privilege and provides,

> (1) Privileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privileges, except in circumstances set forth in this section.
>
> (2) Privileged communications shall be disclosed upon request under 1 or more of the following circumstances:
>
> (a) If the privileged communication is relevant to a physical or mental condition of the patient that the patient has introduced as an element of the patient's claim or defense in a civil or administrative case or proceeding or that, after the death of the patient, has been introduced as an element of the patient's claim or defense by a party to a civil or administrative case or

3

proceeding.

(b) If the privileged communication is relevant to a matter under consideration in a proceeding governed by this act, but only if the patient was informed that any communications could be used in the proceeding.

(c) If the privileged communication is relevant to a matter under consideration in a proceeding to determine the legal competence of the patient or the patient's need for a guardian but only if the patient was informed that any communications made could be used in such proceeding.

(d) In a civil action by or on behalf of the patient or a criminal action arising from the treatment of the patient against the mental health professional for malpractice.

(e) If the privileged communication was made during an examination ordered by the court, prior to which the patient was informed that a communication made would not be privileged, but only with respect to the particular purpose for which the examination was ordered.

(f) If the privileged communication was made during treatment that the patient was ordered to undergo to render the patient competent to stand trial on a criminal charge, but only with respect to issues to be determined in proceedings concerned with the competence of the patient to stand trial.

(3) In a proceeding in which subsections (1) and (2) prohibit disclosure of a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, the fact that the patient has been examined or treated or undergone a diagnosis also shall not be disclosed unless that fact is relevant to a determination by a health care insurer, health care corporation, nonprofit dental care corporation, or health maintenance organization of its rights and liabilities under a policy, contract, or certificate of insurance or health care benefits.

(4) Privileged communications may be disclosed under section 946 to comply with the duty set forth in that section.

Mich. Comp. Laws § 330.1750.[1]

**2.**

A privileged communication is defined as,

> a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another person while the other person is participating in the examination, diagnosis, or treatment or a communication made privileged under applicable state or federal law.

Mich. Comp. Laws § 330.1700(h).

**C.**

Here, Nationwide seeks to obtain communications Jennifer made to Dr. Riba in connection with her diagnosis and ongoing treatment. The communications fall within the definition of "privileged communication" under Mich. Comp. Laws § 330.1700(h). Nationwide's speculation that Jennifer may have discussed "the murder, the conspiracy to commit or cover up the murder, or even financial difficulties that could support a motive for the murder" does not negate the privilege. As long as Jennifer was obtaining treatment from Dr. Riba and the communications were made "in connection with" her diagnosis and ongoing treatment, the communications are privileged unless an exception applies.

As the Michigan Supreme Court has recognized, "[t]he psychologist-patient privilege establishes an evidentiary privilege in court proceedings unless the patient has waived the privilege." People v. Stanaway, 446 Mich. 643, 659-660 (1994) (internal citation omitted).

---

[1] Section 946, which is referenced in Mich. Comp. Laws § 330.1750, provides that mental health professionals have a duty to warn reasonably identifiable third persons in certain situations where the patient states an intent to commit a future act of physical violence.

"The few exceptions provided by the statute include when the communication is relevant to a condition the patient has introduced as an element of a claim and when a malpractice action is brought against the treating psychologist." Id. at 660. Nationwide cannot establish that Dr. Riba's records fall within an exception to the psychologist-patient privilege. See Mich. Comp. Laws 330.1750(2)(a)-(f), (3), supra. Jennifer's mental health treatment is not relevant to whether her husband has a valid claim to the life insurance proceeds. The fact that Jennifer is a contingent beneficiary under the policy does not put her mental health treatment at issue. Likewise, the speculation that Jennifer may have discussed her family's finances or Gary's murder with her doctor does not call for an exception to the privilege. Jennifer was seeking mental health treatment and any communications between her and Dr. Riba were made in furtherance of that treatment. Further, Jennifer was never informed that her mental health treatment would be disclosed in any proceeding. Nor is her legal competence at issue in this case. By the express language of Michigan's Mental Health Code, Jennifer's mental health records are privileged and Nationwide has not established that an exception to the privilege mandates disclosure.

Nationwide's argument that Jennifer waived the privilege by disclosing to her employer two separate records regarding her treatment with Dr. Riba is unpersuasive. It is true that a person can voluntarily waive the psychologist-patient privilege. See, e.g., Matter of Zelzack, 180 Mich. App. 117 (1989). Obviously, the privilege does not apply to the two records Jennifer voluntarily disclosed to her employer. However, Jennifer has not signed a release and refuses to disclose all of her past and future treatment with Dr. Riba. The purpose of the psychologist-patient privilege is "to protect the confidential nature of the doctor-patient relationship and to encourage the patient to make a full disclosure of

symptoms and conditions to those from whom they seek help." Lopez-Negrete v. Lopez-Negrete, No. 286247, 2009 WL 1506668, at *6 (Mich. Ct. App. May 26, 2009) (citations omitted). Forcing disclosure in this case would turn the psychologist-patient privilege on its head.

    SO ORDERED.

                                  S/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE

Dated:  January 30, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 30, 2013, by electronic and/or ordinary mail.

                                  S/Sakne Chami
                                  Case Manager, (313) 234-5160