UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,        Case No. 2:11-cv-12422-AC-MKM

v.              Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNN LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF GARY LUPILOFF, DECEASED,

    Defendants.

---

| | |
|---|---|
| Michael F. Schmidt (P25213)<br>Harvey Kruse, P.C.<br>Attorney for Plaintiff<br>1050 Wilshire Drive, Suite 320<br>Troy, MI 48084<br>248-649-7800 | John H. Bredell (P36577)<br>Bredell & Bredell<br>Attorney for Defendants, William<br> & Jennifer Keene<br>119 N. Huron Street<br>Ypsilanti, MI 48197<br>734-482-5000 |
| Albert L. Holtz (P15088)<br>ALBERT L. HOLTZ, P.C.<br>Attorney for Monica Lupiloff, Nicole Lupiloff<br>and Nicole Lupiloff Personal Representative<br>of the Estate of Gary Lupiloff, deceased<br>3910 Telegraph Road, Suite 200<br>Bloomfield Hills, MI 48146<br>248-593-5000 | Geoffrey N. Fieger (P30441)<br>Jeffrey A. Danzig (P36571)<br>Attorney for Monica Lupiloff,<br>Nicole Lupiloff and Nicole<br>Lupiloff, Personal Representative<br>of the Estate of Gary Lupiloff,<br>deceased<br>19390 West Ten Mile road<br>Southfield, MI 48075<br>248-355-5555 |

---

**RESPONSE IN OPPOSITION TO NATIONWIDE'S
MOTION TO COMPEL DISCOVERY
(Document No. 58)**

Plaintiff Nationwide filed this action and styled it as an interpleader to avoid paying a $500,000 life insurance policy to Defendant Bill Keene.  The only "evidence" of Bill Keene's involvement in the murder of Gary Lupiloff, according to Nationwide, is the fact that Lupiloff named Keene as a beneficiary on a life insurance policy.  Nationwide has requested that Bill Keene's wife, Jennifer Keene, turn over her confidential mental health counseling records.  Nationwide admits that Jennifer Keene's medical or mental condition are not at issue, but wants to pour through her medical records in the hope that she talked about her husband to her therapist.

This court has previously advised Nationwide that its request to obtain Jennifer's medicals was a "stretch" and Defendants have asked this court to reconsider its prior ruling.

### Statement of Relevant Facts

The facts of this case can be distilled to a few salient points as they relate to this motion.  There is no dispute that Gary Lupiloff purchased a $500,000 policy of life insurance from Nationwide.  There is also no dispute that Defendant Keene had loaned Gary Lupiloff over $125,000 and that Lupiloff failed to repay this loan and that Lupiloff named Keene as the beneficiary of the life insurance policy in an attempt to satisfy this debt that he owed to Keene.  There is also no dispute that when Lupiloff took out the policy, he named his daughters as contingent beneficiaries of the policy.  There is also no dispute that at some point, the ownership of the policy was transferred from Gary Lupiloff to Bill Keene and that as owner of the policy, Keene removed the Lupiloff daughters as contingent beneficiaries and named his own wife, Jennifer Keene as

2

contingent beneficiary.[1]  When ownership of the policy was transferred to Bill Keene,

the premium payments were thereafter made by Bill Keene.

Although the Lupiloff daughters now claim that the transfer of the policy to Bill

Keene was a forgery, there is no question that Nationwide is in possession of

documents that transferred the policy to Bill Keene and named Jennifer Keene as a

contingent beneficiary.  After more than a year of Keene paying the premiums on the

policy, Gary Lupiloff was murdered in his own driveway.  Because of the existence of

the life insurance policy, Keene was named as a "person of interest" by the Royal Oak

police.  But it is also not in dispute that Gary Lupiloff had made  many potential enemies

as he was a disbarred lawyer and had discharged millions of dollars in bankruptcy

before his death. He also owed a substantial amount of money to other "investors" at

the time of his death.  Prior to his death, Gary Lupiloff was featured on the local Fox

affiliate's "Hall of Shame." He was basically portrayed as a con man.  We are not

presenting the character of Gary Lupiloff as "facts" but this does provide a background

as to motive for shooting Gary Lupiloff, by any number of people other than William

Keene.


### Requested Discovery
### Medical Records of Jennifer Keene

Jennifer Keene's is the wife of Bill Keene.  After Bill became the owner of the

Nationwide policy, he named his wife as his beneficiary.  Accordingly, if Bill Keene is

---

[1]  Because Jennifer stands in line to collect on the policy, she has been named as
a defendant by Nationwide to also declare her rights.

3

disqualified from taking under, Jennifer Keene may a claim to the policy, but neither her medical or mental condition are at issue.  At the last motion hearing, Nationwide's attorney admitted that they wanted Jennifer's medical records not in connection with any claim Jennifer may have, but in the hopes that she said something to her therapist that might implicate her husband, Bill Keene.  In other words, Nationwide admits that it is simply interested in a fishing expedition of Jennifer Keene's private and confidential counseling records.

Michigan courts have actually dealt with several cases where the defendant wanted to obtain a person's medical records of a potential witness, on the theory that those records might contain evidence or statements that would be helpful to one of the parties in the lawsuit.  In *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26 (1999), the Michigan Supreme Court dealt with this issue as follows:

> Dorris filed suit in March 1994 and alleged that the hospital's employee negligently administered Compazine in violation of the standard of care for an emergency room physician and against Dorris' specific instructions. Dorris' complaint alleges damages for the allergic reaction, as well as pain, suffering, humiliation, and great emotional and mental distress. Dorris' husband alleges damages as a result of loss of consortium.
>
> Dorris claims that the patient who shared her hospital room witnessed Dorris' refusals of Compazine. During discovery, plaintiff moved to compel defendant to disclose the name of that patient. The circuit court granted the motion. The Court of Appeals  reversed. 220 Mich. App. 248; 559 N.W.2d 76 (1996). The Court of Appeals based its holding on *Schechet v Kesten*, 372 Mich. 346, 351; 126 N.W.2d 718 (1964). In *Schechet*, this Court stated that MCL 600.2157; MSA 27A.2157 "prohibits the physician from disclosing, in the course of any action wherein his patient or  patients are not involved and do not consent, even the names of such noninvolved patients." [Id at pp 30 & 31]

4

So, the plaintiff in *Dorris, (supra),* claimed she could prove her case by statements contained in someone else's medical records.  Just like in *Keene,* the party seeking the discovery did not claim that the medical condition of the person that owned the medical records was relevant, rather that the medical records reflected information about the plaintiff.  In ruling that the medical records of the non party were inadmissible and therefore not discoverable, the Michigan Supreme Court discussed the issue as follows:

> We first address whether the defendant hospitals are required to provide identification information about other unknown patients to the plaintiffs. The physician-patient statute in Michigan, found at MCL 600.2157; MSA 27A.2157, provides:
>
> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon. If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. If a patient has died, the heirs at law of the patient, whether proponents or contestants of the patient's will, shall be considered to be personal representatives of the deceased patient for the purpose of waiving the privilege under this section in a contest upon the question of admitting the patient's will to probate. If a patient has died, the beneficiary of a life insurance policy insuring the life of the patient, or the patient's heirs at law, may waive the privilege under this section for the purpose of providing the necessary documentation to a life insurer in examining a claim for benefits.

The physician-patient privilege was not recognized at common law, and, thus, its scope is controlled by the language of the statute. *People v Johnson*, 111 Mich. App. 383; 314 N.W.2d 631 (1981).

It is well established that the purpose of the statute is to protect the confidential nature of the physician-patient relationship and to encourage a patient to make a full disclosure of symptoms and condition. *Domako v Rowe*, 438 Mich. 347, 354; 475 N.W.2d 30 (1991);*Gaertner v Michigan*, 385 Mich. 49, 53; 187 N.W.2d 429 (1971); *Schechet v Kesten*, 372 Mich. 346 at 351, 126 N.W.2d 718; 81 Am Jur 2d, Witnesses, § 438, p 392.

This Court, in *Gaertner,* 385 Mich. at 53, summarized the purpose of the statute as follows:

The purpose of this statute is to protect the confidential nature of the physician-patient relationship. In *Schechet v Kesten*, 372 Mich. 346, 351 [126 N.W.2d 718 (1964)], this Court said of the statute:

"It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients."

The privilege of confidentiality belongs to the patient; it can be waived only by the patient. *Schechet v Kesten, supra*. In *Storrs v Scougale,* 48 Mich. 387, 395 [12 N.W. 502 (1882)], this Court by Justice Cooley said of this privilege of confidentiality:

"[A] privilege is guarded which does not belong to him [the physician] but to his patient, and which continues indefinitely, and can be waived by no one but the patient himself."

In *Schechet*, this Court considered whether the physician-patient privilege prohibited the discovery of the names and treatment histories of patients in a libel and slander claim brought by plaintiff Dr. Schechet against defendant Dr. Kesten on the basis of an allegedly slanderous and libelous report Dr. Kesten made to a credentials committee about Dr. Schechet. Dr. Schechet sought the names and treatment histories regarding those patients whom Dr. Kesten accused Dr. Schechet of failing to appropriately treat in his report to

6

the committee. This Court reversed the trial court's order of disclosure, stating:

Such a veil of privilege is the patient's right. It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients. [372 Mich. at 351.]

In its decision in *Dorris v Detroit Osteopathic Hosp*, the Court of Appeals panel relied upon *Schechet* in finding that the names of nonparty  patients were protected by the physician-patient privilege and not subject to disclosure. Plaintiff Dorris argues that the panel committed error requiring reversal by wrongfully relying on this dicta from *Schechet*. Rather, Dorris argues that this Court should follow *Porter v Michigan Osteopathic Hosp Ass'n, Inc*, 170 Mich. App. 619; 428 N.W.2d 719 (1988). In *Porter*, the plaintiff sought disclosure of the names and information regarding two other patients who allegedly raped her while she was a patient at the Michigan Osteopathic Hospital. In upholding the trial court's order of disclosure, the Court of Appeals found that disclosure of the names and addresses of unknown patients who were suspected as assailants did not require disclosure of information necessary for treatment or diagnosis pursuant to MCL 600.2157; MSA 27A.2157. Thus, the Court of Appeals found that the names and addresses of the unknown patients were discoverable.

The court may limit the frequency or extent of discovery under Fed. R. Civ. P.

26(b)(2)(C) if:

> (i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in
the action, and the importance of the discovery in
resolving the issues.

Jennifer Keene's medical and or mental conditions are not an issue in this

lawsuit. Jennifer Keene is not seeking damages for "emotional distress," as such a

claim is not cognizable under Michigan Law. The Michigan Supreme Court, as noted

above, has addressed numerous situations where the medical records of a non party

are requested to prove the position of one of the parties in the lawsuit. Typically, the

party seeking discovery was convinced that the sought after medical records contained

statements that could tend to prove a position of one of the parties. In other words, the

medical condition of the patient was not at issue, but it was the statements that the

patient made in obtaining treatment that the moving party sought. The Michigan

Supreme court has routinely not allowed this type of fishing expedition into private

medical records.

Plaintiff Nationwide has asserted that the Michigan common law controls this

discovery request, but surely, the common law is also subject to the Michigan Court

Rules, which provide the following:

Rule 2.314 Discovery of Medical Information Concerning Party.

(A) Scope of Rule.
(1) When a mental or physical condition of a party is in
controversy, medical information about the condition is
subject to discovery under these rules to the extent that

(a) the information is otherwise discoverable under MCR
2.302(B), and

(b) the party does not assert that the information is subject
to a valid privilege.

8

(2) Medical information subject to discovery includes, but is not limited to, medical records in the possession or control of a physician, hospital, or other custodian, and medical knowledge discoverable by deposition or interrogatories.

(3) For purposes of this rule, medical information about a mental or physical condition of a party is within the control of the party, even if the information is not in the party's immediate physical possession.

(B) Privilege; Assertion; Waiver; Effects.

(1) A party who has a valid privilege may assert the privilege and prevent discovery of medical information relating to his or her mental or physical condition. The privilege must be asserted in the party's written response to a request for production of documents under MCR 2.310, in answers to interrogatories under MCR 2.309(B), before or during the taking of a deposition, or by moving for a protective order under MCR 2.302(C). A privilege not timely asserted is waived in that action, but is not waived for the purposes of any other action.

(2) Unless the court orders otherwise, if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party's medical history or mental or physical condition.

(C) Response by Party to Request for Medical Information.

(1) A party who is served with a request for production of medical information under MCR 2.310 must either:

(a) make the information available for inspection and copying as requested;

(b) assert that the information is privileged;

(c) object to the request as permitted by MCR 2.310(C)(2); or

(d) furnish the requesting party with signed authorizations in the form approved by the state court administrator sufficient in number to enable the requesting party to obtain the information requested from persons, institutions, hospitals, and other custodians in actual possession of the information requested.

Jennifer Keene's medical condition is not "in controversy" in this case. Jennifer is not allowed to seek damages for the emotional distress caused by Nationwide and the Lupiloffs accusation that her husband Bill Keene married Gary Lupiloff. Jennifer Keene's emotional state and what she may have said to her therapist is irrelevant, confidential and privileged. Even though Jennifer Keene is a party to this case, she is only a party because Nationwide sued her. Clearly, Nationwide is not seeking Jennifer's Keene's medical records to obtain any relevant information about a position that she has taken in this lawsuit, but rather, Nationwide is clearly seeking Jennifer's medical records to obtain information regarding her husband, Bill Keene. This type of end run around the medical privilege has never been allowed under the Michigan common law or pursuant to the Michigan Court rules. And in this case, unlike the other cases discussed above, clearly Jennifer Keene would have an expectation of privacy as to things she revealed to a marriage counselor about her husband and her marriage.

Clearly, Nationwide wants to troll through the mental health records of Jennifer Keene because of its belief that Bill Keene murdered Gary Lupiloff and that he then confessed this murder to his wife and she discussed this conversation with her mental health professionals. As stated above, Jennifer Keene's mental health or emotional states are not issues in this litigation and therefore, her medical records are completely irrelevant. Nationwide's attempts to discover Jennifer Keene's medical records are

10

nothing more than a transparent attempt to get around the marital and medical privilege.  There is no question that Jennifer Keene cannot be compelled to testify against her husband and that she has a privilege to her confidential medical records. Certainly, any discussions that Jennifer Keene had with her therapist about anything her husband told her should also be protected by the marital and medical privileges. Statements she made to her therapist were made with an expectation of privacy.  It is quite likely that Jennifer Keene has made some statements, to her therapist, about this pending litigation, and Nationwide should not be allowed to discover any of these confidential statements.

WHEREFORE, Nationwide's Motion to Compel should be denied.

Respectfully submitted,

s/John H. Bredell
119 N. Huron Street
Ypsilanti, Michigan  48197
Phone:  (734) 482-5000
E-mail:  jbredell@bredell.com
P36577

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Michael F. Schmidt, Albert L. Holtz, and Geoffrey N. Fieger/Jeffrey A. Danzig.

s/John H. Bredell
119 N. Huron Street
Ypsilanti, Michigan  48197
Phone:  (734) 482-5000
E-mail:  jbredell@bredell.com
P36577

11