# EXHIBIT 3

## In re Packaged Ice Antitrust Litig. Direct Purchaser Action

United States District Court for the Eastern District of Michigan, Southern Division
May 10, 2011, Decided; May 10, 2011, Filed
CASE NO. 08-md-01952

**Reporter:** 2011 U.S. Dist. LEXIS 51116; 2011 WL 1790189

IN RE PACKAGED ICE ANTITRUST LITIGATION DIRECT PURCHASER ACTION
**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Count dismissed at, Without prejudice *In re Packaged Ice Antitrust Litig., 2011 U.S. Dist. LEXIS 150426 ( E.D. Mich., Dec. 12, 2011)*
**Prior History:** *In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 642, 2011 U.S. Dist. LEXIS 26048 ( E.D. Mich., 2011)*
**Counsel:** [*1] For Packaged Ice Antitrust Litigation, In Re: Jeffrey B Gittleman - MDL NOT ADMITTED, Barrack, Rodos & Bacine, Philadelphia, PA.
For Mazel LLC, Plaintiff: Ronald J. Aranoff, LEAD ATTORNEY, Bernstein, Leibhard, New York, NY.
For Suzie's Investments, Inc. d/b/a Checker Drugs and Food, Plaintiff: Robert J. LaRocca, William E. Hoese, Kohn, Swift, Philadelphia, PA.
For James Feeney, Ainello Mancusi, Ian Groves, Robert DeLoss, Nathan Croom, Beverly Herron, Brandi Palombella, Joe Getty, Lynn Strauss, Karen Prentice, Lehoma Goode, Ian Groves, Plaintiff: Matthew S. Wild, Wild Law Group PLLC, Larchmont, NY.
For Arctic Glacier, Incorporated, Arctic Glacier International, Incorporated, Defendants: David L DeBord - MDL NOT ADMITTED, LEAD ATTORNEY, Robert S. Walker, Jones Day - Cleveland, Cleveland, OH; Howard B. Iwrey, LEAD ATTORNEY, Dykema Gossett, Bloomfield Hills, MI; John M Majoras - Delete 2, LEAD ATTORNEY, Jones Day, Washington, DC; Lisa A. Brown, LEAD ATTORNEY, Dykema Gossett, Detroit, MI; Melissa B. Hirst, Paula W Render, LEAD ATTORNEY, Eric Enson - MDL NOT ADMITTED, Jones Day, Chicago, IL.
For Arctic Glacier Income Fund, Defendant: John M Majoras - Delete 2, LEAD ATTORNEY, Jones Day, Washington, [*2] DC; Lisa A. Brown, LEAD ATTORNEY, Dykema Gossett, Detroit, MI; Melissa B. Hirst Paula W Render, LEAD ATTORNEY, Eric Enson - MDL NOT ADMITTED, Jones Day, Chicago, IL; Robert S. Walker, Jones Day - Cleveland, Cleveland, OH.
For Reddy Ice Holdings, Incorporated, Defendant: Alan L Kildow - MDL NOT ADMITTED, LEAD ATTORNEY, DLA Piper US, LLP, Minneapolis, MN; David H Bamberger, LEAD ATTORNEY, DLA Piper US, LLP, Washington, DC; David A. Ettinger, LEAD ATTORNEY, Honigman, Miller, Schwartz and Cohn LLP, Detroit, MI; James R Nelson, LEAD ATTORNEY, DLA Piper US, LLP, Dallas, TX; Laura M Kam - MDL NOT ADMITTED, LEAD ATTORNEY, DLA Piper US LLP, Phoenix, AZ; Arthur Thomas O'Reilly, Honigman, Miller, Detroit, MI; Jarod Bona - MDL NOT ADMITTED, DLA Piper US LLP, Minneapolis, MN; Lynn Preheim - MDL NOT ADMITTED, Megan Garrett - MDL NOT ADMITTED, Stinson, Morrison, Hecker, Wichita, KS.
For Reddy Ice Corporation, Defendant: James R Nelson, LEAD ATTORNEY, DLA Piper US, LLP, Dallas, TX; Arthur Thomas O'Reilly, Honigman, Miller, Detroit, MI; David H Bamberger, DLA Piper US, LLP, Washington, DC; David A. Ettinger, Honigman, Miller, Schwartz and Cohn LLP, Detroit, MI; Jarod Bona - MDL NOT ADMITTED, DLA Piper [*3] US LLP, Minneapolis, MN; Lynn Preheim - MDL NOT ADMITTED, Megan Garrett - MDL NOT ADMITTED, Stinson, Morrison, Hecker, Wichita, KS.
For Home City Ice Company, Defendant: Eric J.

2011 U.S. Dist. LEXIS 51116, *3

Stock, Sanford M. Litvack, LEAD ATTORNEYS, Hogan Lovells US, LLP, New York, NY; J. Jeffrey Landen, LEAD ATTORNEY, Graydon, Head & Ritchey, LLP, Ft. Mitchell, KY; John B. Pinney, LEAD ATTORNEY, Graydon, Head, Cincinnati, OH; Kenneth W Hartman - MDL NOT ADMITTED, LEAD ATTORNEY, Baird, Hold, Omaha, NE; Michael A Roberts, LEAD ATTORNEY, Graydon Head & Ritchey, LLP, Cincinnati, OH; Stephen Carlin - MDL NOT ADMITTED, LEAD ATTORNEY, Greenberg, Traurig, Dallas, TX; J. Jeffrey Landen, Graydon, Head & Ritchey, LLP, Ft. Mitchell, KY.

For Lawrence Diamond, Southeastern Pennsylvania Transportation Authority, Interested Party: Debra J. Wyman, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.

For United States, Objector: Lynn Marie Dodge, U.S. Attorney's Office, Detroit, MI.

**Judges:** PAUL D. BORMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** PAUL D. BORMAN

---

**Opinion**

---

**ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL U.S. DEPARTMENT OF JUSTICE TO PRODUCE CERTAIN TAPE RECORDINGS WHICH WILL FIRST BE FILED WITH THE COURT *IN CAMERA* FOR INITIAL COURT [*4] EXAMINATION FOR ANY PRIVILEGE/WORK PRODUCT PROTECTIONS**

This matter is before the Court on the Direct Purchaser Plaintiffs' Motion to Compel the U.S. Department of Justice to Produce Certain Tape Recordings and Verbatim Transcripts Thereof. (Dkt. No. 332.) The Department of Justice ("DOJ") filed a brief in opposition. (Dkt. No. 342.) The Direct Purchasers filed a reply. (Dkt. No. 348.) The Court heard oral argument on April 15, 2011. Thereafter, Direct Purchaser Plaintiffs filed a supplemental brief on May 2,

2011, and the DOJ filed a response brief on May 5, 2011. For the reasons that follow, the Court orders production of the hereinafter listed tape recordings.

## I. BACKGROUND

In 2004, the DOJ began a criminal investigation into the alleged anticompetitive conduct of the packaged ice industry's three principal players, Defendants Home City Ice Company ("Home City"), Arctic Glacier International, Inc. ("Arctic Glacier") and Reddy Ice Company ("Reddy Ice"). The investigation, which is *now closed*, resulted in criminal guilty pleas by two of the corporate Defendants, Arctic Glacier, Home City, and three former Arctic Glacier employees. During the course of its investigation, the DOJ enlisted [*5] the cooperation of certain individuals who agreed to participate in and tape record conversations with persons of interest. The DOJ has sole possession of the tape recordings, as well as of transcripts it created of certain of the recordings.

In the instant Direct Purchaser case, the Arctic Glacier and Home City Defendants have settled (Home City) or are seeking a settlement agreement confirmation (Arctic Glacier). Reddy Ice, to the Court's knowledge, has not taken part in a settlement process. Through a cooperation agreement with Home City, the Direct Purchasers have learned that several of the tape recordings made during the DOJ's investigation contain incriminating statements by many of the critical witnesses whom Direct Purchasers either have or intend to depose in this matter.

The Direct Purchasers, therefore, following the termination of the DOJ's criminal investigation, served a subpoena on the DOJ seeking the tape recordings and transcripts, arguing that the recorded conversations are critical to establishing their claims in the instant case. Direct Purchasers intend to use the tape recordings, as necessary, as substantive

evidence, to refresh recollection, and/or for impeachment **[*6]** purposes.

Direct Purchasers have subpoenaed three different categories of consensual tape recordings, each of which involves as a participant a current or former employee of one or more of the Defendant ice manufacturers. Specifically, Direct Purchasers seek:

> 1. Tape recordings involving certain current or former Home City ice employees;
>
> 2. Tape recordings involving Martin McNulty, a former Arctic Glacier employee; and
>
> 3. Tape recordings involving Gary Mowrey, a putative ice manufacturer and former competitor of certain of the Defendant ice manufacturers.

The DOJ, through its agency representative, Assistant Attorney General, Antitrust Division, Christine Varney, has objected *in toto* to the subpoena, claiming that this Court lacks jurisdiction to compel its production and asserting the investigatory files privilege, the law enforcement privilege and work product protection. The Direct Purchasers now move this Court to compel the DOJ to comply with the subpoena.

## II. ANALYSIS

### A. This Court Has Jurisdiction and the Federal Discovery Rules Provide an Appropriate Standard of Review

The DOJ argues, as a preliminary matter, that it is shielded by the doctrine of sovereign immunity from this Court's **[*7]** review of its refusal to produce the recordings. It claims that it enjoys sovereign immunity from suit absent a waiver and that the only waiver of that immunity in the instant case can be found in the Administrative Procedures Act ("APA"). Accordingly, the DOJ argues that the Direct Purchaser Plaintiffs should be forced to initiate a separate action, in the District of Columbia, under APA procedures, to overturn Assistant Attorney General Varney's decision under the APA's "arbitrary and capricious" standard of review. The Court disagrees.

While this Court recognizes that legitimate issues of sovereign immunity may be implicated where federal officials are responding to *state* court subpoenas, in a federal court action, sovereign immunity cannot bar a federal court from enforcing a federal subpoena against the federal government. *Watts v. Securities and Exchange Comm'n*, 482 F.3d 501, 509, 375 U.S. App. D.C. 409 n. *1 (D.C. Cir. 2007) (recognizing that a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is an action under the APA, but holding that the APA arbitrary and capricious standard does not apply when a federal court reviews an agency decision not **[*8]** to comply with a federal subpoena); *Connaught Laboratories, Inc. v. SmithKline Beecham P.L.C.*, 7 F. Supp. 2d 477, 479 (D. Del. 1998) (holding that "in an action in federal court, sovereign immunity does not bar the federal court from enforcing a federal subpoena against the federal government").

Some court decisions from the 1990's have agreed with the DOJ's position that a proceeding under the APA, and the APA's "arbitrary and capricious" standard of review, is the only avenue of relief even in federal court with respect to a federal subpoena. *See, e.g. see COMSAT Corp. v. Nat'l Science Foundation*, 190 F.3d 269, 277 (4th Cir. 1999) (expressly disagreeing with *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-779 (9th Cir. 1994) and holding that subpoena proceedings fall within the protection of sovereign immunity and the only method for judicial review of such agency action is through the APA); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (holding that the district court could only overturn the agency decision to refuse to comply with a subpoena

if it was arbitrary, capricious, an abuse of discretion or contrary to law).

The Sixth Circuit has not expressly [*9] decided this issue. This Court concludes that the Sixth Circuit would join the opinions of those courts, mostly in this century, that have concluded that *Federal Rule of Civil Procedure 45* and various available privilege rules provide sufficient limitations on discovery to adequately address legitimate governmental interests in objecting to a motion to compel compliance with a valid federal court subpoena. *See Watts*, 482 F.3d at 508 (2007) (holding that "a challenge to an agency's refusal to comply with a *Rule 45* subpoena should proceed and be treated not as an APA action but as a *Rule 45* motion to compel" in which courts apply *Rule 45* standards to "quash subpoenas that call for privileged matter or would cause undue burden"); *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779, 780 n. 11 (9th Cir. 1994) (holding that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party," recognizing that collateral proceedings under the APA, while authorized, are not mandated and are often costly and time-consuming); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 180-181, 346 U.S. App. D.C. 117 (D.C. Cir. 2001) [*10] (recognizing that "courts of appeals are not entirely in agreement on their approach to *Rule 45* when the object of the third-party subpoena is the federal government," but upholding the district court's application of *Rule 45* in reviewing the agency's decision); *In re Micron Technology, Inc. Sec. Litig.*, 264 F.R.D. 7, 8 (D.D.C. 2010) (holding that *Federal Rule of Civil Procedure 45* governs the issuance of subpoenas and motion to compel even when the object of the subpoena is a federal agency) (quoting *Watts*, 482 F.3d at 508 as

quoted above); *In re PE Corp. Sec. Litig.*, No. 3:00-cv-705, 2005 U.S. Dist. LEXIS 7569, 2005 WL 806719 at * 6-7 (D. Conn. April 8, 2005) (recognizing the above-discussed circuit split and holding that the agency's refusal to produce an individual for a deposition would be analyzed under the applicable federal discovery rules).

This Court finds that the federal discovery rules, including *Rule 45* and *Rule 26(b)*, along with all applicable privilege rules, provide sufficient "tools" with which this Court can adequately protect both the litigant's right to receive evidence and the government's interest in protecting both its processes and its resources. *See Watts*, 482 F.3d 501, 375 U.S. App. D.C. at 416, 417 [*11] (holding that "an agency's *Touhy* regulations do not relieve the district courts of the responsibility to analyze privilege or undue burden assertions under *Rule 45*" and concluding that the federal discovery rules give district courts adequate tools to balance all competing interests); *Connaught Laboratories*, 7 F. Supp. 2d at 480 (recognizing "the district court's ability to balance the government's concerns with the private litigant's interest in obtaining evidence by applying the limitations and protections contained in the Federal Rules of Civil Procedure"). This Court is an appropriate venue for dealing with the instant motion to compel and the federal discovery rules provide an appropriate standard of review. Accordingly, the Court will consider whether or not, under *Rule 45*, the subpoena calls for privileged matter or whether production would cause an undue burden. *Watts*, 482 F.3d at 509. The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged. *See Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 46 (D.D.C. 2000). [1]

**B. The DOJ's Claims of Privilege**
**1. The DOJ's *Touhy* Regulations Do Not**

---

[1] The Court also rejects the DOJ's belatedly-asserted argument that Cleveland is only [*12] within 100 miles of Detroit if measured over Lake Erie and therefore the subpoena was not properly issued by this Court per Fed. R. Civ. P. 45(b)(2)(B). The

## Support Non-Disclosure

The DOJ first asserts that its *Touhy* regulations, [2]*28 C.F.R. §§ 16.21-29*, which govern the DOJ's procedures for responding to subpoenas and requests for testimony, somehow immunize its decision to refuse to produce the tapes from judicial review in this Court. The Court disagrees.

As an initial matter, to the extent that the DOJ's *Touhy* regulations would operate as a global override to the proper application of the Federal Rules of Civil Procedure, they would exceed the congressional delegation of authority to the DOJ to promulgate its internal "housekeeping rules." The enabling legislation which permits the DOJ and other federal agencies to adopt internal housekeeping rules, *5 U.S.C. § 301*, "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question [*14] of privilege or a demand for the production of evidence found not privileged. Had there been any doubt of this before, the doubt was removed by the amendment of 5 U.S.C.A. § 22 [now *§ 301*] in 1958 making explicit the fact that the section does not of itself create a privilege." *Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 n. 8, 149 U.S. App. D.C. 385 (D.C. Cir. 1971).

The Sixth Circuit has expressly recognized that "*[s]ection 301* [] is nothing more than a general housekeeping statute and does not

provide "substantive" rules regulating disclosure of government information." *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995) (citing *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994)). In *Bankers Trust*, Bankers Trust sought a writ of mandamus seeking to vacate a district court discovery order directing it to produce to Proctor & Gamble ("P&G") certain documents that Bankers Trust argued were the property of the Federal Reserve Board and were not subject to disclosure under the Federal Reserve Board internal regulations. *61 F.3d at 466*. The Sixth Circuit first decided that Bankers Trust "possessed" the documents for purposes of *Federal Rule of Civil Procedure 34* [*15] despite the fact that the Federal Reserve Board maintained ownership by virtue of its internal regulations. The Sixth Circuit then held that the Federal Reserve Board's regulations, which were adopted in part pursuant to *5 U.S.C. § 301*, the same statutory authority supporting enactment of the DOJ's *Touhy* regulations, could not operate in a federal court action to direct a party to disobey a federal court subpoena or order:

> The statutory authorities upon which the Federal Reserve relies, however, simply do not give it the power to promulgate regulations in direct contravention of the Federal Rules of Civil Procedure.
>
> * * *
>
> We . . . conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party

Direct Purchaser Plaintiffs discussed this issue in their Motion to Compel; the DOJ did not address the argument in its responsive brief. The Court is not inclined to entertain an argument first raised in a supplemental reply brief.

[2] These DOJ regulations, similar to those of other federal agencies, internally control the manner in which the DOJ responds to subpoena requests for documents and information. The regulations derive their name from *United States ex. rel Touhy v. Ragen*, 340 U.S. 462, 471, 71 S. Ct. 416, 95 L. Ed. 417 (1951), where the Supreme Court held that a government agency may withhold from its subordinates the power to comply with a validly issued subpoena. Such regulations [*13] are adopted pursuant to 5 U.S.C. § 301, commonly referred to as the federal "Housekeeping Statute," which provides: "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. Thhis section does not authoriz withholding information from the public or limiting the availability of records to the public."

to deliberately disobey a . . . subpoena, or other judicial mechanism requiring the production of information; . . . To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here.

*61 F.3d at 471*. In accord *Watts*, 482 F.3d at 508-509 (D.C. Cir. 2007) [*16] (recognizing that *Touhy* regulations are internal housekeeping rules that determine who within an agency will respond to a federal court subpoena but do not provide an independent basis for a claim of privilege); *Exxon Shipping*, 34 F.3d at 777 ("*Section 301* does not, by its own force, authorize agency heads to withhold evidence sought under a valid federal court subpoena."); *In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs*, 257 F.R.D. 12, 15-16 (D.D.C. 2009) (holding that *Touhy* regulations "do not [] confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena.").

When served with a subpoena for the production of materials or witnesses, the DOJ, by its authorized representative (in the instant case Assistant Attorney General Christine Varney) is required to evaluate the request under the DOJ's *Touhy* Regulations, which are enumerated at *28 C.F.R. § 16.26*:

> *§ 16.26* Considerations in determining whether production or disclosure should be made pursuant to a demand.
>
> (a) In deciding whether to make disclosures pursuant to a demand,

Department officials and attorneys should consider:

(1) Whether [*17] such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and *7213*, or a rule of procedure, such as the grand jury secrecy rule, *F.R.Cr.P., Rule 6(e)*,

(2) Disclosure would violate a specific regulation,

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) *Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,*

(5) *Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,*

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

(c) In all [*18] cases not involving considerations specified in paragraphs

(b)(1) through (b)(6) of this section, the Deputy or Associate Attorney General will authorize disclosure unless, in that person's judgment, after considering paragraph (a) of this section, disclosure is unwarranted. The Deputy or Associate Attorney General will not approve disclosure if the circumstances specified in paragraphs (b)(1) through (b)(3) of this section exist. The Deputy or Associate Attorney General will not approve disclosure if any of the conditions in paragraphs (b)(4) through (b)(6) of this section exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:

(1) The seriousness of the violation or crime involved,

(2) The past history or criminal record of the violator or accused,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

(d) Assistant Attorneys General, U.S. [*19] Attorneys, the Director of the EOUST, U.S. Trustees, and their designees, are authorized to issue instructions to attorneys and to adopt supervisory practices, consistent with this subpart, in order to help foster consistent application of the foregoing standards and the

requirements of this subpart.

*28 C.F.R. § 16.26* (emphasis added).

In this case, the DOJ relied primarily on *subsections (b)(4)* and *(b)(5)* in refusing to produce the requested consensual tape recordings. Because the cooperating witnesses have waived any objection to disclosure of their identities, either by way of affidavit, lack of objection when present at a Court proceeding or by voluntarily publicly disclosing their cooperation in a pleading filed with the Court, *subsection (b)(4)* is not a valid ground for objection.

The DOJ's concern with the incidental disclosure of private information can be addressed through this Court's *in camera* review of the recordings, which will precede any public disclosure. *See In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) (holding that "plaintiffs are entitled to all the recordings, to use as they see fit except insofar as the district judge may exercise **[*20]** his power under the Federal Rules of Civil Procedure to limit, by protective order or otherwise, such disclosure of the contents of the recordings as may infringe the privacy of parties to the recorded conversations beyond what the plaintiffs require to prosecute their antitrust case effectively.")

The considerations listed in *(b)(5)* are largely addressed in the discussions that follow in *sections (b)(2)* and *(3)*. The Court is not persuaded that disclosure of the verbatim recordings will reveal the DOJ's alleged "investigation strategy" in choosing to record the unaware individuals who appear on the tapes and who were obvious persons of interest in the criminal investigation. The recordings are factual in nature and the Court does not agree that public disclosure of the recordings, following this Court's *in camera* review, "will necessarily reveal the nature, scope and direction of the investigation." (Culum Decl. ¶ 12; Varney Decl. ¶ 4.)

## 2. The Federal Law Enforcement/Investigatory Files Privilege

The DOJ claims that the requested recordings and transcripts are protected by the federal law enforcement privilege. The federal law enforcement privilege is "a qualified privilege designed to  [*21] prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *In re Micron*, 264 F.R.D. at 10 (quoting *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998)). In *Tuite*, the court considered ten factors, not exclusive, which include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery [*22] or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Tuite*, 181 F.R.D. at 177. "[T]he privilege protects only suggestions, advice, recommendations and opinions, rather than factual and investigatory reports, data and surveys in government files." *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 659 (6th Cir. 1976). In *Leggett*, the Sixth Circuit recognized "that there is less government interest in secrecy in completed, than in ongoing, investigations" and suggested a balancing approach, similar to that more specifically delineated in *Tuite*, to evaluate the need for the requested materials against the governmental interest in secrecy. *Id.* at 658-659.

In *In re Micron, supra*, Judge Gladys Kessler, facing a similar challenge by the DOJ, applied the *Tuite* factors and ultimately concluded that the privilege applied in that case. The instant case shares certain similarities with *In re Micron*, but is distinguishable on several of the significant factors that Judge Kessler found supported the privilege in that case. The DOJ argued there, as it does here, "that Plaintiffs could simply depose the individuals interviewed by the Antitrust Division." [*23] Plaintiffs agreed, but contended that Micron employees were "'unlikely to be as forthcoming' with their own counsel as they were when interviewed by the DOJ." *264 F.R.D. at 9*. Judge Kessler wisely noted:

> [T]he DOJ interviews were taken more than six years ago and witnesses' memories have likely faded. Given these circumstances, the Court is not convinced that Plaintiffs could obtain the same information by deposing those witnesses whose identities are known.

*Id.* This point is similarly persuasive in the instant case.

While Judge Kessler concluded that on balance the *Tuite* factors favored application of the law enforcement privilege, this Court notes

Case 2:11-cv-12422-AC-MKM  ECF No. 102-4, PageID.1816  Filed 03/06/14  Page 10 of 13

2011 U.S. Dist. LEXIS 51116, *23

several important distinctions between the cases: (1) the materials sought in *In re Micron* "were not verbatim transcripts of thee interviews, which would hav been factual in nature, but rather summaries of those interviews prepared by DOJ paralegals that could 'reveal the investigators' interviewing techniques and evaluative process, as well as what the investigators found to be significant;'" *Id.* at 11 (quoting *Tuite*, 181 F.R.D. at 180); (2) the identities of the cooperating witnesses who had recorded the conversations had never been disclosed; [*24] and (3) the DOJ's investigation had not concluded. *Id.*

While the facts in *In re Micron* provided a basis for applying the law enforcement privilege; the facts in the instant case compel the opposite conclusion. In the instant case, the most critical factors that supported application of the privilege in *In re Micron* are absent here; the DOJ criminal investigation has concluded, the identities of the cooperating witnesses are publicly known and they do not object to disclosure of the recordings, and the records sought are the tape recordings and verbatim transcripts of them which are factual in nature. Additionally, there has been no suggestion that the instant Direct Purchasers' claims are frivolous or were brought in bad faith, as the two pending settlements confirm. Finally, there appears to be no real dispute that the material sought is critically important to the Direct Purchasers' case. Thus, *Tuite* factors 2, 4, 6, 8 and 10 weigh heavily in favor of disclosure. Factors 5 and 7 are not relevant in the instant case. Factor 1 weighs in favor of the Direct Purchaser Plaintiffs too; disclosure will only be made of non-objecting cooperators, so it will not discourage other citizens from [*25] coming forward in future cases. Factor 3 may weigh in favor of the DOJ but it has not made such an argument in the instant case. This leaves Factor 9, whether the information sought is available through other means.

The DOJ's argument on Factor 9 does not resonate clearly, even at this stage of the proceedings, where Direct Purchasers have yet to depose many of the non-cooperating individuals whose statements are alleged to appear on the recordings. As Judge Kessler noted in *In re Micron*, it is highly unlikely that these witnesses will be as candid in a deposition as they were in their casual conversations with fellow employees unless the tapes are released to the Plaintiffs. Further, it is clear to the Court that the best evidence of what was said will be the tapes themselves.

The Court also notes that this case has a strange twist that significantly prejudices the Plaintiffs' discovery efforts. While the DOJ refuses to provide the tapes to the Direct Purchasers pursuant to the instant subpoena, the DOJ did provide Defendants' counsel with access to the tapes/transcripts during the previous life of the criminal investigation. Accordingly, as the Plaintiffs pursue their civil claims [*26] under the antitrust statutes, the DOJ, also charged with enforcing the antitrust statutes, has disclosed the tape recordings of the Defendants to the Defendants, but refuses to disclose them to the Plaintiffs. This conflicts with Justice Sutherland's oft-quoted statement in *Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*295 U.S. at 88*. The Court believes that the DOJ would concur that this applies, as well, to a civil case.

In the instant case, Assistant Attorney General Varney appears to contend that justice will

NATHAN PEPLINSKI Page 9 of 12

triumph if the Defendants' factual statements in the tape recorded conversations are shown only to the Defendants who have been pursued for antitrust violations, to assist their defense, but not to the Direct Purchaser Plaintiffs who allege that Defendants have violated the Federal Antitrust Laws. This contention distorts justice. The Court notes that the [*27] two corporate Defendants that have entered guilty pleas have agreed to a settlement with the Plaintiffs.

In a sealed *ex-parte* hearing in this case, the DOJ attorney prosecuting the criminal case informed the Court of certain facts *in camera*, that cause the Court now to seriously question whether the DOJ, in refusing to produce the requested recordings, has honored its commitment to see that justice shall be done in this case. The Court urges Assistant Attorney General Varney to secure and read a copy of that sealed *in camera* transcript of September 8, 2010, in evaluating this Opinion and Order.

The Court also finds support for its decision to grant production of the requested tape recordings in the recent opinion of the Second Circuit in *Securities and Exchange Commission v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010). In *Rajaratnam*, the District Court compelled Rajaratnam to disclose to the SEC thousands of Title III wiretapped conversations originally provided to him by the United States Attorney's Office in parallel criminal proceedings to enable him to prepare for his criminal trial. [3] The United States Court of Appeals for the Second Circuit reversed the District Court's disclosure [*28] order on two grounds not relevant to the instant case: first, that Rajaratnam had yet to litigate his criminal case *Fourth Amendment* motion to suppress the recordings; and second, that the District Judge did not determine the relevant conversations to be disclosed from among the thousands ordered disclosed. Neither such infirmity is present in the instant case, where

the criminal matter has concluded, and the requested tapes are limited, clearly defined and critical to Direct Purchaser Plaintiffs' case.

The Second Circuit Opinion contains language and reasoning supportive of the Court's conclusion in the instant case that the specific recordings requested must be provided to the Court, and then, if not violative of the investigatory privilege or the work product doctrine, to the Direct Purchaser Plaintiffs. The Second Circuit reasoned that Title III's limited disclosure rules:

> [D]o not address the situation of disclosures by criminal defendants, who have been provided with wiretap fruits in criminal discovery, and who are simultaneously defendants in a civil enforcement proceeding. [*29] Giving such persons access to these wiretap communications while denying the civil enforcement plaintiff the ability to seek these materials in discovery would create an information imbalance between civil litigants.
>
> * * *
>
> [T]he civil discovery rules may well give the civil enforcement agency a right to these materials following their release to the defendants, to avoid an informational imbalance that would give the defendants an unfair advantage in the civil proceeding. We have similarly employed a balancing in other relevant discovery contexts.

*622 F.3d at 175*. This is exactly the situation here, where to avoid giving the Defendants an unfair advantage in this civil proceeding, the Court will seek to provide discovery of unprotected recordings to the Plaintiffs.

---

[3] Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is contained in 18 U.S.C. §§ 2510-2522.

The *Rajaratnam* opinion stressed the importance of balancing the public interest against the need for privacy, quoting from *City of New York, 607 F.3d 923 at 948 (2d. Cir. 2010)*: "in determining whether law enforcement privilege should foreclose disclosure the "public interest in nondisclosure [must be balanced] against the need of a particular litigant for access to the privileged information." *622 F.3d at 178 n. 19*. Noting the **[*30]** importance of mutual access on the part of all parties to relevant information, the Second Circuit emphasized the "fundamental maximum of discovery that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *622 F.3d at 181* (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 540 n. 25, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987))*.

The Second Circuit also stated, of critical import to the instant case, what a poor substitute a witness' memory serves for his actual spoken words:

> Appellant's deposition is not a perfect substitute for access to the wiretapped conversations even apart from any invocation of *Fifth Amendment* rights, given the likelihood that Appellants would not remember the contents of many potentially relevant conversations to which their attorneys, in possession of recordings of those conversations would still have access. In any event, parties to litigation are not limited in discovery to their adversaries' recollection as to matters reduced to writing, recorded or otherwise memorialized. The point is clear if we imagine that Appellants themselves, rather than the government, had taped their **[*31]** own conversations: the argument that the SEC (or any

litigation adversary) had no interest in discovering such recordings because its lawyers could simply depose Appellants and get their recollections of the conversations would be rejected out of hand.
\*\*\*

It would be nearly impossible to stop the [Appellants'] attorneys from, at the very least subconsciously, using information from these materials in preparation for the civil trial.
\* \* \*

In sum, despite Appellants' arguments to the contrary, the SEC clearly has an interest in access to those wiretap conversations insofar as they create an informational unbalance prejudicing its preparation for the civil trial.

*622 F.3d at 182-183, 184*. So too, the DOJ's arguments to the contrary, the Direct Purchaser Plaintiffs have an interest in access to the requested wiretap conversations, which the Government provided to Defendants, to prevent a Government-caused information imbalance prejudicing Plaintiffs preparation for the civil trial.

## 3. The DOJ's Remaining Claims of Privilege/Protection

The Court has already ruled that the DOJ cannot rely on its *Touhy* regulations as an independent source of privilege. Likewise, the Court rejects the DOJ's arguments **[*32]** that the tapes and/or transcripts are "work product." The work product doctrine protects "the privacy of an attorney's mental processes." *Goldberg v. United States, 425 U.S. 94, 106, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976). See In re Powerhouse Licensing, 441 F.3d 467, 473 (6th Cir. 2006)* (recognizing that it is "axiomatic" that the purpose of the work product doctrine is to allow an attorney to "prepare his legal

theories and plan his strategy without undue and needless interference") citing with approval _Toledo Edison v. G.A. Tech., Inc._, 847 F.2d 335 (6th Cir. 1988) and _Fed. R. Civ. P. 26(b)_. As this Court has already ruled, the verbatim recordings do not contain the types of "mental impressions, conclusions and opinions" typically protected by the work product doctrine. The Court at this stage does not find any likelihood that the verbatim recordings reveal any type of "internal strategy." If that surfaces during the Court's listening to the tapes, the Court will hold a hearing with the Government under seal. The Court also notes that an assertion of work product protection, even if established, can be overcome by a showing of "substantial need" for the materials and an inability to obtain the materials without [*33] undue hardship. _Leggett, 542 F.2d at 660_. Direct Purchaser Plaintiffs have made that showing of substantial need here.

## III. CONCLUSION

There are no objections by the cooperating individual tape recorders in the instant case. They have either directly, through counsel or by not filing objections to disclosure after having been made aware of the subpoena, acquiesced in the disclosure of their recorded conversations. The Court hereby orders the DOJ to produce the recordings and the transcripts _in camera_ to enable the Court to listen to the tapes and read the verbatim transcripts to ascertain whether any law enforcement investigatory privilege or other protection applies.

IT IS SO ORDERED.

Dated: May 10, 2011

/s/ Paul D. Borman

PAUL D. BORMAN

UNITED STATES DISTRICT JUDGE