**Exhibit A**

JOHN A. KRUSE
DENNIS M. GOEBEL
MICHAEL F. SCHMIDT
FRANK H. PORRETTA
GEORGE W. STEEL
JAMES SUKKAR
LARRY W. DAVIDSON
DALE R. BURMEISTER
GARY L. STEC
TERRY J. PAWLOWSKI
WILLIAM F. RIVARD
MICHAEL J. GUSS
J. KENNETH WAINWRIGHT, JR
JOHN R. PREW
JASON R. MATHERS
STEPHANIE MARINO ANDERSON
ANNE V. McARDLE
DAHLIA N. DALLO

# HARVEY | KRUSE, P.C.
Attorneys & Counselors
Dedicated to Excellence Since 1969

1050 WILSHIRE DRIVE
SUITE 320
TROY, MICHIGAN 48084-1526
248-649-7800
FAX 248-649-2316
www.harveykruse.com

LANAE L. MONERA
KIMBERLY A. KARDASZ
NATHAN G. PEPLINSKI
ANTHONY J. SUKKAR
MICHAEL D. CUMMINGS
DAVID W. THOMPSON
DANIEL J. JAMES
ERIC T. KETELHUT
DAVID C. MOLL

OF COUNSEL
DENISE P. HICKEY
MICHAEL T. SMALL

5206 GATEWAY CENTRE, SUITE 200
FLINT, MICHIGAN 48507
810-230-1000
FAX 810-230-0844

60 MONROE CENTER NW
500B SELECT BANK BUILDING
GRAND RAPIDS, MICHIGAN 49503-2926
616-771-0050
FAX 616-776-3646

RICHARD A. HARVEY
1922-2001
PAUL B. HYNES
1946-2005

January 21, 2014

Honorable Avern Cohn
U. S. District Court
Eastern District of Michigan
231 W. Lafayette Blvd., Room 219
Detroit, MI 48226
*By Fax Only (313)234-5351*

Re:  Lupiloff v Nationwide
     Case No.   11-cv-12422-AC-MKM
     O/File:    839576

Dear Judge Cohn:

This letter is written in further support of the January 9, 2014, letter sent by the attorneys for the Lupiloff defendants regarding the ex parte hearing with the Royal Oak Police Department and Oakland County Prosecutors scheduled for January 23, 2014 at 11:00 a.m. Plaintiff Nationwide Life Insurance Company agrees that the facts and law cited by the Lupiloff defendants fully supports the release of the requested information from the police files.

Nationwide would further point out that the police department bears the burden of demonstrating that the requested materials fall within a privilege: "A party objecting to discovery on the basis of any privilege has the burden of establishing the existence of that privilege." *Urseth v Dayton*, 110 FRD 245, 252 (SD OH, 1986). The claimed privilege for police file materials is judged on a case-by-case basis and requires that the particularized harm articulated by the police department must "significantly" outweigh the potential harm to the civil case from non-disclosure:

> [S]uch a privilege must be determined on a case-by-case basis by means of a balancing test. Only if the damage to the executive department or to the public interest from disclosure significantly outweighs the harm to plaintiff from nondisclosure will the privilege be upheld. [*Id.* at 253.]

Accord, *Dos Santos v Gagliardi*, 62 FRD 448, 449 (ED Penn, 1974):

January 21, 2014
Page 2

> The doctrine of executive privilege as applied to police records has customarily been justified on the grounds that their disclosure would chill the willingness of witnesses to give information during police investigations and that their disclosure would "impede candid and conscientious self-evaluation of actions of the department." Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D.Pa.1973). See also Wood v. Breier, 54 F.R.D. 7 (E.D.Wisc.1972). However, the courts which have been faced with the defense of executive privilege have recognized that it is not an absolute privilege, but one that should be upheld only if the damage to the executive department or the public interest from disclosure outweighs the harm to the plaintiffs from nondisclosure.

The claimed privilege is a qualified privilege. *Tuite v Henry*, 181 FRD 175, 177 (D DC, 1998). As a qualified privilege, even when the privilege is established, a balancing test must be conducted to determine if disclosure is necessary in the pending litigation: "when the existence of [the] privilege is established, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Macnamara v City of New York*, 249 FRD 70, 79 (SD NY, 2008), citation omitted. Again, the burden of persuasion in this balancing test is on the party seeking to apply the privilege. *Id.* And the balancing test should be applied "with an eye towards disclosure." *Tuite*, 181 FRD at 177. The Court should also consider the possibility of using protective orders and redactions. *Macnamara*, 249 FRD at 79.

It is insufficient for the police department to list generic or conceptual harm that may occur with the release of any police file. The police department must articulate specific harm from the disclosure of specific information contained in the file:

> [T]he officers or the police department must do more than alert the court to the [relevant privilege] or the generalized policies which support it. The police must make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials.
>
> * * *
>
> This initial burden must be discharged by presenting those facts that are the essential elements of the privileged relationship and not by mere conclusory or *ipse dixit* assertions. [*Id.* at 79, citation omitted.]

Accord, *Tuite*, 181 FRD at 178, citation omitted:

> Many courts have stressed the fact that broad speculations of harm potentially flowing to the officers involved in generating the withheld documents are simply insufficient to support a finding of privilege.

Most importantly, the factual portions of the police department file are not covered by the privilege: "The case law is clear that Plaintiff is entitled to the factual portions of the Dayton Police Homicide Division reports concerning the homicide of James Urseth and the execution of the

January 21, 2014
Page 3

search warrant by the individual police officer Defendants on October 7, 1983." *Urseth*, 110 FRD at 253. The factual record that should be turned over should include any statements of witnesses that were obtained during the course of the investigation. *Dos Santos*, 62 FRD at 450. See also, *In re Packaged Ice Antitrust Litigation Direct Purchase Action*, 2011 US Dist Lexis 51116 (ED Mich, 2011), citation omitted ("[T]he privilege protects only suggestions, advice, recommendations and opinions, rather than factual and investigatory reports, data and surveys in government files"); *Cessante v City of Pontiac*, 2009 US Dist Lexis 30217 (ED Mich, 2009) ("Factual material, including reports and summaries, is not protected by the privilege."); and *Reuther v Chapman*, 2008 US Dist Lexis 39878 (ED Mich, 2008) ("Factual matters should be disclosed.")

The timing of the police investigation makes the release of the facts they obtained close to the incident all the more relevant to subsequent related civil litigation:

> I have reviewed the file and find that of the roughly one hundred documents in it, almost all are either firsthand reports by police officers or summaries of interviews with policemen made by police investigators. The remainder of the file consists of letters pertinent to the investigation, newspaper articles, flyers, and two factual summaries of the interviews. All the material in the file is of a factual as opposed to a policy discussion nature, and nowhere in the file are there any recommendations made for future action or criticisms of past actions. Finally, in that this is an investigation into the incident which is the basis for this lawsuit, almost by definition the file is highly relevant to this lawsuit. The fact that this investigation was made almost immediately after the incident makes it of even greater relevance. [*Wood v Breier*, 54 FRD 7, 11-12 (ED Wis, 1972).]

Completed investigations have less governmental interest in secrecy. *US v Legett & Platt Inc*, 542 F2d 655, 659 (6th Cir, 1976). Courts have found that the same is true when it is unlikely that a prosecution will occur given a delay after the initial investigation of the matter. *Dos Santos*, 62 FRD at 451. See also *Frankenhauser v Rizzo*, 59 FRD 339, 345 (ED Penn, 1973) ("Furthermore, over two years have elapsed since the completion of the investigation, and no criminal charges have been brought against anyone; it is unrealistic to believe that any will be brought, notwithstanding the fact that there is no statute of limitations on homicide.")

Courts have adopted 10 considerations articulated in *Frankenhauser* as a framework for judging the qualified privilege for police records:

> [T]he following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely

3

January 21, 2014
Page 4

> to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. [*Id.* at 344.]

Courts have concluded the 10th factor is the most important factor, especially when the factual information in the file is material to the civil suit and the investigation by the police was close in time to the underlying crime:

> Not only have other courts held that the most important of the *Frankenhauser* factors is the tenth factor, that being the importance of the information sought to the plaintiff's case, but the *Frankenhauser* court itself believed that no harm to the public interest could flow from allowing disclosure of the factual portions of police reports and the signed statements of witnesses. This Court believes the information contained in the Homicide Division report to be of material importance to Plaintiff's claim, and that the harm caused to Plaintiff's action by denial of this material outweighs the harm caused to Defendant's internal procedures by allowing the information to be revealed.

> Even if Plaintiff could obtain access on her own to such factual data, the Police Department investigation was conducted at a time quite proximal to the incident, and is undoubtedly comprehensive and reliable. [*Urseth*, 110 FRD at 253-254, citation omitted.]

In light of this law, Nationwide believes it is likely that most, if not all, of the requested information from the police department should be released. The requested information is highly relevant to the case at hand, and the potential for a prosecution occurring seems remote given the years of delay occurring in the case. Nationwide would ask this Court to keep this law in mind when the police department is presenting the material for in camera review and hold the police department to their heavy burden of articulating particularized reasons why specific materials should not be produced.

Very truly yours,
HARVEY KRUSE, P. C.

Michael F. Schmidt
Nathan Peplinski

cc: Albert L. Holtz, Esq. - by email only
Jeffrey A. Danzig, Esq. - by email only
John H. Bredell, Esq. - by email only
Joyce F. Todd – Oakland Corporate Counsel - by email only
Mark Liss – Royal Oak City Attorney - by email only
T. Joseph Seward – Co-Counsel for Police Dept. - by email only

4