UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

    Plaintiff/Counter-Defendant,

vs

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNN LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants,

and

MONICA LYNN LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants/Counter-Plaintiffs/Cross-Plaintiffs,

vs

WILLIAM KEENE, JENNIFER KEENE,
individually, jointly and severally,

    Defendants/Cross-Defendants.

Case: 2:11-cv-12422-AC-MKM
Hon. Avern Cohn

---

| | |
|---|---|
| Michael F. Schmidt (P25213)<br>Attorney for Plaintiff<br>1050 Wilshire Dr, Ste 320<br>Troy MI 48084<br>248 649-7800 | Albert L. Holtz (P15088)<br>ALBERT L. HOLTZ, P.C.<br>Attorney for Monica Lupiloff, Nicole Lupiloff and Nicole Lupiloff, Personal Representative of the Estate of Gary Lupiloff, deceased<br>248 593-5000 |

John H. Bredell (P36577)
Attorney for Keenes
119 N Huron Street
Ypsilanti MI 48197
734 482-5000

Geoffrey N Fieger (P30441)

Co-counsel for Monica Lupiloff,
Nicole Lupiloff and Nicole Lupiloff
Personal Representative of the
Estate of Gary Lupiloff, deceased
248 355-5555

**DEFENDANTS/COUNTER-PLAINTIFF/CROSS-PLAINTIFF'S
SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**CERTIFICATE OF SERVICE**

### Introductory Statement

Pursuant to this Honorable Court's permission, Defendants/Counter-Plaintiffs and Cross-Plaintiffs Monica Lynn Lupiloff, Nicole Renee Lupiloff, and Nicole Renee Lupiloff, Personal Representative of the Estate of Gary Lupiloff, Deceased (hereinafter, the "Lupiloff Defendants") hereby submit their Supplemental Brief in Support of their Motion for Summary Judgment.

### ARGUMENT

### The Incontestability Clause in the Policy

The issues before this Court are whether Plaintiff is barred by application of the Incontestability Clause in the Nationwide life insurance policy at issue in this matter from contesting the validity of the policy and whether Plaintiff is guilty of laches. The Lupiloff Defendants assert Plaintiff is barred by both. The Incontestability Clause in the Nationwide policy says, "After this policy has been in force during the lifetime of the Insured for two years from the Policy Date, we will not contest it ***for any reason except nonpayment of premiums.***" (Emphasis added). (See Exhibit A to the Lupiloff Defendants' Brief in Support

2

of their Motion for Summary Judgment, ("Opening Brief")). Plaintiff Nationwide is bound by the clear and unambiguous language of its policy --- language that Plaintiff itself drafted.

The exceptions permitted to the application of an incontestability clause are provided by statute. Nevertheless, the terms of the policy at issue ultimately control. "An incontestability clause is equivalent to a private contractual statute of limitations." *Buckner v. Old Republic Life Ins. Co.,* 2006 WL 664348, unpublished (See Exhibit C to the Lupiloff Defendants' Opening Brief). The *Buckner* court, relying upon long-standing precedence set forth by the Michigan Supreme Court in *Bogacki v Great-West Life Assurance Co.*, 253 Mich. 253 (1931), held that "[A]fter the time provided in the clause elapses, the validity of the policy becomes incontestable **except on a ground expressly excepted from the clause**." (Emphasis added). Therefore, because "neither material misrepresentation nor fraudulent misrepresentation was excepted from the incontestability clause," the insurer was barred from contesting the validity of the policy, even though the applicable statute in that case **permitted** the insurer to except fraud from incontestability. *Id.* (See MCL 500.3408).[1] The policy language controls. In the instant matter, the incontestability clause in the policy, drafted by Nationwide, only allows an exception for non-payment of premiums (consistent with the applicable statute). Therefore, Nationwide is clearly barred from contesting the validity of the Nationwide policy. The analysis ends here and summary judgment in favor of the Lupiloff Defendants is warranted.

---

[1] Notably, the presence of an exception for fraudulent misstatements in MCL 500.3408 is evidence that had the Michigan Legislature intended to allow for a similar exception concerning life insurance policies, it certainly would have included one in those pertinent statutes, as well.

Nationwide does not present any Michigan law to the contrary, because it cannot. "Our Supreme Court, relying on *Bogacki*, has repeatedly recognized that incontestability clauses prevent an insurer from voiding the contract for fraud or material misrepresentation after the period for contesting the contract has lapsed." *Buckner, supra,* citing *In re Certified Question*, 413 Mich. 57, 66-67 (1982); *Sun Life Assurance Co. v Allen*, 270 Mich, 272 (1935); *Becker v Illinois Life Ins. Co.*, 227 Mich. 388, 393-394 (1924); *Travelers Ins. Co. v Carey*, 24 Mich. App. 207, 215 (1970).

Nevertheless, while irrelevant given the controlling law set forth above, in light of the numerous untrue and unsupported statements made by Plaintiff's counsel at the June 25, 2014 hearing, the Lupiloff Defendants take this opportunity to set the record straight. There is no evidence of any fraud in the application of the Nationwide policy. Even if it was relevant to the question before the Court, and it is not, Nationwide would never be able to meet its burden to prove that Defendant Keene had the intent to kill Mr. Lupiloff **at the inception of the Nationwide policy in 2003, nearly seven years before he was shot and killed**. Nor will Plaintiff Nationwide be able to assert, let alone prove, that Keene and Lupiloff fraudulently conspired against Nationwide and that both intended that Keene would later kill Lupiloff. There is no relevant, admissible evidence that Nationwide can introduce at the time of trial to show that there was an intent by Keene to kill Lupiloff at the inception of the policy. Plaintiff should be forced to make an offer of proof.

At oral argument, Nationwide made additional unsupported oral claims, Schmidt said (paraphrasing):

4

1. Opposing counsel's unsupport oral claim: The amount of the policy was fraudulent because the loan was substantially less than the policy.

Response: There is no evidence that the policy was for less and thus fraudulent. The policy was taken out to secure a business venture. In 2002/2003, Keene agreed to loan Mad Advertising, Lupiloff's company, a total of $130,000.00 to fund Mad's participation in the 2003 Detroit International Auto Show to be held at Cobo Hall. According to deposition testimony, Keene said that Lupiloff told him Mad expected to net $500,000.00 (notably, the amount of the insurance policy) from the venture, and the profits would be split between Keene and Mad Advertising. (See Exhibit I attached hereto, Keene Deposition pages 52 and 53.) Keene testified in his deposition during this case that in order to secure the loan, **Lupiloff** suggested that a $500,000.00 life insurance policy be taken out on Lupiloff's life. Nationwide issued a $500,000.00 life insurance policy with Keene as the primary beneficiary and Lupiloff's two daughters as contingent beneficiaries. On the Nationwide new account form, it was stated that the purpose of the policy was "to provide coverage over an investor loan for capital purchase." Keene did make the first quarterly payment of $197.40. However, Lupiloff made the quarterly payments on the policy for the next 4 and ¾ years.

2. Opposing counsel's unsupport oral claim: Lupiloff was not worth anything.

Response: There is no evidence that Lupiloff was penniless. At the time of the inception of the insurance policy, Lupiloff's tax returns will show he earned considerable income each year refuting plaintiff's counsel's oral assertion to that Court that Lupiloff was penniless, he was earning monies but simply spent more than he earned.

3. Opposing counsel's unsupported oral claim: Because the premium would increase exponentially after ten years, that is evidence of fraud.

Response: There is a reasonable answer to counsel's oral claim that there was fraud in the policy because the premium would increase greatly: The policy was to guarantee a supposed short-term loan.

### Laches

Plaintiff Nationwide had years to contest the life insurance policy and certainly was put on notice from the get go. In Lupiloff's Application (Exhibit 2 attached hereto), he was asked at Part B, question 11.f "Have you ever been charged with a violation of any criminal law," to which Lupiloff answered "1998 Federal Bank Fraud 1 count", and Nationwide did not investigate, but raises a fraud defense nine years later? Thus, Plaintiff Nationwide is guilty of laches as pled in Lupiloff Defendants' fourth Affirmative Defense to Plaintiff's Amended Complaint (Exhibit 3 attached hereto).

WHEREFORE, Lupiloff Defendants pray that this Honorable Court grant summary judgment in this matter for the reasons stated above.

                                          Respectfully submitted,

                                          ALBERT L. HOLTZ, P.C.

Dated: 1 July 2014                /s/ Albert L. Holtz

**CERTIFICATE OF SERVICE**

LYNN PARSONS does hereby affirmatively state that on 7/1/14 she electronically filed the foregoing and this Proof of Service with the Clerk of the Court using Wiznet E-File & Serve system which will effectuate service upon all counsel of record.
  /s/  Lynn Parsons

# EXHIBIT 1

William Keene
November 14, 2013

Page 52

1      video t.v. walls.

2  Q.  Video t.v. walls. I don't know what that is.

3  A.  Think of a billboard and turn it into a television.

4  Q.  Okay. And where were these going to be?

5  A.  At the North American Auto Show.

6  Q.  In Detroit?

7  A.  Correct.

8  Q.  Do you know where they were going to be at the North
9      American Auto Show?

10 A.  In front of Cobo Hall.

11 Q.  In the hall or outside?

12 A.  Outside.

13 Q.  On the street?

14 A.  Correct.

15 Q.  Do you know if Mr. Lupiloff had done that type of deal
16     before?

17 A.  No.

18 Q.  Did you do any checking up on it at all?

19 A.  No.

20 Q.  What was the investment supposed to be by you?

21 A.  What was it supposed to be?

22 Q.  How much.

23 A.  $130,000.

24 Q.  And that was in one or two payments?

25 A.  Two payments.

Carroll Court Reporting and Video
586-468-2411

William Keene
November 14, 2013

Page 53

1  Q.  And what were you supposed to get out of it?
2  A.  We were going to split the approximate $500,000 that
3      he estimated was going to be his return.
4  Q.  Is that a return of actually 630 or just 500, so that
5      the total would be 500 minus 130 would your total
6      income?
7  A.  The return would have been half of 500, so
8      approximately $250,000.
9  Q.  Each?
10 A.  Each.
11 Q.  But then you've got to take off the 130 you put into
12     it, right?
13 A.  No.
14 Q.  I'm trying to understand it.  The total return from
15     the deal was 500 plus 130?
16 A.  No.
17 Q.  The total is 500 to come in.
18 A.  (Shakes head.)
19 Q.  Then you and Lupiloff split the 500, 250 each.
20 A.  Correct.
21 Q.  But you put in 130.
22 A.  Yes.
23 Q.  So what you get out of it is 250 minus 130.
24 A.  Correct.
25 Q.  There was an agreement that you signed with him?

Carroll Court Reporting and Video
586-468-2411

# EXHIBIT 2

0017857 10004

## PART B

### 11. PERSONAL INFORMATION

| All questions are to be answered by each Proposed Insured. For each yes answer, provide details below. | PROPOSED INSURED | | JOINT/SPOUSE PROPOSED INSURED | | ANY CHILD | |
|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No |
| a. Have you ever had any application for Life or Health Insurance (or for reinstatement for Life or Health Insurance) declined, postponed, rated-up or limited? (If yes, provide details.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| b. Have you ever applied for or received disability payments for any illness or injury? (If yes, provide details.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| c. In the past 3 years have you engaged in, or do you intend to engage in: flying as a pilot, student pilot, or crew member, organized racing of an automobile, motorcycle or any type of motor-powered vehicle, scuba diving, mountain climbing, hang gliding, parachuting, sky diving, bungee jumping, or any type of body-contact or life-threatening sport? (If yes, complete an Aviation/Hazardous Activities Questionnaire.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| d. Have you ever had your driver's license suspended or revoked, or been convicted of driving while impaired or intoxicated, or been convicted in the past 3 years of more than one moving violation? (If yes, provide details.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| e. Except as prescribed by a physician, have you ever used, or been convicted for sale or possession of cocaine or any other narcotic or illegal drug? (If yes, complete Drug Questionnaire.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| f. Have you ever been charged with a violation of any criminal law? (If yes, provide details.) | ☒ | ☐ | ☐ | ☒ | ☐ | ☒ |
| g. Have you had any bankruptcies in the past 7 years or have any suits or judgments pending against you at this time? (If yes, provide details.) | ☒ | ☐ | ☐ | ☒ | ☐ | ☒ |
| h. Do you plan to travel or reside outside of the United States or Canada? (If yes, complete Supplement for Foreign Nationals or Travel.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| i. Do you belong to or intend to join any active or reserve military or naval organization? (If yes, complete Military Status Questionnaire.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |
| j. Do you have a parent or sibling who died from cancer or cardiovascular disease prior to age 60? (If yes, provide relationship to Proposed Insured(s), age at death and cause of death, and if cancer, provide type.) | ☐ | ☒ | ☐ | ☒ | ☐ | ☒ |

Details of any yes answers (indicate name of person). (If more space is needed, an additional blank sheet may be attached.):

f. Corey Hannon Lapidoff  1998 Federal Bank Fraud - 1 count
g. "       "       "       2001 Civil Action [redacted] Settled.

### 12. TOBACCO USE

**a. PROPOSED INSURED:**
Have you used tobacco or nicotine in any form in the last 5 years? ☐ Yes ☒ No   Last 12 months? ☐ Yes ☒ No
If yes, specify the form of tobacco or nicotine products used: ☐ cigarettes ☐ pipe ☐ cigars ☐ chewing tobacco ☐ snuff ☐ other tobacco ☐ nicotine products (gum, patch, etc.)

**b. JOINT/SPOUSE PROPOSED INSURED:**
Have you used tobacco or nicotine in any form in the last 5 years? ☐ Yes ☒ No   Last 12 months? ☐ Yes ☒ No
If yes, specify the form of tobacco or nicotine products used: ☐ cigarettes ☐ pipe ☐ cigars ☐ chewing tobacco ☐ snuff ☐ other tobacco ☐ nicotine products (gum, patch, etc.)

### 13. PHYSICAL MEASUREMENTS

| INSURED | HEIGHT | WEIGHT CURRENT | 1 YEAR AGO | REASON FOR WEIGHT GAIN OR LOSS |
|---|---|---|---|---|
| Proposed Insured | 5'1" 4in | 180 lbs. | 156 lbs | |

### 14. PERSONAL PHYSICIANS

| | PROPOSED INSURED | JOINT/SPOUSE PROPOSED INSURED | ANY CHILD |
|---|---|---|---|
| Name of Personal Physician | Dr. Victor Gordon | | |
| Address | [redacted] Farmington Hills, MI 48336 | | |
| Telephone Number | [redacted] | | |
| Date last consulted | 09/02 | | |
| Reason last consulted | Nkahezin | | |
| Treatment given or medication prescribed | Medication - Prednisone 20mg | | |

L-4738-21                                           Page 4

# EXHIBIT 3

33. Admitted.

34. Denied for the reason that said allegations are untrue.

35. Admitted that there was fraud, denied that Plaintiff can return the premiums.

36. Neither admitted nor denied for the reason that Defendants are unaware whether same is true.

37. Neither admitted nor denied for the reason that Defendants are unaware whether same is true.

## NOTICE OF SPECIAL AND/OR AFFIRMATIVE DEFENSES

**TO:** Clerk of the Court and Michael F. Schmidt

PLEASE TAKE NOTICE that prior to or at the time of trial the Defendants will assert the following Special and/or Affirmative Defenses:

### First Affirmative Defense

1. Breach of contract / third-party beneficiary contract.

### Second Affirmative Defense

2. The Complaint fails to state a cause of action upon which relief can be granted.

### Third Affirmative Defense

3. The frauds of Defendants William Keene and Jennifer Keene.

### Fourth Affirmative Defense

4. Laches / failure to bring this action in an appropriate time.

### Fifth Affirmative Defense

5. Doctrine of unclean hands. Nationwide and/or its agents dealt with the life insurance policy (hereinafter "Policy") and change of ownership and beneficiary forms without checking the *bone fides* of the beneficiaries or the *bone fides* of the signatures