UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,
    Plaintiff/Counter-Defendant,

vs.    Case No. 11-cv-12422-AC-MKM
    Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,
    Defendants,

**STATEMENT OF MATERIAL FACTS FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THE LUPILOFF DEFENDANTS**

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,
    Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,
    Defendants/Cross-Defendants.
_____/

| | |
|---|---|
| Michael F. Schmidt P25213 | Albert L. Holtz P15088 |
| Nathan Peplinski P66596 | Attorney for Lupiloffs |
| Attorneys for Plaintiff | 3910 Telegraph Road, Suite 200 |
| 1050 Wilshire Drive, Suite 320 | Bloomfield Hills, MI 48302 |
| Troy, MI 48084 | (248)593-5000 |
| (248)649-7800 | |

HARVEY KRUSE
ATTORNEYS & COUNSELORS · A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

| | |
|---|---|
| John H. Bredell P36577<br>Attorney for Keenes<br>119 N. Huron Street<br>Ypsilanti, MI 48197<br>(734)482-5000 | Geoffrey N. Fieger P30441<br>E. Jason Blankenship P63566<br>Co-Counsel for Lupiloffs<br>19390 West Ten Mile Road<br>Southfield, MI 48075<br>(248)355-5555 |

_____/

### STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THE LUPILOFF DEFENDANTS

Plaintiff Nationwide Life Insurance Company (Nationwide), by its attorneys and pursuant to Judge Cohn's Practice Guidelines, submits the following Statement of Undisputed Material Facts in Support of its motion for summary disposition against Nicole Lupiloff, Monica Lupiloff, and the estate of Gary Lupiloff:

**I.     The Parties and Their Relationships**

1.     Nationwide is an Ohio corporation with its principal place of business located in Columbus, Ohio. (Nationwide Corporate Information, Exhibit 1)

2.     Defendant William Keene[1] is a resident of Ann Arbor, Michigan. (Amended Interpleader Complaint, Exhibit 2, ¶ 2; Keene Defendants' Answer, Exhibit 3, ¶ 2)

3.     Defendant Jennifer Keene is a resident of Ann Arbor, Michigan. (Exhibit 2, ¶ 3; Exhibit 3, ¶ 3)

---

[1] Nationwide will refer to William and Jennifer Keene collectively as the Keenes and individually by their first name.

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

4. Defendant Monica Lynn Lupiloff (Monica) is a resident of Cook County, Illinois. (Lupiloff Defendants' Answer, Exhibit 4, ¶ 4)

5. Defendant Nicole Renee Lupiloff (Nicole) is a resident of Oakland County, Michigan. (Exhibit 2, ¶ 5; Exhibit 4, ¶ 5)

6. Nicole is the personal representative of the estate of Gary Lupiloff.[2] (Exhibit 2, ¶ 6; Exhibit 4, ¶ 6)

7. On November 28, 2003, Nationwide issued a policy of life insurance on the life of Gary Lupiloff, Policy No. L034804300, with a face value of $500,000. (Policy, Exhibit 5, p 303)

8. The policy listed Gary Lupiloff as the owner, Gary Lupiloff as the insured, William Keene/ATIMA as the primary beneficiary, and Nicole and Monica as contingent beneficiaries. (Exhibit 5, pp 303, 316)

9. William was Gary Lupiloff's business partner. (Exhibit 5, p 316)

10. Nicole and Monica were Gary Lupiloff's daughters. (Exhibit 5, p 316)

## II. The Court's Jurisdiction and Venue

11. The policy provides for potential coverage greater than $75,000, and thus, the amount in controversy is greater than $75,000. (Exhibit 5, p 303)

12. As explained above, the citizenship of the parties is diverse. (Exhibits

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

1-4)

13. This Court has jurisdiction pursuant to 28 USC 1332(a).

14. This case also involves an action in the nature of interpleader allowed by FRCP 22.

15. More than one defendant resides in the Eastern District of Michigan.

16. A substantial portion of the events involved in this case occurred in the Eastern District of Michigan.

17. Venue is proper in this Court pursuant to 28 USC 1391.

### III. The Policy Makes No Financial Sense for the Keenes Absent an Intent to Murder From the Inception But William Admitted to Making the Payments on the Policy

18. Gary Lupiloff was a 46 year-old man in 2003, at the time Nationwide issued the policy. His date of birth was November 29, 1956. (Exhibit 5, p 314)

19. The Social Security Administration sets the life expectancy for a man born on November 29, 1956 as 83.1 years. (SSA Life Expectancy Calculator, Exhibit 16)

20. Another actuarial table set Gary Lupiloff's life expectancy in 2003 at a range of 75.3 to 77.5 years. (Actuarial Table, Exhibit 17)

21. The premium cost of the policy was set to substantially increase, by tenfold, when Lupiloff turned 56. (Exhibit 5, p 304, Premium Table, Exhibit 18)

---

[2] Nationwide will refer to Monica, Nicole, and the estate collectively as the

-3-

22. The premium costs for the policy would continue to increase from this point, costing tens of thousands of dollars each year. By the age of 77, the premium cost would be $97,365 for one year. (Exhibit 18)

23. Thus, even if Lupiloff reached the lower end of his life expectancy, the cost of the life insurance policy would reach over $915,000, nearly double the $500,000 face value of the policy. (Exhibit 18)

24. The policy's medical evaluation and questions to Gary Lupiloff show that he was in good health at the time the application was taken out. (Exhibit 5, pp 318-322; Medical Information, Exhibit 19)

25. William's supplemental discovery answers indicate that it was his idea to obtain the policy. He made at least two payments on the policy, including the initial payment to Nationwide, up until the time that the ownership of the policy changed. After that point, William made all of the payments on the policy. (Supplemental Discovery Answers, Exhibit 20; Initial Payment Check, Exhibit 21) There is no evidence of Gary Lupiloff making a payment after the change of ownership.

26. William's discovery answers also admit that the loan underlying the policy was for $130,000. (Exhibit 20)

27. This is contrary to the information provided at the time of the Lupiloff defendants.

-4-

application in the New Account Suitability Form, which indicated that the debt was originally over $500,000. (New Account Suitability Form, Exhibit 22) William admitted that the information was false. He admitted that the total debt was only $130,000. William further admitted that the debt was never over $500,000 and that it had not been paid down as claimed on the form. (William Dep, Exhibit 25, pp 71, 76)

**IV. The Change of Contingent Beneficiary and Change of Ownership of the Policy**

28. On June 11, 2007, Nationwide received a change of beneficiary form maintaining William as the primary beneficiary but replacing Nicole and Monica as contingent beneficiaries with Jennifer. (Change of Beneficiary Form, Exhibit 6)

29. The change of beneficiary form is signed by Gary Lupiloff with a signature date of April 4, 2007. (Exhibit 6)

30. Gary Lupiloff's signature on the change of beneficiary form was witnessed by Mary B. Reich, who also signed the form. (Exhibit 6)

31. Gary Lupiloff acknowledged the terms and conditions of the change of beneficiary form: "I hereby acknowledge that I have read and agree to the terms and conditions on page 3 of this application." (Exhibit 6)

32. The terms explicitly state that all previous beneficiary designations are revoked: "Once the Company receives and agrees to this application, all previous beneficiary designations for this policy are revoked effective the date of

HARVEY KRUSE   ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

this application." (Exhibit 6)

33. Also on June 11, 2007, Nationwide was faxed a copy of a change of ownership form. (Change of Ownership Form, Exhibit 7)

34. The change of ownership form designated the new owner as William. (Exhibit 7)

35. The form states that Gary Lupiloff revoked his designation as owner: "I, the present owner of the above numbered policy, hereby revoke any previous designations of Owner. . . ." (Exhibit 7)

36. The change of ownership form specifically states that it revoked *all* prior ownership: "This application revokes ALL previous ownership." (Exhibit 7)

37. This form was signed by both William and Gary Lupiloff with a signature date of April 4, 2007. (Exhibit 7)

**V. Gary Lupiloff was Murdered, William is a Suspect, Defendants Have Made Conflicting Claims Regarding Their Rights to Recover Under the Policy**

38. Gary Lupiloff was shot to death on the driveway of his home in Royal Oak, MI on July 13, 2010. (News Report, Exhibit 8)

39. Royal Oak police have informed Nationwide and its attorneys that William is a prime suspect in the Gary Lupiloff murder. Michigan has a "slayer statute," MCL 700.2803, which states that an individual who feloniously and intentionally kills the decedent forfeits all benefits with respect to the decedent's

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

estate including any insurance or annuity policy benefits.

40. Two days after the murder, William sought to recover under the Nationwide policy. (William's Beneficiary Claim Form, Exhibit 9)

41. On September 8, 2010, Nationwide received a letter from Nicole and Monica's attorney asserting a claim to the proceeds of the Nationwide policy. (Claim Letter, Exhibit 10)

42. Nicole submitted a beneficiary claim form on December 13, 2010. (Nicole's Beneficiary Claim Form, Exhibit 11)

43. Monica submitted a beneficiary claim form on December 14, 2011. (Monica's Beneficiary Claim Form, Exhibit 12)

### VI. Nationwide Filed a Declaratory Action/Action in the Nature of Interpleader

44. Due to the conflicting claims for benefits, the possible elimination of William as a person legally capable of recovering under the policy pursuant to the Michigan statute, and the potential fraud in procuring and maintaining the policy by the Keenes with the intent to murder Gary Lupiloff, Nationwide filed this action in the nature of interpleader. (Exhibit 2)

45. Nationwide's complaint raised issues regarding the Keenes' potential elimination as beneficiaries based on the slayer statute, MCL 700.2803. (Exhibit 2, ¶¶ 25-28, 33)

46. The other major portion of Nationwide's complaint was in the form of

a declaratory action to determine if any coverage exists under the policy due to fraud in procuring the policy with the intent to murder Gary Lupiloff. (Exhibit 2, ¶¶ 9, 35, 37)

### VII. There are Cross Claims and Counter Claims

47. The Lupiloff defendants have filed a cross claim against William and Jennifer in this interpleader action. (Cross-Claim, Exhibit 13)

48. The Lupiloff defendants allege that William murdered Gary Lupiloff or hired someone to do so. (Exhibit 13, ¶¶ 10, 12)

49. The Lupiloff defendants allege that Jennifer knew of this murder. (Exhibit 13, ¶ 15)

50. As the primary basis for their right to recovery, the Lupiloff defendants claim that Gary Lupiloff's signatures were forged on the change of beneficiary and change of ownership forms. (Exhibit 13, ¶ 9)

51. The Keenes filed a counter claim on June 17, 2011. (Keene Counter Claim, Exhibit 14)

52. The Keenes' claim a right to recover under the terms of the life insurance contract and raise a claim of breach of contract. (Exhibit 14, ¶¶ 4-12)

53. The Lupiloff defendants field a counter claim on June 20, 2011. (Lupiloff Counter Claim, Exhibit 15)

54. The Lupiloff defendants claim a right to recover under the terms of

-8-

the insurance contract and also raise a claim of breach of contract in this counter claim. (Exhibit 15, ¶ 21)

55. The Lupiloff defendants once again base their claimed rights to recovery on the allegation that Gary Lupiloff's signatures on the change of beneficiary and change of ownership forms were forged. (Exhibit 15, ¶ 7)

### VIII. The Lupiloff Defendants Obtain an Expert to Support Their Claim of Forged Signatures But he can Only Offer Speculation and Conjecture

56. The Lupiloff defendants retained Robert D. Kullman, a claimed forensic document analyst, to review the signatures on the change of beneficiary and change of ownership forms. (Expert Letter, Exhibit 23)

57. Kullman reviewed the change of beneficiary form, which he referred to as Exhibit B, and concluded that it was "probably" signed by Gary Lupiloff: "Exhibit B, except the beneficiary name William Keene, was probably written and signed by Gary Harmon Lupiloff." (Exhibit 23)

58. Kullman referred to the change of ownership form as Exhibit C. All that he could conclude was that it was "probably" *not* signed by Gary Lupiloff. He could not definitively state that the signature was not Gary Lupiloff's signature. (Exhibit 23)

### IX. Reich Testified that She Witnessed Gary Lupiloff Sign the Forms

59. Reich was a Nationwide direct insurance agent. (Reich Dep, Exhibit

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

-9-

24, p 7)

60. Reich sold the life insurance policy insuring the life of Gary Lupiloff. (Exhibit 24, p 7)

61. Reich was also involved in the change of ownership on the policy. She testified that she discussed the change of ownership with Gary Lupiloff and informed him that he would no longer be in control of the policy if he signed the change in ownership. (Exhibit 24, pp 15-16) Reich advised against changing the ownership, but Gary Lupiloff still wanted to proceed with the change of ownership. (Exhibit 24, p 16)

62. Reich testified that she, in fact, had several conversations about this with Gary Lupiloff. (Exhibit 24, pp 41-42)

63. Reich specifically testified that Gary Lupiloff still wanted to change the ownership of the policy. (Exhibit 24, p 16) He had no concerns or reservations in signing the form. (Exhibit 24, pp 63, 77)

64. Gary Lupiloff did not want to pay the premiums on the policy. (Exhibit 24, p 59)

65. Reich informed Gary Lupiloff that he could just change the payor on the policy, but he did not care and wanted to change the ownership. (Exhibit 24, p 59)

66. Reich testified that Gary Lupiloff signed the change in ownership

form. (Exhibit 24, p 16)

67. Reich specifically witnessed Gary Lupiloff sign the change of ownership form. (Exhibit 24, pp 45-46)

68. Reich testified that Gary Lupiloff knew that the beneficiaries would change with the change in ownership and this was why she advised him against the change in ownership. (Exhibit 24, pp 59-60)

69. Reich testified that Gary Lupiloff did not care about this and signed the documents despite her warnings. (Exhibit 24, pp 62-63) Reich met with or spoke to Gary Lupiloff at least three times advising him not to sign and to think about it. But he expressed no concerns or reservations in changing the ownership. (Exhibit 24, p 77)

70. Reich also specifically witnessed Gary Lupiloff sign the change of beneficiary form. Reich signed this form as well. (Exhibit 24, pp 45-47, 75)

71. Gary Lupiloff had no reservations about signing either forms. (Exhibit 24, pp 77-78)

72. There were no signs of force or coercion in Gary Lupiloff signing the forms. (Exhibit 24, pp 78-79)

73. Reich testified that Gary Lupiloff never appeared as if he was being forced or compelled in any of her meetings with him. He knew that he would lose control of the policy, but never expressed any concern or desire to keep his

-11-

children as contingent beneficiaries. (Exhibit 24, pp 43-44)

### X. The Owner Controls the Policy and Its Beneficiaries

74. The policy provides the right to change an owner: "The Owner may name a Contingent Owner or a new Owner at any time during the lifetime of the Insured." (Exhibit 5, p 306)

75. The use of "you" and "your" in the policy refers to the owner: "'You' or 'your' refer to the Owner of this policy." (Exhibit 5, p 305)

76. The owner has the right to change the beneficiary while the insured remains living: "While the Insured is living, you may change any Beneficiary or Contingent Beneficiary." (Exhibit 5, p 307)

77. After the change in ownership, the estate of Gary Lupiloff would no longer be a contingent beneficiary if there are no listed beneficiaries eligible to receive the benefits: "If no Beneficiary is living or in existence when the Death Benefit becomes payable, we will consider you or your estate to be the Beneficiary. (Exhibit 5, p 306)

78. Again, "you" and "your" refer to the owner, not the named insured. (Exhibit 5, p 305)

79. Under the circumstances and the terms of the policy, Gary Lupiloff cut off all right of the Lupiloff defendants to collect benefits by signing the change of ownership and change of beneficiary forms. (Exhibit 5; Exhibit 6; Exhibit 7)

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been electronically filed on 7-28-14 with the Clerk of the Court via the Electronic Case Filing system, which will send notice of filing to all attorneys of record.

/s/ Janice A. Albertson
Secretary to Michael F. Schmidt

DATED:   July 28, 2014

Respectfully submitted,
BY: /s/Michael F. Schmidt
   Michael F. Schmidt P25213
   Nathan Peplinski P66596
   Attorneys for plaintiff
   mschmidt@harveykruse.com
   npeplinski@harveykruse.com
   1050 Wilshire Drive, Suite 320
   Troy, Michigan 48084-1526
   (248) 649-7800

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800