UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

        Plaintiff,

vs.

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNN LUPILOFF, NICOLE RENEE
LUPILOFF, and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF GARY LUPILOFF, Deceased,

        Defendants.

Civil Action
No. 2:11-cv-12422-AC-MKM

Honorable Avern Cohn

/

Michael F. Schmidt (P25213)
Harvey, Kruse, P.C.
Attorney for Plaintiff
1050 Wilshire Drive, Suite 320
Troy, Michigan 48084
Telephone: (248) 649-7800

John H. Bredell (P36577)
Bredell & Bredell
Attorney for Defendants,
William and Jennifer Keene
119 N. Huron Street
Ypsilanti, Michigan 48197
Telephone: (734) 482-5000

Albert L. Holtz (P15088)
Albert L. Holtz, P.C.
Attorney for Monica Lupiloff, Nicole Lupiloff
And Nicole Lupiloff, Personal Representative of
the Estate of Gary Lupiloff, Deceased
3910 Telegraph Road, Suite 200
Bloomfield Hills, MI 48146

Geoffrey N. Fieger (P30441)
David A. Dworetsky (67026)
Fieger, Fieger, Kenney, Giroux
& Harrington, P.C.
Co-Counsel for Monica Lupiloff,
Nicole Lupiloff and Nicole Lupiloff
Personal Representative of the Estate
of Gary Lupiloff, Deceased
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555

/

**MEMORANDUM OF LAW IN SUPPORT OF THE LUPILOFF DEFENDANTS'
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

Defendants/Counter-Plaintiffs and Cross-Plaintiffs Monica Lynn Lupiloff, Nicole Renee Lupiloff, and Nicole Renee Lupiloff, Personal Representative of the Estate of Gary Lupiloff, Deceased (the "Lupiloff Defendants") hereby respond to Plaintiff's Motion for Summary Judgment as follows:

## I.   Overview

Plaintiff's Motion for Summary Judgment misses the mark for the simple reason that Plaintiff erroneously, or disingenuously, is characterizing a genuine issue of material fact as speculation. "Probably" is another way of expressing "more than likely," and is not the same as "possibly." "Probably" rises above speculation, and presents a genuine issue of material fact to be weighed by the trier of fact. This is especially so in the context of a civil action, where the burden of proof is the preponderance of the evidence.

In the instant case, pursuant to the American Society of Testing Materials ("ASTM") guide for expressing opinions, Robert D. Kullman has opined that Gary Lupiloff probably did not print or sign either the Application for Change of Beneficiary Designation form or the Application for Designation of Owner and/or Contingent Owner form. (See Lupiloff Defendants' Exhibit 1). This is the language to be used per the ASTM guide. (Id.). In other words, it is his expert opinion that both forms were "more than likely" not signed by Gary Lupiloff. (Id.). This is not speculation and creates a genuine issue of material fact. The weight afforded his expert opinion will be for the jury, should that be necessary.

Moreover, even if Gary Lupiloff had signed the Application for Designation of Owner and/or Contingent Owner form, such a change of ownership is revoked by the

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

Michigan Slayer Statute. *See* MCL 700.2803. "A killer . . . cannot profit from his or her wrong." *Id.* There is no change of beneficiary, because it is dependent upon an actual change of ownership. Nationwide's motion fails and must be denied, at least until the question of whether Mr. Keene feloniously and intentionally killed Mr. Lupiloff is decided, because neither Mr. Keene nor his wife can be permitted to benefit from Mr. Keene's wrongdoing.

Therefore, for the independent reason that there was no change of beneficiary, should it be found that Mr. Keene did feloniously and intentionally kill Mr. Lupiloff, the Lupiloff Defendants are the rightful beneficiaries to the Nationwide Policy, and Nationwide's motion must be denied until this preliminary question is resolved.

Plaintiff's Motion for Summary Judgment must be denied by this Court.

## II.    Argument.

### A.    *Plaintiff's Motion Must Be Denied For The Independent Reason That Mr. Kullman's Expert Testimony Unquestionably Creates Genuine Issues Of Material Fact.*

"Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C,* 532 F.3d 405, 410 (6th Cir. 2008). However, "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial." *Id.* at 411. "The movant has the initial burden of showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986);

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

*May v. Caliber Auto Transfer of Ohio, Inc.,* 2006 WL 3060113 (E.D. Mich. 2006). Plaintiff fails to meet its burden.

While it is true that "to oppose a motion for summary disposition, the nonmoving party must establish more than conjecture and speculation to meet the burden of proof of evidentiary support to create a genuine issue of material fact," *Libralter Plastics, Inc v. Chubb Group,* 199 Mich.App 482, 486; 502 NW2d 742 (1993), "Conjecture is defined as an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Id.* The expert testimony of Robert D. Kullman, as set forth in his attached Affidavit as the Lupiloff Defendants' Exhibit 1, unquestionably rises above speculation and creates a genuine issue of material fact.

First, it must be established that Mr. Kullman did **not** opine that Mr. Lupiloff probably signed the Application for Change of Beneficiary Designation, as Nationwide contends. Mr. Kullman did not designate the exhibits to Plaintiff's Exhibit 23, and was not referring to the Application for Change of Beneficiary Designation when he referred to an Exhibit B in his 2011 letter. (See Lupiloff Defendants' Exhibit 1). As Mr. Kullman makes clear in his Affidavit, he was referring to the Application for Life Insurance and Medical Examination form, pages 314-323 of Plaintiff's Exhibit 5. (Id).

Nationwide contends that Mr. Kullman's opinion that Gary Lupiloff probably did not print or sign the Application for Designation of Owner and/or Contingent Owner form amounts to speculation. Nationwide is incorrect. Mr. Kullman's opinion is expressed pursuant to the American Society of Testing Materials ("ASTM") guide for expressing opinions. (See Lupiloff Defendants' Exhibit 1). This is the language to be used, according to the ASTM guide. (Id.). Expressed otherwise, it is Mr. Kullman's

4

expert opinion, based upon proper foundation, and within reasonable scientific certainty, that both forms were "more than likely" not signed by Gary Lupiloff. (Id.).  This is not speculation and creates a genuine issue of material fact.  The weight afforded his expert opinion will be for the jury, should that be necessary.

While not binding on this Court, *Hamburg v State*, 820 P2 523 (Wy. 1991), is highly instructive, as it is factually and legally on point.  Research revealed this to be the only reported case where the ASTM standards are directly discussed in terms of legal burden of proof.  In *Hamburg, a* candidate for political office was convicted of forgery, and appealed.  The Supreme Court of Wyoming considered, among several issues, whether the evidence was sufficient to support the conviction concerning the signatures at issue.

Mr. Crivello, the expert in that case, had opined concerning several signatures, and concluded two were definitely written by Mr. Hamburg, and another list of names were probably written by Mr. Hamburg.  The Court was satisfied that a jury could determine ***beyond a reasonable doubt*** that Hamburg signed the names where Mr. Crivello had testified with ***certainty*** to the question. *Id.* at 529.

The Court then discussed the sufficiency of evidence where Mr. Crivello opined that the signatures were ***probably*** prepared by Mr. Hamburg.  The Court reasoned:

> "Probably" is not a term normally employed in a criminal case . . . "[P]robability" is defined as "the state of being probable; the character of an event as more likely to happen or have happened than not to happen or have happened . . . The ground of expectation that is recognized when the greater weight of evidence favors or is taken to favor an event or supposition." The word "probable" connotes "being so supported by evidence as to incline the mind to belief rather than disbelief, yet leaving room for doubt."

*Id.* (Citing *In re Salomon's Estate,* 159 Misc. 379, 287 N.Y.S. 814, 820 (1936)).

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

The Court continued:

> Probably means supported by evidence which inclines the mind to believe, but leaves some room for doubt. In *Barrett v. Green River & Rock Springs Live Stock Co.,* 28 Wyo. 379, 384, 205 P. 742, 744 (1922), we said, "The word 'probable' is defined by Webster as: 'Having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt; likely.'"
>
> ***Probably, probability and probable are terms ordinarily used in civil actions.***

*Id.* (Emphasis added). Mr. Kullman's Affidavit demonstrates that his use of terminology is consistent with the above understanding of these terms, as he states that it is his opinion that it is "more than likely" that Mr. Lupiloff did not sign the Application for Change of Beneficiary Designation form or the Application for Designation of Owner and/or Contingent Owner form. (See Lupiloff Defendants' Exhibit 1).

The Court further analogized this civil action standard with the concept of "probable cause," stating:

> In criminal preliminary hearings, "probable cause" is a familiar term. "Probable cause. Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings complained of. An apparent state of facts found to exist upon reasonable inquiry (that is, such inquiry as the given case renders convenient and proper), which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged." *Black's Law Dictionary* 1081 (5th ed. 1979). ***Evidence demonstrating probable cause is more than a mere suspicion . . .***

*Id.* at 529-530. (Citing *United States v. Ventresca,* 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965); *United States v. Riemer,* 392 F.Supp. 1291, 1294 (S.D.Ohio 1975); *People v. Gibbs,* 255 Cal.App.2d 739, 63 Cal.Rptr. 471, 475 (1967); *State in the Interest of A.R.,* 216 N.J.Super. 280, 523 A.2d 678, 680 (1987); *State v. Kasabucki,* 52

6

N.J. 110, 244 A.2d 101, 104 (1968); *People v. Holder,* 69 Misc.2d 863, 331 N.Y.S.2d 557, 564 (1972); *State v. Crockett,* 34 Or.App. 1019, 580 P.2d 214, 216 (1978); *State v. Feehely,* 27 Or.App. 343, 556 P.2d 142, 144 (1976)).

Thus, the Court concluded that "expert testimony that Mr. Hamburg probably signed the names . . . [was] sufficient for a magistrate to bind over for trial," even if it was insufficient to convict beyond a reasonable doubt. *Id.* at 530.

Nationwide erroneously, or disingenuously, contends that a "certainty" standard is appropriate in this civil case, and that anything less than "certainty" amounts to speculation. Nationwide's arguments must be rejected by this Court. Mr. Kullman's careful use of ASTM terminology should not go unmentioned, as it demonstrates his scientific, precise examination and evaluation of the evidence. Nationwide's attempt to equate "probability" with a mere "possibility" must not be recognized by this Court.

Admittedly, any uncertainty in Mr. Kullman's opinion *may* affect the weight given to his opinion; but clearly, Mr. Kullman's opinion is not based upon a mere guess, conjecture, or speculation. *Manlin v. Manlin,* 638 S.W.2d 295, 297 (Mo. Ct. App. 1982).[1] A genuine issue of material fact is present, and the weight and credibility to be given to Mr. Kullman's expert testimony is for the trier of fact. *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C,* 532 F.3d 405, 410 (6th Cir. 2008).

As the Sixth Circuit notes, "In ruling on the admissibility of expert testimony, the role of the trial court is not to determine whether an expert's opinion is correct but rather to determine whether it rests upon a reliable foundation, as opposed to unsupported

---

[1]     Even a "guess" is admissible evidence with probative value if it is clear that the witness meant to express his opinion or his judgment. *Manlin, supra; Hinrichs v. Young,* 403 S.W.2d 642, 646 (Mo. 1966); and *Cragin v. Lobbey,* 537 S.W.2d 193, 199 (Mo.App. 1976).

7

speculation. The trial court acts as gatekeeper, admitting expert testimony that is reliable and leaving to the jury the question of how much weight, if any, should be accorded to the expert's conclusions. Exclusion of expert testimony is the exception, not the rule." *United States v. Stafford*, 2011 WL 5008406 (N.D. Ohio Oct. 19, 2011), *aff'd*, 721 F.3d 380 (6th Cir. 2013), citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

"There is nothing in *Daubert* to suggest that judges become scientific experts, ***much less evaluators of the persuasiveness of an expert's conclusion.***" *Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C. Cir. 1996) (emphasis added). "Rather, once an expert has explained his or her methodology, and has withstood cross-examination or evidence suggesting that the methodology is not derived from the scientific method, the expert's testimony, so long as it 'fits' an issue in the case, is admissible under Rule 702 ***for the trier of fact to weigh.***" *Id.* (Emphasis added).

Mr. Kullman's expert opinion unquestionably rises well above speculation, and genuine issues of material fact exist concerning the "Gary Lupiloff" signatures to the Application for Change of Beneficiary Designation and Application for Designation of Owner and/or Contingent Owner forms. Nationwide's motion must be denied for this independent reason.

**B.** ***Plaintiff's Motion Must Be Denied For The Independent Reason That To The Extent There Was A Change Of Ownership, It Is Revoked By The Slayer Statute.***

Even if Gary Lupiloff had signed the Application for Designation of Owner and/or Contingent Owner form, and the Lupiloff Defendants contend he did not, such a change of ownership is revoked by the Michigan Slayer Statute. *See* MCL 700.2803.

8

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

The facts of this case are squarely within the Slayer Statute. The only way Mr. Keene would have been able to change beneficiaries from the Lupiloff Defendants to his wife, was because he had a power to do so when, as it is contended by Nationwide, ownership of the policy was conveyed to him by Mr. Lupiloff.

Subsection (2) of the Slayer Statute specifically states that:

> The felonious and intentional killing or the conviction of the felon for the abuse, neglect, or exploitation of the decedent does all of the following:
>
> (a)   Revokes all of the following that are revocable:
>
> * * *
>
> (ii)   Provision in a governing instrument conferring a general or nongeneral power of appointment of the killer or felon.

*See* MCL 700.2803(2)(a)(ii).

Therefore, even if there was a transfer of ownership, it is revoked by effect of the Slayer Statute, as a result of Keene's felonious and intentional killing of Mr. Lupiloff.

Moreover, subsection (4) sets forth as follows:

> A provision of a governing instrument is given effect as if the killer or felon disclaimed all provision revoked by this section or, in the case of a revoked nomination in a fiduciary representative capacity, as if the killer or felon predeceased the decedent.

*See* MCL 700.2803(4).

Thus, the Application for Designation of Owner and/or Contingent Owner form is disclaimed as if Mr. Keene predeceased Mr. Lupiloff, and consequently could not have changed the beneficiary to the Nationwide Policy.

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

While the above provisions are clearly applicable in this case, there can be no doubt that subsection (5), essentially a broad, catch-all provision, applies to this case, such that even if there was an attempted change of ownership, it is revoked by the Slayer Statute. Subsection (5) states that "[a] killer's or felon's wrongful acquisition of property or interest not covered by this section shall be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong." *See* MCL 700.2804(5). Pursuant to this principle, Mr. Keene's attempt to effect a change of ownership must be rejected by this Court. Again, consequently, there can be no change of beneficiary as it is dependent upon a change of ownership.

While there is no Michigan law on point, the statutory language and intent is clear on its face. Moreover, language from other courts is instructive. "To permit the slayer's children to inherit the victim's property would let the slayer profit from her own wrongdoing, because it would give the slayer access to the property. The court found that the slayer's children, from a previous marriage, who were specifically named in the decedent's Will were not entitled to receive any of the victim's property." *In Estate of Mueller*, 275 Ill. App. 3d 128 (1995).

The court in *Heizman v. Mason*, 694 N.E. 2d 1164 (Ind. App. 1998), held that it was a well-established principle of equity that neither the slayer nor the slayer's heirs could benefit from the slayer's wrongdoing, regardless of whether the slayer intended to benefit the children through the wrongdoing. The court noted its sympathy for the children, however, it stated that the children *must* be prohibited from receiving the victim's property, *even if they weren't involved. Id.*

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

Therefore, even if Mr. Lupiloff had signed both documents in question, as a matter of law, Nationwide's motion fails and must be denied, at least until the question of whether Mr. Keene feloniously and intentionally killed Mr. Lupiloff is decided, because neither Mr. Keene nor his wife can be permitted to benefit from Mr. Keene's wrongdoing.[2]

The bottom line is that it is hornbook law that a killer cannot profit from his or her wrong. Therefore, there was no change of beneficiary, and should it be found that Mr. Keene did feloniously and intentionally kill Mr. Lupiloff, the Lupiloff Defendants are the rightful beneficiaries to the Nationwide Policy, and Nationwide's motion must be denied until this preliminary question is resolved.

## III.   Conclusion.

WHEREFORE, the Lupiloff Defendants respectfully request that this Honorable Court DENY Plaintiff's Motion for Summary Judgment, and award the Lupiloff Defendants such further relief it deems just and reasonable.

Respectfully submitted,

**FIEGER, FIEGER, KENNEY, GIROUX & HARRINGTON, P.C.**

/s/ David A. Dworetsky
GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
Attorneys for the Lupiloff Defendants
19390 W. Ten Mile Road
Southfield, MI 48075
Dated: August 18, 2014          (248) 355-5555

---

[2]     The Lupiloff Defendants further note that should the Court request additional evidence in order to rule on this issue, they are prepared to present Alan A. May, Esq. as an expert witness.

11