UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE LIFE INSURANCE COMPANY,
a foreign corporation,

    Plaintiff/Counter-Defendant,

vs.                                                 Case No.   11-cv-12422-AC-MKM
                                                  Hon. Avern Cohn

WILLIAM KEENE, JENNIFER KEENE,
MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants,

and

MONICA LYNNE LUPILOFF, NICOLE RENEE
LUPILOFF and NICOLE RENEE LUPILOFF,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF GARY LUPILOFF, DECEASED,

    Defendants/Counter-Plaintiffs and Cross-Plaintiffs,

vs.

WILLIAM KEENE, JENNIFER KEENE,
Individually, jointly and severally,

    Defendants/Cross-Defendants.

**PLAINTIFF'S REPLY TO THE LUPILOFF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THE LUPILOFF DEFENDANTS**

_____/

| | |
|---|---|
| Michael F. Schmidt P25213 | Albert L. Holtz P15088 |
| Nathan Peplinski P66596 | Attorney for Lupiloffs |
| Attorneys for Plaintiff | 3910 Telegraph Road, Suite 200 |
| 1050 Wilshire Drive, Suite 320 | Bloomfield Hills, MI  48302 |
| Troy, MI  48084 | (248)593-5000 |
| (248)649-7800 | |
| | |
| John H. Bredell P36577 | E. Jason Blankenship P63566 |
| Attorney for Keenes | Co-Counsel for Lupiloffs |
| 119 N. Huron Street | 19390 West Ten Mile Road |
| Ypsilanti, MI  48197 | Southfield, MI  48075 |
| (734)482-5000 | (248)355-5555 |

_____/

**PLAINTIFF'S REPLY TO THE LUPILOFF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### **The Lupiloff Defendants Cannot Change the Underlying Fact That Gary Lupiloff Signed the Change of Beneficiary Form**

Plaintiff Nationwide Life Insurance Company demonstrated in its motion for summary judgment that the Lupiloff defendants have no right to recover because Gary Lupiloff signed the change of beneficiary and change of ownership forms. (Nationwide Memorandum of Law, pp 2-4)  Even the Lupiloff defendants' expert stated that Gary Lupiloff "probably" signed the change of beneficiary form. (Expert Letter, Exhibit 23)  In fact, both signatures were witnessed by Elizabeth Reich, an independent witness who was, in fact, a friend of Gary Lupiloff. (Reich Dep, Exhibit 24, p 60)  Reich even testified that she repeatedly advised Gary Lupiloff against the changes, but he still signed the forms. (Exhibit 24, pp 16, 41-42, 59-60, 62-63, 77)

The Lupiloff defendants attempt to ignore these facts by first claiming that there must have been some duress in Gary Lupiloff signing the forms and that Reich must have been involved. (Lupiloff Response to Statement of Facts, pp 10-11)  The Lupiloff defendants have absolutely no support for this contention.  They supply nothing to the Court for it to infer even the potential for duress.  This meritless bold assertion of duress is insufficient to survive summary judgment.  "The non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor." *Guarino v Brookfield Twp Trustees*, 980 F2d 399, 403 (6th Cir, 1992). This must be accomplished by providing actual evidence to support the position: "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth

specific facts showing there is a genuine issue for trial." *Id*. at 405. If the responding party fails to meet this burden in responding to the motion, "its opportunity is waived and its case wagered." *Id*. Under this well settled authority, the Lupiloff defendants have waived any claimed duress defense by not presenting any actual evidence on the issue. And Nationwide is entitled to summary judgment on any duress claim.

Thus, in order to survive summary judgment, the Lupiloff defendants must demonstrate that Gary Lupiloff did not sign the forms. The only attempt by the Lupiloffs to meet this burden is through the alleged expert. When asked to provide the expert's opinion, the Lupiloff defendants provided the letter attached as Exhibit 23 to Nationwide's motion, which provides: "Exhibit B, except the beneficiary name William Keene, was probably written and signed by Gary Harmon Lupiloff." (Exhibit 23) At first, the exhibits were not attached to the letter, so Nationwide requested the exhibits. The Lupiloff defendants' attorney then chided Nationwide for making the request because he felt it was obvious that the referenced exhibits ***were the exhibits attached to the Nationwide complaint***:

> On 10/25/11, you requested that I forward Exh's B & C, which were sent to Speckin Forensic Laboratories. Please see Exh's B & C attached. These are the same exhibits that were attached to your Complaint, which were referenced in our Answers to Interrogatories. Why you would need to see the exact duplicates of what is attached as exhibits to your Complaint is unknown to me, but here they are, in the exact form that they existed in your Complaint. . . . [10-27-11 Letter from Lupiloff Defendants' Counsel, Exhibit 26.[1]]

---

[1] Exhibits B & C were produced with the exact same coverage pages from

This was reiterated in the Lupiloff defendants' discovery answers. Nationwide requested in interrogatories 2(c) and 3(c) that the Lupiloff defendants provide any documentary evidence supporting their denial that Nationwide received executed change of beneficiary and ownership forms from Gary Lupiloff. The Lupiloff defendants originally answered that they would supply the expert analysis when received and referenced potential sample signature from Gary Lupiloff. (Initial Answers, Exhibit 27) Nationwide then asked the Lupiloffs to supplement the answers to provide whatever writing samples were sent to the expert. The Lupiloff defendants provided supplemental answers stating: "Speckin Forensic Labs was provided both ***Plaintiffs' Exhibits B and C*** along with the attached signature exemplars of Gary Lupiloff." (Sup Answers, Exhibit 28, emphasis added)

The Lupiloff defendants ***now attempt to change*** what "Exhibit B" was to claim that it was intended to be a reference to the policy application. (Lupiloff Response to Statement of Facts, pp 9-10) ***They cannot do this given their admissions as to what Exhibit B is in their discovery answers***. Moreover, on its face, this makes no sense given that they have no Exhibit A and combine two Exhibits into Exhibit C. This is not to mention the fact that there is absolutely no reason for the expert to offer an opinion on the application as there has never been a question raised about Gary Lupiloff signing it. In addition, the actual facts show that the application was Exhibit A to the

---

Nationwide's complaint. (Exhibit 26)

complaint; the change of beneficiary form was Exhibit B; and the Change of Ownership form was Exhibit C. (See Complaint & Exhibits, Docket # 1)  The Lupiloff defendants' attorney could not have been more emphatic on this point in his letter, and it has never been changed subsequently.  If the Lupiloff defendants' expert was making an opinion on the application, he would be referring to Exhibit A, not to Exhibit B, which the Lupiloff defendants admitted was the Chnge of Beneficiary Form.

An expert's opinion must be based in the facts of the case and must be supported "by good grounds, based on what is known." *DeMerrell v Cheboygan*, 206 Fed Appx 418, 427 (6th Cir, 2006) The Sixth Circuit elaborated: "Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Id.*, citation omitted.  The Lupiloff defendants cannot have their expert now ignore the actual facts regarding what the referenced exhibits were.  The expert also cannot ignore the fact that the only evidence on the issue is provided by an impartial eyewitness friend of Gary Lupiloff who advised him not to sign the forms, but witnessed him sign them anyway because he did not want to continue to pay for the policy.  (Exhibit 24, pp 15-16, 41-42, 45-47, 59-60, 62-63, 75, 77)  Thus, the only actual evidence in this case is that Gary Lupiloff signed the change of beneficiary form, which entitles Nationwide to summary judgment against the Lupiloff defendants.

Even if the expert's opinion were based in fact, his opinion that the signatures "probably" were not Gary Lupiloff's signature is insufficient to survive summary

judgment. As Nationwide has pointed out, courts have regularly rejected opinions based on what "probably" happened as insufficient to survive summary judgment. (Nationwide's Memorandum of Law, pp 7-8) The Lupioff defendants attempt to counter this by citing to *Hamburg v State*, 820 P2d 523 (Wyo, 1991). (Lupiloff Memo of Law, pp 5-7) *Hamburg* involved an expert opining that some signatures were probably forged while others were "very probably" forged. The court found neither sufficient to support a conviction. While *Hamburg* contains a long discussion of the word "probably," its end conclusion is that it is "more than a mere suspicion, but substantially less than beyond a reasonable doubt". *Id*. at 530. Simply, this raises the evidence to nothing more than a possibility. The "mere possibility" of a factual dispute is not enough. *Mitchell v Toledo Hosp*, 964 F2d 577, 582 (6th Cir, 1992). The Lupiloff defendants want this Court to believe that they can survive summary judgment as long as they offer an argument about a mere suspicion that they can recover. This is not the law. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 581. The Lupiloff defendants have not met this burden.

### **The Change of Ownership and Beneficiary Forms Are Not Revoked**

The Lupiloff defendants' alternative attempt to escape the existing facts requiring summary judgment against them is to argue that the slayer statute negates Gary Lupiloff's prior decisions to change the ownership and beneficiaries. (Lupiloff Memo of Law, pp 8-10) The Lupiloff defendants fail to cite a single case in support of

their argument, and none exists. The slayer statute merely requires that the murderer be considered as predeceasing the murdered insured. MCL 700.2803(4). It does nothing to negate prior changes made by the murdered insured.

The Lupiloff defendants attempt to rely on MCL 700.2803(2)(a)(ii), which restricts the right of the murderer to appoint a new beneficiary *after the killing:*

> The felonious and intentional killing . . . does all of the following:
>     (a) Revokes all of the following that are revocable:
>             * * *
>     (ii) Provision in a governing instrument conferring a general or nongeneral power of appointment on the killer or felon. . . . .

Simply, the statute stops a murderer from being able to circumvent the slayer statute by eliminating the murderer's right to appoint someone in his place after he committed the murder. It does not rewrite history to eliminate transfers and beneficiary changes occurring before the murder that were made by the insured.

The Lupiloff defendants would have this Court rewrite the insurance contract to create new contingent beneficiaries not actually existing in the policy. This would be in violation of well established Michigan law. "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written.*" *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005), emphasis original. A court may read nothing into a contract that is not there. *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004), lv den 471 Mich 920 (2004). This is especially true in insurance contracts where the fundamental rule is that the insurer cannot be held liable for a risk it did not assume: "It is

impossible to hold an insurance company liable for a risk it did not assume." *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992).

What the Lupiloff defendants are actually pointing out is that William Keene had a preexisting intent to murder Gary Lupiloff. This is exactly why the policy was obtained in the first place. In such cases, the Lupiloff defendants are wrong in stating that the estate of the insured should recover under the policy. Instead, the policy is void. "Under such a circumstance there can be no recovery, either on the part of the beneficiary or the estate of the insured, because the contract of insurance was void from its inception." *Colyer's Administrator v New York Life Ins Co*, 300 Ky 189, 192; 188 SW2d 313 (1945).[2]

If the murder occurred, the policy in this case is void from its inception. The Lupiloff defendants have no right to recover under the policy. Therefore, Nationwide is entitled to summary judgment against the Lupiloff defendants.

**CERTIFICATE OF SERVICE**
I hereby certify that the foregoing pleading has been electronically filed with the Clerk of the Court on the below listed date via the Electronic Case Filing system, which will send notice to all attorneys of record.

By: */s/ Michael F. Schmidt*
Dated: September 2, 2014

Respectfully submitted,
HARVEY KRUSE, P.C.

By:/s/Michael F. Schmidt
    Michael Schmidt (P25213)
    1050 Wilshire Dr., Suite 320
    Troy, Michigan 48084-1526
    (248) 649-7800
    mschmidt@harveykruse.com

---

[2] *Henderson v Life Ins Co of Virginia,* 176 SC 100; 179 SE 680, 685 (1935) ("Suffice it to say, a contract entered into under these circumstances is undoubtedly void as against public policy."); *Minnesota Mut Life Ins Co v Ostrusina*, 1992 US Dist Lexis 16364 (ND Ill, 1992) ("There can be no meeting of the minds to a contract for insurance when a beneficiary overbears the will of an insured in securing insurance coverage with the purpose of terminating the life of the insured to bring about an early pay day.").